UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> TICKETOS, TICKETOS TECHNOLOGY, INC., and NEXT SPORTS & ENTERTAINMENT, LLC, <br><br> *Defendants*. | Case No. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Spotlight Ticket Management, Inc. ("Plaintiff"), by and through its attorneys, Hunton Andrews Kurth LLP, for its Complaint against defendants TicketOS, TicketOS Technology, Inc., and Next Sports & Entertainment, LLC (collectively, "Defendants" or "TicketOS"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

1. This is an action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of tortious interference with prospective economic advantage and contract under the common laws of the State of New Jersey, all arising from the Defendants' false representation that they are integrated with Ticketmaster.

2. Plaintiff seeks injunctive and monetary relief.

**I.     PARTIES**

3. Plaintiff Spotlight is a Delaware corporation with its principal place of business at 256635 West Agoura Road, Calabasas, California, 91302. Spotlight does business as "TicketManager."

- 1 -

4. TicketOS and TicketOS Technology, Inc. are Delaware corporations with a principal place of business at 16 Portland Place, Montclair, New Jersey 07042. Ari Strulson is the Chief Executive Officer of both entities.

5. Next Sports & Entertainment, LLC ("Next") is a limited liability corporation with a main business address of 5 Chadwick Road, Livingston, New Jersey 07042, which is its principal place of business. Its sole member, Ari Strulson, is a resident of New Jersey. Mr. Strulson's residential address is the same as Next's main business address.

6. On TicketOS's website, the Terms of Service state that the TicketOS website is operated by Next Sports & Entertainment, LLC. **(Exhibit A)**

7. Similarly, the Privacy Policy on TicketOS's website states that it governs visitors' "use of the various services offered by Next Sports & Entertainment, LLC." **(Exhibit B)**

8. TicketOS's cookie policy on its website states that all questions or comments should be directed to Next Sports & Entertainment, LLC. **(Exhibit C)**

9. Next's website also advertises for TicketOS. It states that its "sister company, TicketOS, helps companies manage their sports, entertainment and sponsorship assets." **(Exhibit D)**

10. Plaintiff is informed and believes, and based thereon alleges that at all times material hereto, each of the Defendants named herein was/were the ostensible agent, employee, alter ego and/or joint venture of, or working in concert with each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendant.

## II. JURISDICTION AND VENUE

11. This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

12. The claims for false advertising arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*. Therefore, this Court has subject matter and original jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), respectively.

13. The claim for tortious interference arises under New Jersey common law, and is so related to the federal claims asserted in this case that it forms part of the same case or controversy. Therefore, this Court has subject matter and original jurisdiction over this claim pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

14. This Court has personal jurisdiction over Defendants because Defendants' principal places of business are in the State of New Jersey, and on information and belief, Defendants have committed a tortious act within the State of New Jersey (including within this judicial district), and Spotlight's claims arise out of this tortious act.

15. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants reside in this district, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III. FACTUAL BACKGROUND

### A. Spotlight's Business

16. Spotlight was founded in 2007 as a software startup to connect corporations and their customers with ticket and event management solutions.

17. Since then, Spotlight has grown to managing and automating over 30 million

invitations, registrations, and tickets annually.

18. Spotlight serves its clients by managing ticket inventories and events, providing the systems for ticket delivery and fulfillment, as well as the technology for mobile entry into events.

19. Spotlight also partners directly with professional and college sport teams, venues, and well-known third-party ticketing and event management applications to give Spotlight's customers and partners both a platform and the resources necessary to manage, analyze, and resell tickets.

20. In addition to managing ticket inventories for companies, venues, and teams, Spotlight creates and manages loyalty programs that enable Spotlight's users to reward their own clients, prospects, and employees with live events.

21. Spotlight also manages analytical technology that provides its users with data reporting on factors such as who used the tickets and why, which allows Spotlight's customers to reduce waste and drive greater and new return on investment.

