**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., | Case No. 2:25cv00170 MCA (JSA) |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| v. | |
| TICKETOS, TICKETOS TECHNOLOGY, INC., and NEXT SPORTS & ENTERTAINMENT, LLC, | |
| *Defendants*. | |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Spotlight Ticket Management, Inc. ("Plaintiff"), by and through its

attorneys, Hunton Andrews Kurth LLP, for its First Amended Complaint[1] against

defendants TicketOS, TicketOS Technology, Inc., and Next Sports & Entertainment,

LLC (collectively, "Defendants" or "TicketOS"), alleges, on knowledge as to its

own actions, and otherwise upon information and belief, as follows:

1.    This is an action for false advertising under Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of tortious

interference with prospective economic advantage and contract under the common

---

[1] Plaintiff files its First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B).

laws of the State of New Jersey, all arising from the Defendants' false representation that they are integrated with Ticketmaster.

2.     Plaintiff seeks injunctive and monetary relief.

## I.     PARTIES

3.     Plaintiff Spotlight is a Delaware corporation with its principal place of business at 256635 West Agoura Road, Calabasas, California, 91302.  Spotlight does business as "TicketManager."

4.     TicketOS and TicketOS Technology, Inc. are Delaware corporations with a principal place of business at 16 Portland Place, Montclair, New Jersey 07042. Ari Strulson is the Chief Executive Officer of both entities.

5.     Next Sports & Entertainment, LLC ("Next") is a limited liability corporation with a main business address of 5 Chadwick Road, Livingston, New Jersey 07042, which is its principal place of business. Its sole member, Ari Strulson, is a resident of New Jersey. Mr. Strulson's residential address is the same as Next's main business address.

6.     On Defendants' website, the Terms of Service state that the TicketOS website is operated by Next Sports & Entertainment, LLC. **(Exhibit  A)**

7.     Similarly, the Privacy Policy on Defendants' website states that it governs visitors' "use of the various services offered by Next Sports & Entertainment, LLC." **(Exhibit B)**

- 2 -

8.      Defendants' cookie policy on its website states that all questions or comments should be directed to Next Sports & Entertainment, LLC. **(Exhibit C)**

9.      Next's website also advertises for TicketOS.  It states that its "sister company, TicketOS, helps companies manage their sports, entertainment and sponsorship assets." **(Exhibit D)**

10.      Plaintiff is informed and believes, and based thereon alleges that at all times material hereto, each of the Defendants named herein was/were the ostensible agent, employee, alter ego and/or joint venture of, or working in concert with each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity. To the extent said acts, conduct, and omissions were perpetrated by certain Defendants, each of the remaining Defendants confirmed and ratified said acts, conduct, and omissions of the acting Defendant.

11.      Upon information and belief, and based on the foregoing in paragraphs 4-9, it appears the corporate ticket management service offering under the brand TicketOS is offered by all the Defendants acting in unison.  Therefore, the actions complained of herein and the causes of action apply equally to all Defendants.

## II.    <u>JURISDICTION AND VENUE</u>

12.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles

of supplemental jurisdiction under 28 U.S.C. § 1367.

13.     The claims for false advertising arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*. Therefore, this Court has subject matter and original jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), respectively.

14.     The claim for tortious interference arises under New Jersey common law, and is so related to the federal claims asserted in this case that it forms part of the same case or controversy. Therefore, this Court has subject matter and original jurisdiction over this claim pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

15.     This Court has personal jurisdiction over Defendants because Defendants' principal places of business are in the State of New Jersey, and on information and belief, Defendants have committed a tortious act within the State of New Jersey (including within this judicial district), and Spotlight's claims arise out of this tortious act.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants reside in this district, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.    FACTUAL BACKGROUND

### A.    Spotlight's Business

17.     Spotlight was founded in 2007 as a software startup to connect

corporations and their customers with ticket and event management solutions.

18.     Since then, Spotlight has grown to managing and automating over 30 million invitations, registrations, and tickets annually.

19.     Spotlight serves its clients by managing ticket inventories and events, providing the systems for ticket delivery and fulfillment, as well as the technology for mobile entry into events.

20.     Spotlight also partners directly with professional and college sport teams, venues, and well-known third-party ticketing and event management applications to give Spotlight's customers and partners both a platform and the resources necessary to manage, analyze, and resell tickets.

