# Exhibit F

**HUNTON ANDREWS KURTH LLP**
Katherine P. Sandberg, Esq. (State Bar No. 301117)
ksandberg@HuntonAK.com
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone:  (415) 975-3700
Facsimile:   (415) 975-3701

*[Additional counsel listed on next page]*

Attorneys for Plaintiff
Spotlight Ticket Management, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SPOTLIGHT TICKET MANAGEMENT, INC., a Delaware corporation*,*

        Plaintiff,

    v.

CONCIERGE LIVE, LLC, a Georgia corporation,

        Defendant.

_____

CONCIERGE LIVE, LLC, a Georgia Corporation,

        Counterclaimant,

    v.

SPOTLIGHT TICKET MANAGEMENT, INC., a Delaware Corporation.

        Counter-Defendant.

CASE NO.: 2:24-CV-00859-WLH-SSC

*Assigned to the Hon. Wesley L. Hsu*

**DECLARATION OF PHIL VOLINI**

Action Filed: January 31, 2024

DECLARATION OF PHIL VOLINI

SPOTLIGHT_0053778

**HUNTON ANDREWS KURTH LLP**

Edward T. Colbert, Esq. (*Pro Hac Vice*)
ecolbert@HuntonAK.com
Erik C. Kane, Esq. (*Pro Hac Vice*)
ekane@HuntonAK.com
2200 Pennsylvania Avenue NW
Suite 900
Washington, DC 20037-1701
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

**HUNTON ANDREWS KURTH LLP**

Christopher M. Pardo, Esq. (*Pro Hac Vice*)
cpardo@HuntonAK.com
60 State Street, Suite 2400
Boston, Massachusetts 02109
Telephone:  (617) 648-2800
Facsimile:  (617) 433-5022

Attorneys for Plaintiff
Spotlight Ticket Management, Inc.

**Hunton Andrews Kurth LLP**
**50 California Street, Suite 1700**
**San Francisco, California 94111**

DECLARATION OF PHIL VOLINI

SPOTLIGHT_0053779

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

I, Phil Volini, declare as follows.

1.  I am over the age of eighteen years. I have personal knowledge of the matters set forth herein, and if called upon to do so, I could and would testify competently thereto.

2.  I am the Senior Vice-President of Product Management for Ticketmaster. I have worked for Ticketmaster for almost 16 years starting as an E-Commerce Marketing Manager, and then moving to Senior Director of Product, Vice-President of Product, and finally in my current role as Senior Vice-President.

3.  As the Senior Vice-President of Product Management for Ticketmaster, among my duties, I am responsible for overseeing the Resale Product Group of Ticketmaster's business.  This includes working with ticket brokers to assist in their transferring Ticketmaster tickets that they have sold to customers.

4.  As part of my role, I oversee use of a tool developed by Ticketmaster called TradeDesk.

5.  TradeDesk is a tool designed by Ticketmaster to assist brokers in accessing Ticketmaster accounts to facilitate transfer of tickets for resale.  This tool was originally a set of APIs called the Broker API, which later became the TradeDesk API.

6.  TradeDesk (and its predecessor Broker API) grew out of a need to prevent brokers from scraping, web crawling, and otherwise burdening Ticketmaster's website servers when trying to avoid manually transferring tickets that they were brokering.

7.  The tool was developed as a front end method to automate access to the Ticketmaster website and Ticketmaster user accounts to avoid the constant bombardment of Ticketmaster's servers by bots.

8.  TradeDesk was not specifically designed for corporate ticket management and lacks many features that other tools have for such a use case.

9.  TradeDesk is an automated access point to log into Ticketmaster website accounts and use existing website transfer functionality. TradeDesk users do no integrate their systems with Ticketmaster's systems.

DECLARATION OF PHIL VOLINI

SPOTLIGHT_0053780

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

10. Automatiq (and its predecessor Seat Scouts) have access to the TradeDesk API. They use TradeDesk in facilitating ticket transfers for both their broker customers and the Defendant, Concierge Live. The access to Ticketmaster that Automatiq/Seat Scouts and Concierge Live (through Automatiq) have through the TradeDesk API is no different from the access to the TradeDesk API that hundreds of ticket brokers have.

11. I understand that there has been a claim in this case that Ticketmaster has confirmed that Concierge Live has an integration with Ticketmaster through the Trade Desk and Ticket Info APIs (another Ticketmaster API provided to ticket brokers that was not specifically designed for corporate ticket management services). This claim is incorrect. Ticketmaster has confirmed that it allowed Concierge Live to have access to the TradeDesk API, like so many ticket brokers or other companies, but this is not an integration.

12. As part of the process to access TradeDesk, users obtain a security token from Ticketmaster. The security token allows Ticketmaster to identify which users should be charged for particular transfers involving TradeDesk.

13. In order to obtain a security token, users are required to agree to Ticketmaster's terms of use as well as the API developer terms of use, after which a security token is issued to the user. There is no special approval required to obtain a security token, which is automatically issued once a user agrees to Ticketmaster's terms of use for TradeDesk.

14. As I understand it, security tokens were issued to both Seat Scouts and Concierge Live.

15. I have confirmed that Concierge Live's TradeDesk security token is being used by a third party, Automatiq, and not by Concierge Live directly. Furthermore, I have not seen any evidence in Ticketmaster's logs or systems that Concierge Live uses its security token or otherwise accesses Ticketmaster's systems directly.

16. Ticketmaster requires that each and every ticket transfer by brokers (or Automatiq) be effectuated via TradeDesk and then Ticketmaster needs to be paid per

2

DECLARATION OF PHIL VOLINI

ticket transfer. TradeDesk charges Concierge Live fifty cents ($0.50) for each ticket that is transferred through the TradeDesk API via Automatiq. Any supposed "automation" involving "scraping," "web crawling," or any other similar "bot" programming for the use of transferring Ticketmaster tickets is strictly prohibited. Moreover, any computer "automated" actions resulting in the avoidance or circumvention of TradeDesk to transfer tickets is strictly prohibited by Ticketmaster and would be a breach of the terms of use associated with a user's access to the TradeDesk API (or any Ticketmaster API). Engaging in any of these prohibited activities as identified in this paragraph (and also detailed in the applicable Ticketmaster terms of use) results in the automatic revocation of a company's license (or any other right) to use or benefit from TradeDesk or any other Ticketmaster APIs.

17.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __30__ day of December, 2025, at _Palatine____, Illinois.

_____
Phil Volini

DECLARATION OF PHIL VOLINI

SPOTLIGHT_0053782

*Hunton Andrews Kurth LLP*
*50 California Street, Suite 1700*
*San Francisco, California 94111*