    **B.**    **Spotlight's Partnership with Ticketmaster**

22. Ticketmaster Entertainment, LLC ("Ticketmaster") is a preeminent ticket sales and distribution company that sells tickets for live entertainment events to the general public on behalf of its clients through its website, mobile app, and telephone call centers.

23. In October of 2016, Spotlight and Ticketmaster entered into a Registered Vendor and Affiliate Agreement (the "Agreement"), whereby Spotlight was granted the exclusive right to integrate its technology with Ticketmaster's software and systems platform for corporate ticket management and business events.

24. Through this partnership, Ticketmaster and Spotlight enable companies to manage tickets directly with their team and venue providers with technology including the discovery of inventory, transfer of mobile tickets, and attendance scan information in real time.

25. Simply put, Spotlight is the only company that has Ticketmaster integration in the business event and corporate ticket management category—that is, the ability to automatically and directly move Ticketmaster tickets without needing to go through the Ticketmaster website or a third party to do so.

26. Spotlight pays Ticketmaster a significant annual fee each year in exchange for this exclusive integrated partnership, in addition to a percentage of annual revenue earned by Spotlight.

27. To date, Spotlight has paid millions of dollars for the right to be the exclusive corporate ticket management platform for Ticketmaster and the only company to be integrated with Ticketmaster's software and systems platform for that purpose.

28. Both Spotlight and Ticketmaster have publicized their exclusive integration partnership, and it is well known in the industry.

29. Spotlight's exclusive integration partnership with Ticketmaster provides Spotlight with a significant competitive edge in relation to its competitors.

30. The Agreement and Spotlight's exclusive integration partnership with Ticketmaster remains in full force and effect today.

**C.    TicketOS's Business**

31. TicketOS was founded in 2001, and was originally developed and owned by a company called RazorGator.

32. Around 2010, RazorGator ran into financial issues after it purchased too many tickets for the World Cup and Vancouver Olympics that cost the company $3.5 million dollars and resulted in it laying off about a quarter of its employees.

33. In 2018, and as RazorGator went bankrupt, TicketOS was acquired by Entertainment Benefits Group ("EBG").

34. Unable to invest and wanting to get the assets off the books, EBG sold TicketOS to

Ari Strulson in early 2020. Mr. Strulson is the current Chief Executive Officer of TicketOS.

### D. TicketOS's False and Deceptive Advertising

35. Since at least 2019, TicketOS has been publicly and falsely representing and advertising through its public website, direct communications, and in person sales pitches with potential clients that TicketOS (i) has the same integration with Ticketmaster as Spotlight, (ii) has the contractual right to integrate with Ticketmaster, and (iii) has the same functionality as Spotlight. None of these representations are true.

36. TicketOS's website highlights these false and deceptive representations.

37. On TicketOS's website, on a page titled *Touchless Fulfillment*, TicketOS falsely states: "TicketOS integrates with all major mobile ticketing providers." (**Exhibit E**.)



38. The representation that TicketOS integrates with all major mobile ticketing providers is literally false. TicketOS does not have any integration with Ticketmaster, the largest mobile ticketing provider.

39. TicketOS's main page of its website further touts its "Touchless Fulfillment," and further suggests its false claim of integration with Ticketmaster by stating that customers can "[r]eplace your ticket transfer process without our touchless fulfillment system, no more logging

into Ticketmaster, Tickets.com, AXS, or any other ticket accounts." (**Exhibit F**.)



40. Customers upon seeing these misrepresentations on TicketOS' website would believe that TicketOS actually is integrated with Ticketmaster.

41. TicketOS' misrepresentations do not end with its website. Upon information and belief, TicketOS makes sales pitches to prospective clients where it orally touts the benefits of TicketOS, including its purported integration with Ticketmaster.

42. Upon information and belief, TicketOS has engaged in a campaign of disinformation, marketing itself to numerous consumers through direct sales pitches where it misrepresents that it has an integration with Ticketmaster and that it can offer the same functionality as Spotlight at a lower price. Both representations are false.