21.     In addition to managing ticket inventories for companies, venues, and teams, Spotlight creates and manages loyalty programs that enable Spotlight's users to reward their own clients, prospects, and employees with live events.

22.     Spotlight also manages analytical technology that provides its users with data reporting on factors such as who used the tickets and why, which allows Spotlight's customers to reduce waste and drive greater and new return on investment.

### B.     Spotlight's Partnership with Ticketmaster

23.     Ticketmaster Entertainment, LLC ("Ticketmaster") is a preeminent ticket sales and distribution company that sells tickets for live entertainment events

to the general public on behalf of its clients through its website, mobile app, and telephone call centers.

24.     In October of 2016, Spotlight and Ticketmaster entered into a Registered Vendor and Affiliate Agreement (the "Agreement"), whereby Spotlight was granted the exclusive right to integrate its technology with Ticketmaster's software and systems platform for corporate ticket management and business events.

25.     Simply stated, "integration" in the context of computer systems refers to the process of connecting and enabling different systems and applications to talk directly to one another to work together seamlessly.

26.     Most typically, this is achieved through the use of application programming interfaces ("APIs") that enable one computer program to send and receive data directly with another computer program.

27.     Through their integration, Spotlight's system is able to "talk" to the Ticketmaster system to access certain functionality within Ticketmaster's system to enable Spotlight customers to take specific actions related to their corporate ticket management.

28.     Ticketmaster and Spotlight enable companies to manage tickets directly with their team and venue providers with technology including the discovery of inventory, transfer of mobile tickets, and attendance scan information in real time.

29.     Simply put, Spotlight is the only company that has Ticketmaster

integration in the business event and corporate ticket management category—that is, the ability to automatically and directly move Ticketmaster tickets without needing to go through the Ticketmaster website or a third party to do so.

30.     Spotlight pays Ticketmaster a significant annual fee each year in exchange for this exclusive integrated partnership, in addition to a percentage of annual revenue earned by Spotlight.

31.     To date, Spotlight has paid millions of dollars for the right to be the exclusive corporate ticket management platform for Ticketmaster and the only company to be integrated with Ticketmaster's software and systems platform for that purpose.

32.     Both Spotlight and Ticketmaster have publicized their exclusive integration partnership, and it is well known in the industry.

33.     Spotlight's exclusive integration partnership with Ticketmaster provides Spotlight with a significant competitive edge in relation to its competitors.

34.      The Agreement and Spotlight's exclusive integration partnership with Ticketmaster remains in full force and effect today.

### C.     TicketOS's Business

35.     TicketOS was founded in 2001, and was originally developed and owned by a company called RazorGator.

36.    Around 2010, RazorGator ran into financial issues after it purchased too many tickets for the World Cup and Vancouver Olympics that cost the company $3.5 million dollars and resulted in it laying off about a quarter of its employees.

37.    In 2018, and as RazorGator went bankrupt, TicketOS was acquired by Entertainment Benefits Group ("EBG").

38.    Unable to invest and wanting to get the assets off the books, EBG sold TicketOS to Ari Strulson in early 2020. Mr. Strulson is the current Chief Executive Officer of TicketOS and TicketOS Technology, Inc. and is the sole member of Next Sports & Entertainment, LLC.

### D.    TicketOS's False and Deceptive Advertising

39.    Since at least 2019, Defendants' have been publicly and falsely representing and advertising through their public website, direct communications, and in person sales pitches with potential clients that TicketOS (i) has the same integration with Ticketmaster as Spotlight, (ii) has the contractual right to integrate with Ticketmaster, and (iii) has the same functionality as Spotlight.  None of these representations are true.

40.    Defendants' website highlights these false and deceptive representations.

41.    On Defendants' website, on a page titled *Touchless Fulfillment*, in discussing its corporate ticket management services, Defendants falsely state:

"TicketOS integrates with all major mobile ticketing providers." (**Exhibit E**.)



42.     The representation that TicketOS integrates with all major mobile ticketing providers is literally false.  TicketOS does not have any integration with Ticketmaster for corporate ticket management, the largest mobile ticketing provider.