43. The ticket management industry is a niche industry with only a handful of

competitors. Each of the ticket management industry players market their services primarily to companies that use a large amount of tickets for various purposes in their businesses.

44. It is standard practice to market ticket management services through direct sales pitches tailored to prospective clients.

45. Upon information and belief, these representations—made on TicketOS's website and in its interactions with potential clients—are false and deceptive.

46. These statements constitute commercial advertising or promotion within the meaning of the Lanham Act.

47. TicketOS does not have Ticketmaster integration.

48. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

49. Spotlight is also the *only* company that has Ticketmaster integration for the business event and corporate ticket management category.

50. To date, Spotlight has paid millions of dollars in annual fees for that privilege.

51. TicketOS *knows* that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

52. TicketOS also knows that Spotlight is the only company that has Ticketmaster integration for business events and corporate ticket management.

53. In a public letter dated March 31, 2021, Ticketmaster affirmed that it entered into an "**exclusive** partnership" with Spotlight/TicketManager and that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market." (**Exhibit G** (emphasis in original).)

54. In that letter, Ticketmaster warns consumers that vendors like TicketOS in the ticket

and event management marketplace are "mis-representing … capabilities they have with Ticketmaster" and asks consumers to report any such false claims directly to Ticketmaster. (*Id.*)

55. Upon information and belief, Ticketmaster sent this letter specifically to TicketOS.

56. TicketOS in fact *admitted* it knew about Spotlight's contractual rights. On July 11, 2019, Ari Strulson told Ken Hanscom, Spotlight's Chief Operating Officer, that he admired Spotlight's exclusive relationship with Ticketmaster, but that companies were finding ways to get around it.

57. Upon information and belief, in an apparent effort to circumvent Spotlight's exclusive contractual arrangement with Ticketmaster, TicketOS is utilizing a third party service to access Ticketmaster and facilitate ticket transactions.

58. While certain third parties do work with Ticketmaster on secondary market ticket sales (e.g., resales through StubHub), they are prohibited from operating in the business events and corporate ticket management space.

59. Use of a third party intermediary means that TicketOS would not be integrated with the Ticketmaster system.

60. If TicketOS is indeed able to provide its services to its customers for a lower price than Spotlight, which it publicly claims, then it is because it is not integrated with Ticketmaster (avoiding the significant integration fees charged by Ticketmaster), and as such offers an inferior and more unreliable service.

61. TicketOS's false and deceptive advertising statements and claims are about Ticketmaster integration are material in that they are likely to influence consumer purchasing decisions. This is because services that are not integrated with Ticketmaster are inferior and unreliable.

62. TicketOS's false and deceptive advertising statements and claims have a tendency to confuse, mislead and deceive a substantial segment of its audience as to the nature, characteristics, and qualities of their services.

### E. TicketOS's Misrepresentations to Spotlight's Prospective Customer, A Global Financial Services Firm

63. In July 2021, both Spotlight and TicketOS participated in an RFP to a global financial services firm.

64. In this RFP, TicketOS claimed that its system has certain capabilities that it does not have. TicketOS claimed that it implemented "break glass security," (a method of bypassing security controls in the event of an emergency to regain control of the system, similar to a fireman break glass for elevators) but it did not have this capability.

65. TicketOS also represented that its system had the same integration with Ticketmaster that Spotlight had, which was a material factor for the global financial services firm.

66. As a result of TicketOS's misrepresentations, the global financial services firm awarded the contract to TicketOS over Spotlight.

### F. TicketOS's Misrepresentations to Spotlight's Existing Customer, A Paper Products Manufacturer

67. In June of 2022, Spotlight's customer, a paper products manufacturer, informed Spotlight that it would not renew its contract with Spotlight, and would be ending the contract at the end of the contract date of September 30, 2022.

68. On or about September 27, 2024, Spotlight learned from the paper products manufacturer's former Director of Corporate Marketing that he moved the business to TicketOS because TicketOS stated they had the same integration with Ticketmaster as Spotlight, but could provide the same services that Spotlight provided at a reduced cost.