43.     Defendants' main page of their website further touts their "Touchless Fulfillment," and further suggests their false claim of integration with Ticketmaster by stating that customers can "[r]eplace your ticket transfer process without our touchless fulfillment system, no more logging into Ticketmaster, Tickets.com, AXS, or any other ticket accounts." (**Exhibit F**.)



44.    Customers upon seeing these misrepresentations on Defendants' website would believe that TicketOS actually is integrated with Ticketmaster.

45.    Defendants' misrepresentations do not end with their website. Upon information and belief, Defendants make sales pitches to prospective clients regarding their corporate ticket management services, where they orally tout the benefits of TicketOS, including its purported integration with Ticketmaster.

46.    Upon information and belief, Defendants have engaged in a campaign of disinformation, marketing their corporate ticket management services to numerous consumers through direct sales pitches where they misrepresent that they

have an integration with Ticketmaster and that they can offer the same functionality as Spotlight at a lower price.  Both representations are false.

47.    The ticket management industry is a niche industry with only a handful of competitors.  Each of the ticket management industry players market their services primarily to companies that use a large amount of tickets for various purposes in their businesses.

48.    However, it should be noted that while such companies buy a lot of tickets, they are typically not sophisticated when it comes to corporate ticket management.  In most cases, these customers seek to utilize a corporate ticket management service because they lack the resources and understanding of the process of handling huge volumes of tickets.  The customers rely on the corporate ticket management provider to seamlessly handle transfer of their tickets and ensure such tickets are readily usable by the multitude of potential recipients of such tickets.

49.    It is standard practice to market ticket management services through direct sales pitches tailored to prospective clients.

50.    Upon information and belief, these representations—made on Defendants' website and in their interactions with potential clients—are false and deceptive.

51.    These statements constitute commercial advertising or promotion within the meaning of the Lanham Act.

52.     TicketOS does not have Ticketmaster integration for corporate ticket management.

53.     Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

54.     Spotlight is also the *only* company that has Ticketmaster integration for the business event and corporate ticket management category.

55.     To date, Spotlight has paid millions of dollars in annual fees for that privilege.

56.     Defendants *know* that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

57.     Defendants also know that Spotlight is the only company that has Ticketmaster integration for business events and corporate ticket management.

58.     In a public letter dated March 31, 2021, Ticketmaster affirmed that it entered into an "**exclusive** partnership" with Spotlight/TicketManager and that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market."  (**Exhibit G** (emphasis in original).)

59.     In that letter, Ticketmaster warns consumers that vendors like TicketOS in the ticket and event management marketplace are "mis-representing …

capabilities they have with Ticketmaster" and asks consumers to report any such false claims directly to Ticketmaster.  (*Id.*)

60.     Upon information and belief, Ticketmaster sent this letter specifically to Defendant TicketOS.

61.     Defendants in fact *admitted* they knew about Spotlight's contractual rights.  On July 11, 2019, Ari Strulson (an officer and member of all three Defendants) told Ken Hanscom, Spotlight's Chief Operating Officer, that he admired Spotlight's exclusive relationship with Ticketmaster, but that companies were finding ways to get around it.

62.     Upon information and belief, in an apparent effort to circumvent Spotlight's exclusive contractual arrangement with Ticketmaster, Defendants are utilizing a third party service to access Ticketmaster and facilitate ticket transactions.

### E.     Third Party Integrations

63.     While certain third parties do work with Ticketmaster on secondary market ticket sales (e.g., resales through StubHub), they are prohibited from operating in the business events and corporate ticket management space.

64.     Specifically, Ticketmaster makes a specific suite of API functions available to ticket brokers that are reselling tickets, typically on secondary ticket markets (e.g., Stubhub).  The Ticketmaster API suite (referred to as Trade Desk)

enables transfer of such tickets on secondary markets and updating of ownership information.

65.    Upon information and belief, the Trade Desk API suite contractually limits the use of the API and does not allow use in a manner that derives revenue from use of the API such as in the field of corporate ticket management.

66.    Moreover, the Trade Desk API is more limited in functionality than the exclusive integration that Spotlight has with Ticketmaster.  The Trade Desk API only provides certain functions like ticket transfers for brokers.  It does not, for example, have features like real time reporting when scanning tickets at venues. That type of functionality is exclusive to Spotlight's integration with Ticketmaster.