69. As a result of TicketOS's misrepresentations, the paper products manufacturer

moved its account from Spotlight to TicketOS.

### G. Damages to Spotlight Caused by TicketOS's Malfeasance

70. TicketOS engaged in a marketing campaign promoting its ticket management services with false representations of integration with Ticketmaster to countless prospective customers through in person sales pitches.

71. Representatives of TicketOS, including Strulson, have repeated the above-described false representations concerning integration with Ticketmaster directly to prospective customers, including clients and potential clients of Spotlight.

72. The full extent of TicketOS's interference with Spotlight in the marketplace is presently unknown to Spotlight.

73. TicketOS's fraudulent conduct has thus inflicted and continues to inflict irreparable harm upon Spotlight.

74. As a direct result of TicketOS's actions, Spotlight has also lost the full benefit of the exclusive integration relationship with Ticketmaster for which Spotlight has paid annual fees and a revenue share totaling millions of dollars.

75. As a direct result of TicketOS's actions, Ticketmaster has lost the full benefit of its agreement with Spotlight based on lost commissions from TicketOS taking customers based on fraudulent conduct.

76. If left unchecked, TicketOS's fraudulent actions will continue to irreparably harm Spotlight and deceive the market and public, including Spotlight's current and potential customers.

77. As a direct result of TicketOS's actions, Spotlight has also lost business contracts and dealings with existing and prospective customers.

### COUNT I – FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)

78. All of the above allegations are hereby incorporated as if fully set forth herein.

79. Defendants' marketing and advertising of their services, which directly compete with Spotlight's services, constitute false and deceptive advertising under the Lanham Act.

80. TicketOS has published false information concerning its functionality and purported integration with Ticketmaster as well as security protocols on its public website and made oral and/or written misrepresentations during direct sales pitches.

81. These repeated representations that TicketOS is integrated with Ticketmaster's platform or that it has a contract for integration with Ticketmaster, and that it provides "break glass security" are false, untrue, and misleading, as TicketOS is not integrated with Ticketmaster, nor does it have a contractual right to be integrated with Ticketmaster, and TicketOS did not implement the required "break glass security" called for in the prospective customers' RFP.

82. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration in this category.

83. TicketOS is not integrated with Ticketmaster's platform.

84. TicketOS has made, and continues to make, false and deceptive statements and claims about its platform by representing to current and potential consumers—in advertising material on its website—that the TicketOS has integration with Ticketmaster.

85. TicketOS knew or should have known that their advertising claims have not been substantiated and, in any event, are false and deceptive because it does not have integration with Ticketmaster and because it was aware of Spotlight's exclusive rights to integration in this space.

86. These statements constitute commercial advertising or promotion within the meaning of the Lanham Act.

87. TicketOS's false and deceptive advertising statements and claims have a tendency

to confuse, mislead and deceive a substantial segment of its audience as to the nature, characteristics, and qualities of TicketOS's platform.

88.     Plaintiff's false and deceptive advertising statements and claims are material in that they are likely to influence consumer purchasing decisions.

89.     Plaintiff placed these false and deceptive advertising statements and claims in interstate commerce by disseminating these representations nationwide on its website and by making in person pitches to prospective customers across the country.

90.     As a direct and proximate result of these deceptive acts, Spotlight has been damaged, and will continued to be damaged, in an amount that will be ascertained according to proof. Spotlight's damages include actual damages in the form of the diminished goodwill and lost profits stemming from reduced demand for its services caused by TicketOS' false and deceptive advertising; the disgorgement of any profits that TicketOS unfairly realized, retained or gained through its unlawful conduct in the course of their false and deceptive marketing campaigns; and the costs of this action.