67.    So while using a third party intermediary that utilizes Trade Desk API may provide limited functionality in the context of ticket brokerage services, it does not provide the same functionality as Spotlight's exclusive integration with Ticketmaster.

68.    However, upon information and belief, TicketOS is not itself using the Trade Desk API.  Rather, upon information and belief, TicketOS uses third party service providers and those third party service providers utilize the Trade Desk API with their third party system.

69.    But using a third party intermediary means that TicketOS itself is not integrated with the Ticketmaster system.

70.    In particular, if TicketOS utilizes a third party intermediary, then TicketOS's system would not be "talking" or exchanging data directly with Ticketmaster's system.

71.    Rather, TicketOS's system would be interacting with the third party intermediary system.  This could be achieved through an integration of TicketOS' system with the third party system, or it could be a manual interaction that requires either human intervention or use of some semi-automated process such as by using a bot.

72.    Upon information and belief, the third party intermediary similarly might either talk to Ticketmaster's system through an integration (such as the aforementioned Trade Desk API that prohibits corporate ticket management) or by means of a manual process requiring human intervention or use of bots.

73.    Even in the scenario where TicketOS is arguably integrated with the third party, and the third party is separately integrated with Ticketmaster, TicketOS' system would not be talking directly with Ticketmaster.  In that scenario, TicketOS would interact and pass information back and forth with the third party intermediary. The third party intermediary would separately interact with and pass information back and forth with Ticketmaster.

74.    In such a case, Defendants would be relying entirely on the third party intermediary and would not themselves have access to any functionality of

Ticketmaster's systems.

75.    Moreover, Defendants' ability to process Ticketmaster tickets would inherently be less reliable than having an integration with Ticketmaster.  This is because Defendants would rely entirely on the third party to process the tickets for them.  If the third party, outside of Defendants' control, has any issues (such as network connectivity issues, relationship problems with Ticketmaster, etc.), then Defendants would not be able to process the Ticketmaster tickets for their customers. Moreover, by introducing a third party into the equation, Defendants increase the likelihood of connectivity issues resulting in an inability to process Ticketmaster tickets as their system relies on two separate connections, their own with the third party, and the third party's with Ticketmaster (which is outside of their control).

76.    In addition, by inappropriately using a tool such as Trade Desk, customers risk channeling their data through a tool not built to handle the corporate security required for corporate ticket management.  Using such a tool without the proper safeguards could expose the customers to violations of their own privacy agreements and breach their own security protocols exposing them to violations of various data privacy laws.

77.    If Defendants are indeed able to provide their services to their customers for a lower price than Spotlight, which they publicly claim, then it is because they are not integrated with Ticketmaster (avoiding the significant

integration fees charged by Ticketmaster), and as such offer an inferior and more unreliable service.

78.     Defendants' false and deceptive advertising statements and claims are about Ticketmaster integration are material in that they are likely to influence consumer purchasing decisions. This is because services that are not integrated with Ticketmaster are inferior and unreliable.

79.     Based on Defendants' misrepresentations, it is likely that consumers will incorrectly conclude that using TicketOS is at least on par with and as reliable as using Spotlight.  Consumers would be deceived and would not realize the inferiority of the service until breakdowns occur such as what happened with another competitor of Spotlight using an intermediary where some 2,000 Ticketmaster tickets disappeared as a result and another incident where the connection to Ticketmaster through the intermediary was interrupted preventing customers from processing their Ticketmaster sourced tickets.

80.     Defendants' false and deceptive advertising statements and claims have a tendency to confuse, mislead and deceive a substantial segment of their audience as to the nature, characteristics, and qualities of their services.

### F.     TicketOS's Misrepresentations to Spotlight's Prospective Customer, A Global Financial Services Firm

81.     In July 2021, both Spotlight and TicketOS participated in an RFP to a global financial services firm.

82.     In this RFP, TicketOS claimed that its system has certain capabilities that it does not have.  TicketOS claimed that it implemented "break glass security," (a method of bypassing security controls in the event of an emergency to regain control of the system, similar to a fireman break glass for elevators) but it did not have this capability.

83.     TicketOS also represented that its system had the same integration with Ticketmaster that Spotlight had, which was a material factor for the global financial services firm.