91.     Although the full extent of Spotlight's injuries due to TicketOS's conduct is presently unknown, Spotlight as described above has lost business to TicketOS due to the latter's false representations during pitches and RFP processes involving Spotlight.  Even when Spotlight has won certain customer's business, it has been for a reduced price due to TicketOS's misrepresentations.  Spotlight is also currently engaged in ongoing pitches and in RFP processes involving TicketOS where TicketOS' misrepresentations are actively causing harm to Spotlight. Spotlight would not have lost the business of these entities, or been forced to sell their services for a reduced price, had it not been for TicketOS's unlawful, unfair, and fraudulent conduct.

92.     Spotlight will continue to suffer injury its business associated with the sale of its

competing services unless and until TicketOS and any others in active concert with TicketOS are enjoined from continuing their wrongful acts, as described herein.

93. Based on the foregoing, TicketOS has engaged in false and deceptive advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

94. On information and belief, TicketOS has engaged in this activity knowingly, willfully, and in bad faith, justifying the assessment of enhanced damages against it. TicketOS knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

95. TicketOS's acts make this an exceptional case under 15 U.S.C. § 1117(a), and Spotlight is thus entitled to an award of its attorneys' fees and costs.

## COUNT II – INTENTIONAL INTERFERENCE WITH A CONTRACT

96. All of the above allegations are hereby incorporated as if fully set forth herein.

97. TicketOS intentionally interfered with a contract between Spotlight and a paper products manufacturer.

98. Upon information and belief, TicketOS was aware of Spotlight's contract with the paper products manufacturer and induced said customer to not renew their contract with Spotlight.

99. TicketOS misrepresented its capabilities to the paper products manufacturer, including having a "break glass" security protocol and integration with Ticketmaster, neither of which was true.

100. As a result of TicketOS' misrepresentations, it induced the paper products manufacturer to not renew its contract with Spotlight and moved its business to TicketOS.

101. TicketOS also intentionally interfered with a contract between Spotlight and Ticketmaster.

102.    Because of TicketOS' misrepresentations about its integration with Ticketmaster, it diverted business away from Spotlight, including but not limited to, its business with the aforementioned paper products manufacturer, which hindered Spotlight's ability to fully benefit from its exclusive contract with Ticketmaster.

103.    As described above, an economic relationship existed between Spotlight and a paper products manufacturer was supplying economic benefits to Spotlight.

104.    As described above, TicketOS had knowledge of the existence of the exclusive contractual relationship with Ticketmaster, but took intentional acts designed to disrupt and interfere with this relationship.

105.    Since at least 2019, TicketOS has publicly and falsely represented and advertised through its public website, marketing materials, and direct communications with potential clients that TicketOS has the same integration with Ticketmaster as Spotlight, that TicketOS has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

106.    Representatives of TicketOS, including Sturlson, have repeated these above-described false representations directly to existing and prospective customers, including in connection with pitches and RFP processes involving customers and potential customers of Spotlight.

107.    These representations are fraudulent and false. TicketOS does not have Ticketmaster integration. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

108.    TicketOS knows that what it is doing is wrong. TicketOS knows that Spotlight is

the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

109. TicketOS's acts have actually caused a disruption to Spotlight's above-described contracts. As a direct result of TicketOS's actions, and as described above, Spotlight has lost business to TicketOS due to the latter's false representations during pitches and RFP processes involving Spotlight's customers.

110. In addition to lost sales and revenue, these misrepresentations cause Spotlight to suffer lost goodwill and harm to its reputation.

111. TicketOS's conduct substantially caused this harm.

112. The aforementioned conduct of TicketOS was willful, oppressive, malicious, and/or fraudulent, thereby also justifying an award of punitive damages.

### COUNT III – INTENTIONAL INTERFERENCE WITH PROSEPECTIVE ECONOMIC ADVANTAGE

113. All of the above allegations are hereby incorporated as if fully set forth herein.

114. TicketOS intentionally interfered with a prospective business opportunity of Spotlight because TicketOS misrepresented its capabilities to a global financial services firm, which resulted in Spotlight losing the business opportunity to TicketOS.