84.     As a result of TicketOS's misrepresentations, the global financial services firm awarded the contract to TicketOS over Spotlight.

**G.     TicketOS's Misrepresentations to Spotlight's Existing Customer, A Paper Products Manufacturer**

85.     In June of 2022, Spotlight's customer, a paper products manufacturer, informed Spotlight that it would not renew its contract with Spotlight, and would be ending the contract at the end of the contract date of September 30, 2022.

86.     On or about September 27, 2024, Spotlight learned from the paper products manufacturer's former Director of Corporate Marketing that he moved the business to TicketOS because TicketOS stated they had the same integration with Ticketmaster as Spotlight, but could provide the same services that Spotlight provided at a reduced cost.

87.     As a result of TicketOS's misrepresentations, the paper products

- 18 -

manufacturer moved its account from Spotlight to TicketOS.

**H.    Damages to Spotlight Caused by TicketOS's Malfeasance**

88.    Defendants engaged in a marketing campaign promoting their ticket management services with false representations of integration with Ticketmaster and/or having glass break security functionality to countless prospective customers through in person sales pitches.

89.    Representatives of Defendants, including Strulson, have repeated the above-described false representations concerning integration and/or glass break functionality with Ticketmaster directly to prospective customers, including clients and potential clients of Spotlight.

90.    The full extent of Defendants' interference with Spotlight in the marketplace is presently unknown to Spotlight.

91.    Defendants' fraudulent conduct have thus inflicted and continues to inflict irreparable harm upon Spotlight.

92.    As a direct result of Defendants' actions, Spotlight has also lost the full benefit of the exclusive integration relationship with Ticketmaster for which Spotlight has paid annual fees and a revenue share totaling millions of dollars.

93.    As a direct result of Defendants' actions, Ticketmaster has lost the full benefit of its agreement with Spotlight based on lost commissions from Defendants taking customers based on fraudulent conduct.

94.     If left unchecked, Defendants' fraudulent actions will continue to irreparably harm Spotlight and deceive the market and public, including Spotlight's current and potential customers.

95.     As a direct result of Defendants' actions, Spotlight has also lost business contracts and dealings with existing and prospective customers.

**COUNT I – FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)**

96.     All of the above allegations are hereby incorporated as if fully set forth herein.

97.     Defendants' marketing and advertising of their services, which directly compete with Spotlight's services, constitute false and deceptive advertising under the Lanham Act.

98.     Defendants have published false information concerning their functionality and purported integration with Ticketmaster as well as security protocols on their public website and made oral and/or written misrepresentations during direct sales pitches.

99.     These repeated representations that TicketOS is integrated with Ticketmaster's platform or that they have a contract for integration with Ticketmaster, and that they provides "break glass security" are false, untrue, and misleading, as TicketOS is not integrated with Ticketmaster, nor do they have a contractual right to be integrated with Ticketmaster, and Defendants did not

implement the required "break glass security" called for in the prospective customers' RFP.

100.    Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration in this category.

101.    TicketOS is not integrated with Ticketmaster's platform for corporate ticket management.

102.    Defendants have made, and continue to make, false and deceptive statements and claims about their platform by representing to current and potential consumers—in advertising material on their website—that the TicketOS has integration with Ticketmaster for their corporate ticket management services.

103.    Defendants knew or should have known that their advertising claims have not been substantiated and, in any event, are false and deceptive because they do not have integration with Ticketmaster for corporate ticket management and because they were aware of Spotlight's exclusive rights to integration in this space.

104.    These statements constitute commercial advertising or promotion within the meaning of the Lanham Act.

105.    Defendants' false and deceptive advertising statements and claims have a tendency to confuse, mislead and deceive a substantial segment of its audience as to the nature, characteristics, and qualities of TicketOS's platform.

106.   Defendants' false and deceptive advertising statements and claims are material in that they have influenced and are likely to influence consumer purchasing decisions.

107.   Defendants placed these false and deceptive advertising statements and claims in interstate commerce by disseminating these representations nationwide on their website and by making in person pitches to prospective customers across the country.