115. As described above, economic relationships existed between Spotlight and certain potential customers which had or have a probability of supplying economic benefits to Spotlight in the future.

116. TicketOS had knowledge of the existence of these relationships.

117. TicketOS took intentional acts designed to disrupt and interfere with these relationships.

118. Since at least 2019, TicketOS has publicly and falsely represented and advertised

through its public website, marketing materials, and direct communications with potential clients that TicketOS has the same integration with Ticketmaster as Spotlight, that TicketOS has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

119.    Representatives of TicketOS, including Sturlson, have repeated these above-described false representations directly to existing and prospective customers, including in connection with pitches and RFP processes involving Spotlight.

120.    These representations are fraudulent and false. TicketOS does not have Ticketmaster integration. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

121.    TicketOS knows that what it is doing is wrong. TicketOS knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

122.    TicketOS's acts have actually caused a disruption to Spotlight's above-described economic relationships. As a direct result of TicketOS's actions, and as described above, Spotlight has lost business to TicketOS due to the latter's false representations during pitches and RFP processes involving Spotlight's potential customers. Spotlight is also currently engaged in ongoing pitches and in RFP processes involving TicketOS where TicketOS's misrepresentations are actively causing harm to Spotlight.

123.    In addition to lost sales and revenue, these misrepresentations cause Spotlight to suffer lost goodwill and harm to its reputation.

124.    TicketOS's conduct substantially caused this harm.

125. The aforementioned conduct of TicketOS was willful, oppressive, malicious, and/or fraudulent, thereby also justifying an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Spotlight requests judgment against TicketOS as follows:

A. Issue a preliminary and permanent injunction enjoining TicketOS from representing that TicketOS has integration with Ticketmaster's platform;

B. Issue a preliminary and permanent injunction enjoining TicketOS from any further violations of the Lanham Act;

C. Issue a preliminary and permanent injunction ordering TicketOS to remove from its website and any marketing materials any representations that TicketOS has integration with Ticketmaster's platform;

D. Award Spotlight damages in an amount to be determined at trial;

E. Award Spotlight punitive, special, and/or exemplary damages in an amount to be determined at trial;

F. Order disgorgement of TicketOS's profits;

G. Award Spotlight its costs, attorneys' fees, and pre- and post-judgment interest; and

H. Enter any other relief that is just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

\*       \*       \*

|  |  |  |
|---|---|---|
|  |  | **HUNTON ANDREWS KURTH LLP**<br>Counsel for Plaintiff |
| DATED: January 7, 2025 | By: | */s/ Torsten M. Kracht*<br>Torsten M. Kracht (Atty. ID # 3241998)<br>tkracht@HuntonAK.com<br>Edward T. Colbert, Esq.<br>(*Pro Hac Vice* application forthcoming)<br>ecolbert@HuntonAK.com<br>Erik C. Kane, Esq.<br>(*Pro Hac Vice* application forthcoming)<br>ekane@HuntonAK.com<br>**HUNTON ANDREWS KURTH LLP**<br>2200 Pennsylvania Avenue NW<br>Suite 900<br>Washington, DC 20037-1701<br>Telephone: (202) 955-1500<br>Facsimile: (202) 778-2201<br><br>Christopher M. Pardo, Esq.<br>(*Pro Hac Vice* application forthcoming)<br>cpardo@HuntonAK.com<br>**HUNTON ANDREWS KURTH LLP**<br>60 State Street, Suite 2400<br>Boston, Massachusetts 02109<br>Telephone: (617) 648-2800<br>Facsimile: (617) 433-5022<br><br>Katherine P. Sandberg, Esq.<br>(*Pro Hac Vice* application forthcoming)<br>ksandberg@HuntonAK.com<br>**HUNTON ANDREWS KURTH LLP**<br>50 California Street, Suite 1700<br>San Francisco, CA 94111<br>Telephone: (415) 975-3700<br>Facsimile: (415) 975-3701<br><br>*Attorneys for Plaintiff*<br>*Spotlight Ticket Management, Inc.* |