108.   As a direct and proximate result of these deceptive acts, Spotlight has been damaged, and will continue to be damaged, in an amount that will be ascertained according to proof. Spotlight's damages include actual damages in the form of the diminished goodwill and lost profits stemming from reduced demand for its services caused by Defendants' false and deceptive advertising; the disgorgement of any profits that Defendants unfairly realized, retained or gained through their unlawful conduct in the course of their false and deceptive marketing campaigns; and the costs of this action.

109.   Although the full extent of Spotlight's injuries due to Defendants' conduct is presently unknown, Spotlight as described above has lost business to Defendants due to the latter's false representations during pitches and RFP processes involving Spotlight.  Even when Spotlight has won certain customer's business, it has been for a reduced price due to Defendants' misrepresentations.  Spotlight is also

currently engaged in ongoing pitches and in RFP processes involving TicketOS where Defendants' misrepresentations are actively causing harm to Spotlight. Spotlight would not have lost the business of these entities, or been forced to sell their services for a reduced price, had it not been for Defendants' unlawful, unfair, and fraudulent conduct.

110. Spotlight will continue to suffer injury to its business associated with the sale of its competing services unless and until Defendants' and any others in active concert with Defendants are enjoined from continuing their wrongful acts, as described herein.

111. Based on the foregoing, Defendants have engaged in false and deceptive advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

112. On information and belief, Defendants have engaged in this activity knowingly, willfully, and in bad faith, justifying the assessment of enhanced damages against them. Defendants know that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

113. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Spotlight is thus entitled to an award of its attorneys' fees and costs.

**COUNT II – INTENTIONAL INTERFERENCE WITH A CONTRACT**

114. All of the above allegations are hereby incorporated as if fully set forth

herein.

115.

116.    Defendants intentionally interfered with a contract between Spotlight and Ticketmaster.

117.    Because of Defendants' misrepresentations about their integration with Ticketmaster to current and prospective customers of Spotlight, they diverted business away from Spotlight, which hindered Spotlight's ability to fully benefit from its exclusive contract with Ticketmaster.

118.    Defendants' misrepresentations and actions interfered with the exclusive benefit of Spotlight's contract with Ticketmaster.

119.    As described above, Defendants had knowledge of the existence of the exclusive contractual relationship with Ticketmaster, but took intentional acts designed to disrupt and interfere with this relationship.

120.    Since at least 2019, Defendants have publicly and falsely represented and advertised through their public website, marketing materials, and direct communications with potential clients that TicketOS has the same integration with Ticketmaster as Spotlight, that TicketOS has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

121.    Representatives of Defendants, including Sturlson, have repeated these above-described false representations directly to existing and prospective customers,

including in connection with pitches and RFP processes involving customers and potential customers of Spotlight.

122.    These representations are fraudulent and false. TicketOS does not have Ticketmaster integration.  Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

123.    Defendants know that what they are doing is wrong.  Defendants know that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

124.    Defendants' acts have actually caused a disruption to Spotlight's above-described contracts. As a direct result of Defendants' actions, and as described above, Spotlight has lost business to Defendants due to the latter's false representations during pitches and RFP processes involving Spotlight's customers.

125.    In addition to lost sales and revenue, these misrepresentations cause Spotlight to suffer lost goodwill and harm to its reputation.

126.    Defendants' conduct substantially caused this harm.

127.    The aforementioned conduct of Defendants was willful, oppressive, malicious, and/or fraudulent, thereby also justifying an award of punitive damages.

## COUNT III – INTENTIONAL INTERFERENCE WITH PROSEPECTIVE ECONOMIC ADVANTAGE

128.    All of the above allegations are hereby incorporated as if fully set forth herein.

129.    Defendants intentionally interfered with a prospective business opportunity of Spotlight because Defendants misrepresented their capabilities to a global financial services firm, which resulted in Spotlight losing the business opportunity to Defendants.

130.    Defendants also intentionally interfered with a prospective opportunity between Spotlight and a paper products manufacturer.  Specifically, Spotlight had an existing contractual relationship with the paper products manufacturer.

131.    Upon information and belief, Defendants were aware of Spotlight's contract with the paper products manufacturer and induced said customer to not renew their contract with Spotlight.

132.    Defendants misrepresented their capabilities to the paper products manufacturer, including having a "break glass" security protocol and integration with Ticketmaster, neither of which was true.

133.    As a result of Defendants' misrepresentations, they induced the paper products manufacturer to not renew its contract with Spotlight and moved its business to Defendants.

134.    As described above, economic relationships existed between Spotlight

and certain potential customers which had or have a probability of supplying economic benefits to Spotlight in the future.

135.    Defendants had knowledge of the existence of these relationships.

136.    Defendants took intentional acts designed to disrupt and interfere with these relationships.

137.    Since at least 2019, Defendants have publicly and falsely represented and advertised through their public website, marketing materials, and direct communications with potential clients that TicketOS has the same integration with Ticketmaster as Spotlight, that TicketOS has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

138.    Representatives of Defendants, including Sturlson, have repeated these above-described false representations directly to existing and prospective customers, including in connection with pitches and RFP processes involving Spotlight.

139.    These representations are fraudulent and false. TicketOS does not have Ticketmaster integration. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

140.    Defendants know that what they are doing is wrong.  Defendants know that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company

that has Ticketmaster integration. Defendants have acted with malice in that they engaged in a pattern of false advertising and making false representations in an effort to interfere with Spotlight's prospective business opportunity.

141.    Defendants' acts have actually caused a disruption to Spotlight's above-described economic relationships. As a direct result of Defendants' actions, and as described above, Spotlight has lost business to Defendants due to the latter's false representations during pitches and RFP processes involving Spotlight's potential customers. Spotlight is also currently engaged in ongoing pitches and in RFP processes involving TicketOS where Defendants' misrepresentations are actively causing harm to Spotlight.

142.    In addition to lost sales and revenue, these misrepresentations cause Spotlight to suffer lost goodwill and harm to its reputation.

143.    Defendants' conduct substantially caused this harm.

144.    The aforementioned conduct of Defendants was willful, oppressive, malicious, and/or fraudulent, thereby also justifying an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Spotlight requests judgment against Defendats as follows:

A.    Issue a preliminary and permanent injunction enjoining Defendants from representing that TicketOS has integration with Ticketmaster's platform;

B.      Issue a preliminary and permanent injunction enjoining Defendants from any further violations of the Lanham Act;

C.      Issue a preliminary and permanent injunction ordering Defendants to remove from their website and any marketing materials any representations that TicketOS has integration with Ticketmaster's platform;

D.      Award Spotlight damages in an amount to be determined at trial;

E.      Award Spotlight punitive, special, and/or exemplary damages in an amount to be determined at trial;

F.      Order disgorgement of Defendants' profits;

G.      Award Spotlight its costs, attorneys' fees, and pre- and post-judgment interest; and

H.      Enter any other relief that is just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

\*          \*          \*

**HUNTON ANDREWS KURTH
LLP**
Counsel for Plaintiff

DATED: April 9, 2025                    By:   */s/ Torsten M. Kracht*
                                              Torsten M. Kracht (Atty. ID #
                                              3241998)
                                              tkracht@HuntonAK.com
                                              Edward T. Colbert, Esq.
                                              (*Pro Hac Vice* application
                                              forthcoming)
                                              ecolbert@HuntonAK.com
                                              Erik C. Kane, Esq.
                                              (*Pro Hac Vice* application
                                              forthcoming)
                                              ekane@HuntonAK.com
                                              **HUNTON ANDREWS KURTH
                                              LLP**
                                              2200 Pennsylvania Avenue NW
                                              Suite 900
                                              Washington, DC 20037-1701
                                              Telephone:  (202) 955-1500
                                              Facsimile:  (202) 778-2201

                                              Christopher M. Pardo, Esq.
                                              (*Pro Hac Vice* application
                                              forthcoming)
                                              cpardo@HuntonAK.com
                                              **HUNTON ANDREWS KURTH
                                              LLP**
                                              60 State Street, Suite 2400
                                              Boston, Massachusetts 02109
                                              Telephone:  (617) 648-2800
                                              Facsimile:  (617) 433-5022

                                              Katherine P. Sandberg, Esq.
                                              (*Pro Hac Vice* application
                                              forthcoming)
                                              ksandberg@HuntonAK.com

- 31 -

**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone:  (415) 975-3700
Facsimile:   (415) 975-3701

*Attorneys for Plaintiff*
*Spotlight Ticket Management, Inc.*

121880.0000015 DMS 350777064v1