# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> TICKETOS, TICKETOS TECHNOLOGY, INC., and NEXT SPORTS & ENTERTAINMENT, LLC. <br><br> Defendants. | Civil Action No.: 2:25-cv-00170 <br><br><br> **MOTION DATE:** July 6, 2026 |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

**Patrick Papalia, Esq.**
**Christian A. Stueben, Esq.**
**ARCHER & GREINER**
A Professional Corporation
21 Main Street, Suite 353
Court Plaza South – West Wing
Hackensack, New Jersey 07601-7095
(201) 342-6000
*Attorneys for Defendants,*
*TicketOS, TicketOS Technology, Inc.*
*and Next Sports & Entertainment, LLC*

232154657 v2

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT .......................................................................1

PROCEDURAL HISTORY...............................................................................8

STATEMENT OF FACTS ..............................................................................10

   I. OVERVIEW OF KEY ALLEGATIONS IN THE SECOND AMENDED COMPLAINT ..........................................................10

LEGAL ARGUMENT.....................................................................................18

   I. STANDARD ON MOTION TO DISMISS ....................................18

   II. SPOTLIGHT HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE LANHAM ACT BECAUSE THE ONLY STATEMENTS ALLEGED WITH PARTICULARITY ARE NOT "LITERALLY FALSE" AND DO NOT DECEIVE CUSTOMERS, AND THE REMAINING STATEMENTS THAT SPOTLIGHT LABELS FALSE ARE CONCLUSORY, INADEQUATELY PLEADED, AND INHERENTLY IMPLAUSIBLE ...................................22

      A. Analysis of the Applicable Law and Alleged Statements........................22

      B. The SAC Separately Fails to Plausibly Allege Causation and Damages ..............................................................31

   III. SPOTLIGHT HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH A CONTRACT BECAUSE THE SAC ALLEGES LOST COMPETITIVE BENEFIT, NOT INTERFERENCE WITH ANYONE'S CONTRACTUAL PERFORMANCE..............................................................33

   IV. SPOTLIGHT HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE................................................................37

CONCLUSION...............................................................................................40

i

232154657 v2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............................18, 19

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007) ..................................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................18, 19, 21

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir.1997) ...............................................................................21

*Burtch v Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ..................................................................................19

*Cargill Glob. Trading v. Applied Dev. Co.*,
   706 F. Supp. 2d 563 (D.N.J. 2010)......................................................................35

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ..................................................................................22

*Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc.*,
   450 F.3d 130 (3d Cir. 2006) ..................................................................................19

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................32

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ........................................................................18, 19

*Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002) ...........................32

*Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*,
   679 F. Supp. 3d 53 (D.N.J. 2023).........................................................22, 23, 30

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)................................................................................................31

232154657 v2

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011)......................................................................19

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
  608 F. Supp. 1549 (E.D.Pa.1985).......................................................................20

*New Jersey Physicians United Reciprocal Exchange v. Boynton & Boynton, Inc.*,
  141 F. Supp. 3d 298 (D.N.J. 2015)........................................................20, 25, 33

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*,
  290 F.3d 578 (3d Cir. 2002) .................................................................22, 23, 26

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011) .................................................................22, 23, 26

*Reed v. Scheffler*,
  218 F. Supp. 3d 275 (D.N.J. 2016).....................................................................18

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ...............................................................................21

*Trans USA Prods. v. Howard Berger Co.*,
  No. 07–5924, 2008 WL 852324 (D.N.J. Mar. 28, 2008) ............................20, 22

*United Indus. Corp. v. Clorox Co.*,
  140 F.3d 1175 (8th Cir. 1998) ............................................................................23

**State Cases**

*Cedar Ridge Trailer Sales, Inc. v. Nat'l Cmty. Bank of New Jersey*,
  312 N.J. Super. 51 (App. Div. 1998)...................................................................35

*George F. Hewson Co. v. Hopper*,
  130 N.J.L. 525 (Err. & App. 1943).................................................................37, 38

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
  282 N.J. Super. 140, 659 A.2d 904 (App. Div. 1995).......................................35

*Kurtz v. Oremland*,
  24 N.J. Super. 235 (Ch. Div. 1952) ....................................................................37

iii

*Lamorte Burns & Co., Inc. v. Walters*,
  167 N.J. 285 (2001) ....................................................................................35

*Louis Schlesinger Co. v. Rice*,
  4 N.J. 169 (1950) ......................................................................................37

*Melveney v. McCrane*,
  138 N.J. Super. 456 (App. Div. 1976)........................................................37

*Newark Hardware & Plumbing Supply Co. v. Stove Mfrs. Corp.*,
  136 N.J.L. 401 (N.J. Sup. Ct. 1948), *judgment aff'd*, 137 N.J.L. 612
  (N.J. Ct. Err. & App. 1948) ........................................................................37

*Nostrame v. Santiago*,
  213 N.J. 109 (2013) ..............................................................................33, 34

*Printing Mart-Morristown v. Sharp Electronics Corp.*,
  116 N.J. 739 (1989) ....................................................................................37

*Sandler v. Lawn–A–Mat Chem. & Equip. Corp.*,
  141 N.J. Super. 437 (App. Div. 1976)........................................................35

*Sustick v. Slatina*,
  48 N.J. Super. 134 (App. Div. 1957)..........................................................37

*Vosough v. Kierce*,
  437 N.J. Super. 218 (App. Div. 2014)........................................................33

*Wear-Ever Aluminum, Inc. v. Townecraft Industries, Inc.*,
  75 N.J. Super. 135 (Ch. Div. 1962) ...........................................................37

**Federal Statutes**

Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B)...................................*passim*

**Rules**

Federal Rule of Civil Procedure 8 .........................................................................20

Federal Rule of Civil Procedure 9 .........................................................................20

Federal Rule of Civil Procedure 9(b).................................................................20, 21

232154657 v2

Federal Rule of Civil Procedure 12(b)(6) ...............................................................18

232154657 v2

Defendants, TicketOS, TicketOS Technology, Inc. and Next Sports & Entertainment, LLC (collectively, "Defendants") submit this brief in support of their Motion to Dismiss the Second Amended Complaint ("SAC") filed by Plaintiff, Spotlight Ticket Management, Inc. ("Plaintiff" or "Spotlight") against Defendants.

## PRELIMINARY STATEMENT

During oral argument on Defendants' Motion to Dismiss Spotlight's Amended Complaint, the Court gave Spotlight one final chance to plausibly allege claims that could survive a Motion to Dismiss.  As the Court said: "[I]t's all about the statements.  Nothing else."  But on Spotlight's ***fourth*** pleading,[1] it repeats the same statements found on Defendant TicketOS's website that the Court stated were "certainly not literally false" and expressed skepticism that they were even ambiguous or deceiving, as well as the same two examples of statements Defendants allegedly made in sales pitch meetings that previously did not pass muster for lacking the requisite particularity.  Instead, the SAC adds eight new examples of purportedly actionable statements, but **all** of them are entirely pled "upon information and belief," and are conclusory, repetitive, largely identical, and fail to

---

[1] Spotlight initially sued Defendants in New Jersey state court.  After Defendants filed a Motion to Dismiss, Spotlight voluntarily dismissed its state court action and filed in federal court.  With one pleading in state court and three pleadings in federal court, the SAC represents Spotlight's fourth pleading against Defendants.

1

meet the intermediate pleading standard required for Lanham Act claims, respectfully mandating dismissal.[2]

Specifically, the SAC's new additions clearly are aimed at the Court's comments about what would satisfactorily plead a Lanham Act claim, if plausibly alleged with particularity. But because Spotlight's claims are not plausible nor were they alleged with particularity, Spotlight has resorted to making summary allegations made "upon information and belief" the cornerstone of its SAC. In fact, the phrase "upon information and belief" appears 49 separate times in the SAC and supplies the core of every Lanham Act element. The technical premise of the case — that Defendants access Ticketmaster through a method that is not an integration — is pleaded on stacked information-and-belief qualifiers.[3] The allegations tying Defendants' alleged statements to customer purchasing decisions and to Spotlight's lost business are likewise pleaded on information and belief. The relevant inquiry in the Third Circuit is whether the information-and-belief paragraphs are supported by particularized factual allegations. Here they are not, and they also supply the core of the SAC's claims against Defendants.

---

[2] Paragraphs 77-128.

[3] Paragraphs 149-150.

2

232154657 v2

Not only do these new summary allegations fail to meet the intermediate pleading standard required for Lanham Act claims, they also directly undermine the plausibility of Spotlight's claims.    While Spotlight presents eleven different examples of Defendants' alleged "false and deceptive advertising," the eight new examples that have been added are purely based upon information and belief and contain almost the exact same summary statements of alleged false advertising, lacking specifics.[4]  The eleventh example is the TicketOS website, which the Court signaled was not literally false, nor ambiguous and plausibly misleading in context. Similarly, the first two examples are alleged sales pitch representations that were already part of the pleading that was dismissed, and the SAC adds no meaningful particularity to those allegations.[5]

The eight new examples are materially indistinguishable: they generally do not identify the customer, speaker, recipient, medium, exact words, or basis for Spotlight's belief.  In fact, two of them are word-for-word *identical*.[6]  Even the only named example, Advent Health, alleges only that TicketOS "misrepresented that it

---

[4] Paragraphs 84 – 116.

[5] Paragraphs 77 – 83.

[6] Paragraphs 84 – 91.

232154657 v2

had an integration with Ticketmaster,"[7] which lacks the required particularity.

Worse, the SAC itself acknowledges that Defendants could have an integration with Ticketmaster, clearly demonstrating that the aforementioned statement simply is not actionable under the Lanham Act. *See* Paragraph 68 ("Upon information and belief, even if TicketOS could somehow establish it had some form of integration with Ticketmaster, any alleged integration cannot do everything Spotlight's integration with Ticketmaster can do.").

As the Court has already said, this case is "all about the statements" and the simple fact is that the only statements that Spotlight identifies with any sort of particularity are not actionable, and the remaining summary and repetitive statements made purely upon information and belief do not pass muster under the required intermediate pleading standard. Spotlight's clear inability to plead plausible factual allegations with any degree of particularity is fatal because the SAC is Spotlight's fourth pleading and that Spotlight has already had the benefit of full briefing, the Court's guidance, and a final amendment opportunity.

As mentioned, the SAC adds new allegations as to Spotlight's exclusive capabilities that even further undermine the plausibility of Spotlight's allegations, squarely rendering them implausible and incapable of supporting "upon information

---

[7] Paragraph 114.

4

and belief" pleading.  For example, in direct response to the Court's instructions to elaborate on the functionality that Spotlight claims Defendants have misrepresented, on the one hand, the SAC claims that "Spotlight is the only corporate ticket management service with the ability to offer real-time scan data and to rescind transfer of tickets" **that numerous customers have testified that such features were** "**essential to their decision in selecting a corporate ticket management service"** and that **"TicketOS cannot offer real-time scan data or the ability to rescind ticket transfers through its corporate ticket management service**."[8]  The SAC also alleges that Defendants have been spreading actionable false statements "since at least 2019"[9] and the target audience is corporate customers.

Therefore, the SAC's newly added allegations make Spotlight's own theory incoherent: the SAC alleges the missing features were real-time, exclusive, and "essential" to customer purchasing decisions, yet also alleges customers remained deceived for years without pleading *any* customer reaction, complaint, or discovered mismatch.  Thus, the SAC's allegations are implausible because they are internally inconsistent and incoherent, particularly when alleging the absence of "real-time" functionality which absence would be immediately noticeable by customers.

---

[8] Paragraphs 47 and 48 (emphasis added).

[9] Paragraphs 61, 207, and 224.

5

In addition to more than 20% of the SAC being based only "upon information and belief," and with the key allegations being wholly conclusory and also implausible in nature, the SAC is also replete with speculation, conjecture, and hypothetical customer harms and damages in an attempt to conjure up a plausible claim. The words "if," "might," and "would" appear a dozen times when discussing various "scenarios" that Defendants "might" be engaging in.[10]  Most glaringly, Spotlight is unable to articulate any harm whatsoever that its customers experienced from Defendants' alleged statements, alleging that "customers **would** be deceived and **would not** realize the inferiority of the service [provided by Defendants'] . . ."[11] again showcasing that Spotlight is unable to provide a single example of a customer that was actually harmed by Defendants' statements, let alone any actual damages sustained by Spotlight, despite the passage of 7 years.

Spotlight has also clearly disregarded the Court's guidance that: "This case is not worth a ton of money right now" and this showcases yet another fatal infirmity of Spotlight's SAC: its complete inability to plausibly allege any damages. To the contrary, the SAC alleges that Defendants have been engaging in false advertising

---

[10] *See, e.g.*, Paragraphs 68, 152, 153, 154, 155, 158, 160, 163, 164, 165, 173, 174.

[11] Paragraph 174.

232154657 v2

through false statements **"[s]ince at least 2019,"**[12] that "the full extent of Spotlight's injuries due to Defendants' conduct is presently unknown,"[13] but that Spotlight's purported damages include "the disgorgement of any profits that Defendants unfairly realized, retained or gained through their unlawful conduct in the course of their false and deceptive marketing campaigns"[14] and "actual damages in the form of diminished goodwill and lost profits stemming from reduced demand for its services caused by Defendants' false and deceptive advertising."[15]  **In other words, Spotlight seeks discovery into Defendants' entire business since "at least 2019" and claims as only one component of its damages, all of Defendants' profits since "at least 2019" as well as any alleged profits that Spotlight "lost" due to Defendants' alleged statements since at least 2019.**  The SAC is not a pleading of false advertising.  It is a request for discovery in the hopes of finding a claim.

Regarding the other claims in the SAC, as before, the pleading fails to state claims for tortious interference.  Almost no contracts are identified, and the SAC is devoid of any allegations suggesting that *a single one* of Spotlight's contracting

---

[12] Paragraphs 61, 207, and 224 (emphasis added).

[13] Paragraph 197.

[14] Paragraph 196.

[15] Paragraph 196.

232154657 v2

partners breached *any* provisions in their contracts with Spotlight (whether caused by Defendants or not).  Moreover, the SAC fails to plausibly allege that Defendants acted with the requisite malice, because they are alleged to have acted in their own economic self-interest.  Nearly all "examples" of Defendants' alleged misconduct occurred in RFPs and sales pitches, a routine part of doing business.  Ultimately, Spotlight is complaining that Defendants are engaging in free competition with it in the marketplace, which is non-actionable.

The instant action, which began with Spotlight's state court filing in early October 2024, amounts to Spotlight's attempt to use the court system to stifle its legitimate competition.  After nearly two years and four pleadings, Spotlight still cannot plead actionable statements with the required specificity.  The SAC should be dismissed with prejudice.

## **PROCEDURAL HISTORY**

Spotlight filed its original state-court complaint on October 4, 2024, voluntarily dismissed it after Defendants moved to dismiss, and then filed this federal action. The SAC is Spotlight's fourth pleading against Defendants.

On February 25, 2026, the Court held oral argument on Defendants' Motion to Dismiss Spotlight's First Amended Complaint.  During this hearing, the Court made several comments that should guide this motion, including that this case is "[A]ll about the statements. Nothing else." *See* Certification of Patrick Papalia,

8

232154657 v2

**Exhibit A,** 7:25—8:2. (February 25, 2026 transcript of prior oral argument hearing) ("PP Cert."). Your Honor also expressly indicated that the Court was "not persuaded" by the content in the First Amended Complaint, and expressed skepticism that the complained-about statements contained on TicketOS's website were actionable Lanham Act claims because they were not literally false nor ambiguous yet plausibly deceiving. *See id.*, 8:3—9:1.

Finally, when providing instructions on how Spotlight may cure the deficiencies in its First Amended Complaint and specifically how to plausibly allege statements that may violate the Lanham Act, after expressing skepticism over the complained-about representations on TicketOS's website, the Court instructed: "That's very different than saying we are the same as Spotlight, our integration is the same, and that's where I think it's important for you to explain to what extent it involves functionality." *See id.*, 9:2—5.

Respectfully, Spotlight has not cured the deficiencies that existed in its prior pleadings and actually exacerbated them in its SAC and its elaboration as to Spotlight's "exclusive" real-time functionality that was "essential" to industry corporate customers.

9

## STATEMENT OF FACTS[16]

### I.    OVERVIEW OF KEY ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiff Spotlight and Defendant TicketOS both offer ticket management software to companies that own corporate tickets to entertainment events. *See* PP Cert., **Exhibit B**, ¶¶ 26-31, 61, 71, 75 (SAC). In other words, the two companies are direct competitors. The SAC alleges that: "The ticket management industry is a niche industry with only a handful of competitors." *See* SAC ¶ 73. It also alleges that the parties' current and prospective customers are not individuals and instead are "companies that buy a large number of tickets for various purposes in their businesses." *Id.* ¶ 73. The SAC further alleges that: "The [corporate] customers rely on the corporate ticket management provider to seamlessly handle transfer of their tickets and ensure such tickets are readily usable by the multitude of potential recipients of such tickets." *Id.* ¶ 74.

As before, the SAC's definition of "integration" is central. The SAC begins by claiming: "Simply stated, 'integration' in the context of computer systems is the 'process by which disparate systems exchange data or coordinate actions to cooperate.'" *Id.* ¶ 34. But a review of the SAC demonstrates that the definition of

---

[16] Defendants are taking the SAC's allegations as true only for the purposes of this Motion, because this is the required legal standard on a Motion to Dismiss.

10

232154657 v2

integration is not so "simple," at least in the context of Defendants' allegedly false

and statements.  For example, the SAC alleges that: "Upon information and belief,

in an apparent effort to circumvent Spotlight's exclusive contractual arrangement

with Ticketmaster, Defendants are utilizing a third-party service to access

Ticketmaster and facilitate ticket transactions." *Id.* ¶ 149.  Yet, the SAC also purports

to introduce a number of transcripts and survey evidence associated with Spotlight's

entirely unrelated case against Concierge Live,[17] including a survey conducted by

"well-known survey expert David Franklyn" that purportedly surveyed industry

corporate customers as to their understanding of the term "integration." *Id.* ¶ 38.

This survey evidence allegedly revealed that: "53.1% of respondents did not believe

that integration includes going through a third-party intermediary such as the method

likely used by TicketOS." *Id.* ¶ 161.

This survey evidence, apart from further revealing how "integration" is an

ambiguous consumer perception issue — as opposed to an unambiguous literal-

falsity issue — does not substitute for pleading with particularity the actual alleged

statements from Defendants.

---

[17] Concierge Live and whatever alleged failures may or may not exist in its ticket
management system, have nothing whatsoever to do with Defendants.

11

Returning to the Court's guidance that this case is "[A]ll about the statements. Nothing else," **all new alleged actionable statements contained in the SAC are made purely "upon information and belief**."[18]   Moreover, the only alleged statement from Defendants alleged with any degree of particularity is the statement on the TicketOS website that: "TicketOS integrates with all major mobile ticketing providers." *Id.* ¶ 118.   The Court has already discussed this statement and determined: "that's certainly not literally false, and you'd have a hard time convincing me that's even ambiguous because they define it that way." *See* Papalia Cert., Ex. A, 8:20—22.

After discussing skepticism that the complained-about statements on the TicketOS website were actionable, the Court went on to say: "That's very different than saying we are the same as Spotlight, our integration is the same, and **that's where I think it's important for you to explain to what extent it involves functionality**." *Id.* 9:2—5 (emphasis added). The Court provided further instructions to Spotlight as to how Spotlight could file an amended pleading that stated plausible claims, building on the prior functionality guidance, by stating: "Now, if they're in meetings, pitch meetings where you're already their client and

---

[18] Paragraphs 84 – 116.

they're saying, well, we're the same as Spotlight, we offer the same, that's a little different." *See id.*, 10:13—16.

Spotlight took this advice to heart and proceeded to list eight new examples of sales pitches where Defendants allegedly made false statements (examples 3-10, all based entirely "upon information and belief") to supplement the two examples of sales pitches that already had been dismissed for failing to meet the Lanham Act's intermediate pleading standard (examples 1 and 2).  All ten of these examples of sales pitches are largely repetitive, none provide any witnesses to the alleged false statements, only one mentions a customer name (example 10, Advent Health), and they all simply parrot the Court's instructions as to what would constitute an actionable claim, without providing any plausible supporting allegations.

The Court directed Spotlight to provide more detailed allegations as to the functionality of Spotlight's system for very good reason: to see if Spotlight could plausibly assert a claim that Defendants truly are going into the marketplace and advertising they have the exact same functionality as Spotlight's system.  And the new detail provided in the SAC directly undermines the plausibility of Spotlight's claim.  The SAC alleges (and is internally contradictory with the allegation that TicketOS does not have any form of integration with Ticketmaster): "Upon information and belief, **even if TicketOS could somehow establish it had some**

13

232154657 v2

**form of integration with Ticketmaster**, **any alleged integration cannot do everything Spotlight's integration with Ticketmaster can do**."[19]

In that regard, the SAC elaborates that Spotlight alone exclusively offers "**real-time**" scan data and ticket-rescission functionality, that these features were "**essential**" to customers, and that TicketOS cannot provide them. SAC ¶¶ 46–48, 69, 170 (emphasis added).

Further, in almost all of Spotlight's new boilerplate statements attributed to Defendants in the SAC, Spotlight summarily claims: "Upon information and belief, TicketOS also represented that its system had the same functionality as Spotlight's system, which was a material factor for the global food manufacturing and services firm."[20]

These new factual allegations further demonstrate the implausibility behind Spotlight's summary allegations of wrongful statements attributed to Defendants in RFPs and sales pitches. This is because they involve alleged "exclusive" and "real-time" functionality that the parties' customers — who the SAC alleges "buy a large number of tickets for various purposes in their businesses"[21] — are alleged to have

---

[19] Paragraph 68.

[20] *See, e.g.* Paragraph 94.

[21] Paragraph 74.

found essential in their purchasing decisions.[22]  With this being the case, these customers would **immediately** realize were lacking either as soon as becoming Defendants' customers or shortly thereafter.  Again, it simply is not plausible that corporate customers that move a large number of tickets and find Spotlight's real-time exclusive features to be "essential to their decision in selecting a corporate ticket management service" become Defendants' customers and not realize that these "essential" features are missing given their real-time nature.

Spotlight's wholly conclusory allegations *might* arguably be plausible if they alleged that Defendants had only very recently made the false statements, and the recipients of these statements did not yet have a chance to become customers of Defendants.  But this is not what the SAC alleges.  The SAC clearly and repeatedly alleges that Defendants have made their false statements "[s]ince at least 2019."[23] In one of the very few examples of Defendants' alleged false statements not made "upon information and belief," the first example (which previously was dismissed), the SAC claims that Defendants made their false statements in July 2021, and "[a]s

---

[22] Paragraph 48.

[23] Paragraphs 61, 207, 224.

15

a result of TicketOS's misrepresentations, the global financial services firm awarded the contract to TicketOS over Spotlight."[24]

Respectfully, these allegations are irreconcilable with the SAC's description of Spotlight's "exclusive" real-time functionality being "essential" for industry customers. It is not remotely plausible for a customer such as the unnamed "global financial services firm" to be tricked by Defendants' alleged statement that "its system had the same integration with Ticketmaster that Spotlight had," but somehow for the past 5 years, the unnamed customer simply never realized that it did not receive the "essential" functionality that was exclusive to Spotlight. This means that a customer can test out whether the TicketOS system had this functionality in real-time, by clicking a button to rescind a ticket, or viewing a window to access real-time scan data. It also means that if Defendants represented that they had the exact same functionality as Spotlight, and this "real-time" functionality was "essential" for these customers, the customers would test out the real-time functionality shortly after becoming Defendants' customers and immediately realize they had been deceived. This inherent implausibility that is embedded throughout the plain language of the SAC is fatal to Spotlight's claims.

---

[24] Paragraphs 77 and 80.

16

Another important factor is that the SAC's allegations regarding customer behavior are internally and irreconcilably inconsistent.  As noted, Paragraph 48 alleges that "Numerous consumers have attested that such exclusive features were essential to their decision in selecting a corporate ticket management service."  This allegation requires customers to know enough about ticket management to evaluate competing systems on the very features Spotlight identifies as exclusive: real-time scan data and ticket-rescission functionality.  By contrast, Paragraph 74 alleges that these same customers "are typically not sophisticated when it comes to corporate ticket management" because they "lack the resources and understanding of the process of handling large numbers of tickets."

Spotlight cannot have it both ways.  Either customers are sophisticated enough to demand and evaluate the "essential" real-time features, in which case the SAC's seven-year deception narrative collapses because customers would have noticed the absence of those features as soon as they became Defendants' clients.  Or, customers are not sophisticated enough to evaluate those features, in which case the "essential to their decision" allegation in Paragraph 48 is itself implausible. This internal contradiction is fatal to materiality and to the alleged tendency to deceive: the pleading does not describe a coherent factual world in which Defendants' alleged misrepresentations operate as the SAC says they do.  Thus, the SAC is incoherent and as such, its wholly conclusory allegations are not plausible.

17

232154657 v2

Count Two, titled "Intentional Interference With A Contract" similarly remains fatally deficient as it does not allege the required induced nonperformance of any contractual obligation.  Most notably, this count alleges that: "Defendants intentionally interfered with a contract between Spotlight and Ticketmaster,"[25] but fails to allege any non-performance or breach on the part of Ticketmaster (or any other of Spotlight's contracting partners).  Separately and independently, Spotlight has failed to allege that Defendants acted with malice because the SAC alleges that Defendants acted in their own economic self-interest in the course of their "standard practice" and regular business dealings in competing for customers in the marketplace.

## LEGAL ARGUMENT

For the reasons to be explained, Spotlight has failed to state a claim under FED. R. CIV. P. 12(b)(6) and its SAC must be dismissed with prejudice in its entirety.

## I.   STANDARD ON MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept all factual allegations as true and construe the Amended Complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  However, a court need not accept "bald assertions." *Reed v.*

---

[25] Paragraph 203.

18

*Scheffler*, 218 F. Supp. 3d 275, 279 (D.N.J. 2016). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A motion to dismiss will be granted if a plaintiff, as here, has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In evaluating the sufficiency of a complaint, the Court "may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). **The Court also "need not credit the non-movant's . . . unreasonable factual inferences**." *Curay-Cramer v. Ursuline Acad. of Wilmington Del., Inc.*, 450 F.3d 130, 133 (3d Cir. 2006) (internal citations omitted) (emphasis added). Similarly, this Court is not "compelled to accept ... 'a legal conclusion couched as a factual allegation.'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950. "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler,* 578 F.3d at 211.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* **Additionally, "unsupported conclusory statements . .**

19

**. are insufficient to withstand a motion to dismiss.”** *Lieberson v. Johnson & Johnson Consumer Companies, Inc.,* 865 F. Supp. 2d 529, 541–42 (D.N.J. 2011) (emphasis added); *see also Burtch v Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (“**In light of the conclusory nature of these allegations, they are not entitled to assumptions of truth**.”) (emphasis added).

District courts within the Third Circuit have applied a so-called “slightly heightened” or “intermediate” pleading standard for false advertising claims under the Lanham Act, such as Count One of the Amended Complaint which alleges a violation of 15 U.S.C. § 1125(a)(1)(B). *New Jersey Physicians United Reciprocal Exchange v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 307 (D.N.J. 2015) (*citing, e.g., Trans USA Prods. v. Howard Berger Co.*, No. 07–5924, 2008 WL 852324, *4–5 (D.N.J. Mar. 28, 2008)). As a district court in New Jersey has explained:

> [B]ased on [the] fraudulent element necessary in a Lanham Act claim, this Court has applied an “intermediate” pleading requirement to false advertising claims asserted under section 43(a)(1)(B) that imposes a pleading standard between those standard[s] required under Federal Rules of Civil Procedure 8 and 9. This intermediate approach, first applied in *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D.Pa.1985), strikes a balance between application and outright rejection of Rule 9(b). The slightly heightened pleading requirement is necessary in Lanham Act claims because, [i]n litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense. **Thus, Plaintiff must plead its Lanham Act claims**

20

**with more particularity than traditional notice pleading under Rule 8** but something less than the specificity of Rule 9.

*New Jersey Physicians*, 141 F. Supp. 3d at 307-308 (quoting *Trans USA Prods.*, 2008 WL 852324 at *5) (citations and internal quotation marks omitted) (emphasis added).

Especially relevant here is the Third Circuit's guidance on complaints based "upon information and belief" when particularity is required. The Third Circuit has explained, in the context of a Rule 9(b) action, that the requisite particularity may be "relaxed" to allow pleading upon information and belief only: (1) "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"; (2) so long as there are no "boilerplate and conclusory allegations"; and (3) "**[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible**." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

Even if Rule 8 supplies the governing standard, courts in this District require false-advertising allegations to identify the challenged statements with enough specificity to evaluate falsity, deception, materiality, and causation. *See, e.g., New Jersey Physicians*, 141 F. Supp. 3d at 307-08. The SAC does not do so.

21

As will be explained, the SAC fails to state a claim under either the basic *Twombly* plausibility standard (for all claims) or the heightened "intermediate" pleading requirement applicable to Lanham Act false advertising claims (for Count One).

## II.    SPOTLIGHT HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE LANHAM ACT BECAUSE THE ONLY STATEMENTS ALLEGED WITH PARTICULARITY ARE NOT "LITERALLY FALSE" AND DO NOT DECEIVE CUSTOMERS, AND THE REMAINING STATEMENTS THAT SPOTLIGHT LABELS FALSE ARE CONCLUSORY, INADEQUATELY PLEADED, AND INHERENTLY IMPLAUSIBLE

### A.    Analysis of the Applicable Law and Alleged Statements

Count One asserts violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

> To establish a false advertising claim under the Lanham Act, a plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc."

*Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 679 F. Supp. 3d 53, 88 (D.N.J. 2023) (citing *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011)).

"[L]iability arises under section 43(a)(1)(B) if the defendant makes a commercial message or statement that is either literally false, or literally true but

22

232154657 v2

ambiguous such that it has the tendency to deceive consumers." *Trans USA Prods.,* 2008 WL 852324 at \*4–5, (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.,* 290 F.3d 578, 586 (3d Cir. 2002)); *see also Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 943 (3d Cir. 1993) (noting "a plaintiff must prove *either* literal falsity *or* consumer confusion, but not both") (emphasis in original).

Importantly, the Third Circuit has held: "only an ***unambiguous*** message can be literally false. 'The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported." *Novartis*, 290 F.3d at 587 (quoting *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1181 (8th Cir. 1998) (emphasis in original)).  If a plaintiff cannot plead an unambiguous message, because the message is either ambiguous or true, "the plaintiff must prove actual deception or a tendency to deceive, **and it may do so with a properly conducted consumer survey**." *Industria*, 679 F. Supp. 3d at 90 (citing *Pernod*, 653 F.3d at 248)) (emphasis added).

Keeping in mind the Court's guidance that "this case is all about the statements," the SAC's definition of "integration" is central to Spotlight's Lanham Act claim.  The SAC provides 11 different examples of Defendants' alleged actionable statements.  There is only a single example of an alleged actionable

23

232154657 v2

statement that is alleged with any degree of particularity: the screenshot taken of Defendants' website[26] (example 11 in the SAC) that the Court already explained was not actionable.[27]

There are 10 other examples of Defendants' alleged actionable statements that are not alleged with any degree of particularity. Examples 1-2 are alleged sales pitch representations that were part of the pleading that the Court dismissed, and the SAC adds no meaningful particularity to those allegations[28] and examples 3-10 are entirely pled "upon information and belief."[29] As previously explained, examples 1-10 are largely repetitive, none provide any witnesses to the alleged false statements, only one mentions a customer name (example 10, Advent Health), and, particularly the new allegations, examples 3-10, they all simply parrot the Court's instructions as to what would constitute an actionable claim, without providing any plausible supporting allegations.

Examining these statements more in detail, of the 10 examples of allegedly actionable statements that occurred during RFPs or sales pitches, the Advent Health

---

[26] Paragraphs 117-122.

[27] Papalia Cert., Exhibit A, 8:3—9:5.

[28] Paragraphs 77 – 83.

[29] Paragraphs 84 – 111.

24

232154657 v2

allegation (Example 10) is the only one that names a customer. As such, it is Spotlight's strongest example, and the SAC's ability to plead a Lanham Act claim turns substantially on whether that example states a claim. It does not. The relevant allegation, in full, is that "in submitting its RFP to Advent Health, TicketOS misrepresented that it had an integration with Ticketmaster."[30] That sentence is the entirety of Spotlight's particularized RFP allegation. It does not identify the speaker on Defendants' side. It does not quote the alleged language Defendants used in the RFP response. It does not identify who at Advent Health read or relied on the alleged statement. It does not allege what Advent Health understood "integration" to mean. And it does not allege that Advent Health was actually deceived, only that Defendants made the alleged misrepresentation. Each of those omissions is independently fatal under the Third Circuit's intermediate pleading standard for Lanham Act claims. *New Jersey Physicians*, 141 F. Supp. 3d at 307–08.

Together, they leave the Court in the same position the website allegation left it in: with a bare assertion that Defendants used the word "integration" in a context where Spotlight's own survey evidence demonstrates ambiguity. The SAC itself defines "integration" by reference to a corporate consumer survey in which there was a clear split whether "integration" includes access through a third-

---

[30] Paragraph 113.

25

232154657 v2

party intermediary — the very arrangement Spotlight separately accuses Defendants of using. *See* SAC ¶ 149 (alleging that Defendants "are utilizing a third-party service to access Ticketmaster"); ¶ 161. Specifically, the SAC alleges that only 53.1% of industry consumers would perceive the usage of a third-party service to not constitute an "integration" meaning that the remaining 47% of customers would perceive the usage of a third-party service to constitute an "integration" (or would not be sure). SAC ¶ 161. This confirms that "integration" is not a literally false, objectively unambiguous statement and instead is an ambiguous consumer-perception issue. On the SAC's own allegations, then, the Advent Health statement may have been literally true under one reasonable definition of "integration" and at most ambiguous under another. That cannot satisfy the literal-falsity element. *Novartis*, 290 F.3d at 587 ("only an unambiguous message can be literally false"). And because the SAC pleads no actual customer reaction at Advent Health, it cannot satisfy the alternative tendency-to-deceive prong either. *Pernod*, 653 F.3d at 248. The Advent Health allegation suffers from precisely the defect the Court already identified in the website allegation. It identifies a customer but otherwise repeats the same ambiguity-driven pleading deficiency that prevented the original Lanham Act count from stating a claim.

Even worse, the SAC also contradicts itself and uses the hypothetical allegation that Defendants could indeed have an integration with Ticketmaster, by

232154657 v2

alleging: "**even if TicketOS could somehow establish it had some form of integration with Ticketmaster**, any alleged integration cannot do everything Spotlight's integration with Ticketmaster can do." SAC ¶ 68.  Thus, the SAC itself confirms that Spotlight, on its own pleading, cannot exclude that Defendants have an integration with Ticketmaster. A claim of literal falsity cannot be premised on a fact the plaintiff itself is unwilling to plead categorically.  This is further reason why the SAC does not state a Lanham Act claim.

The remaining alleged statements fare no better.  For all 10 examples, the following essential information is missing. Who spoke?  Which Defendant spoke? Who heard the statement? Was it oral, written, a slide deck, a demo, or an RFP response? What exact words were used? What specific functionality was discussed? How does Spotlight know the statement was made? What customer decisionmaker relied on it? What was Spotlight's actual expectancy for that account?  These deficiencies are fatal to Spotlight's claims.

Further, Spotlight's survey does not and cannot act as a substitute for pleading with particularity the actual false statements alleged to have been made by Defendants.

Moreover, as previously mentioned, the SAC's new allegations regarding the technical capabilities of Spotlight's system conclusively demonstrate how Spotlight will **<u>never</u>** be able to plausibly allege consumer deception from this alleged

27

statement.  While this was previously discussed, to summarize, the newly alleged technical capabilities exclusive to Spotlight are "the ability to offer **real-time** scan data and to rescind transfer of tickets."[31]   And the SAC further alleges that "Numerous consumers have attested that such exclusive features were **essential** to their decision in selecting a corporate ticket management service."[32]  And that these corporate customers "buy a large number of tickets for various purposes in their businesses."[33]   And it further alleges that Defendants have been making false statements in the marketplace about TicketOS's capabilities, including that they are the same as Spotlight's capabilities, "[s]ince at least 2019."[34]

Again, it simply is not plausible, and indeed, cannot be, that the parties' customers who all allegedly find Spotlight's various "real-time" and "exclusive" functionalities "essential" to their purchasing decision, have all been deceived by Defendants but somehow not realized it.  It stands to reason, from the four corners of the SAC, that because these sophisticated corporate consumers are accustomed to buying large numbers of tickets, and find this "real-time" functionality "essential,"

---

[31] Paragraph 47 (emphasis added).

[32] Paragraph 48 (emphasis added).

[33] Paragraph 73.

[34] Paragraphs 61, 207, and 224.

28

232154657 v2

that these customers would attempt to utilize the real-time functionality when utilizing Defendants' systems and quickly realize they had been misled by Defendants. This would manifest in the form of leaving Defendants and moving back to Spotlight, the alleged only provider of these essential and exclusive features. It is completely nonsensical, and implausible, for customers to remain as Defendants' customers for the past 7 years, as the SAC alleges.

The same plausibility analysis applies to the remainder of the newly alleged "statements" attributed to Defendants upon information and belief, which clearly were parroted directly from the Court's guidance on the substantive allegations that would be needed for Spotlight to plausibly state a claim. These statements include: "TicketOS also represented that its system had the same functionality as Spotlight's system, which was a material factor for the [generic customer description]"[35]; "TicketOS claimed that its system has certain capabilities that it does not have [not even alleged to be a material factor for the customer's decision]";[36] and "TicketOS' service lacks the "break glass" security protocols it has advertised to consumers [also not even alleged to be a material factor for the customer's decision]."[37] The alleged

---

[35] Paragraphs 79, 86, 90, 94, 98, 102, 106, 110.

[36] Paragraphs 78, 85, 89, 93, 97, 101, 105, 109.

[37] Paragraphs 70, 78.

232154657 v2

statements cannot plausibly be alleged to be deceiving because they were allegedly made over the course of the past 7 years, the nature of these technical capabilities are such that the customer would immediately notice their absence in the TicketOS system, and it is not plausible that these customers would not return to Spotlight since Spotlight was the exclusive provider of such features.

This is not an argument that post-sale customer conduct is a defense to a literally false statement. Rather, the argument is that the SAC's newly added allegations make Spotlight's own theory incoherent: the SAC alleges the missing features were real-time, exclusive, and essential to purchasing decisions, yet also alleges customers remained deceived for years without pleading *any* customer reaction, complaint, or discovered mismatch over the span of 7 years.

While Paragraph 74 alleges that these same customers "are typically not sophisticated when it comes to corporate ticket management" because they "lack the resources and understanding of the process of handling large numbers of tickets," as previously explained, this allegation is inherently inconsistent and irreconcilable with the SAC's allegations that customers are sophisticated enough to demand and evaluate the "essential" real-time features that are "exclusively" offered by Spotlight.

Moreover, regarding "break glass security," this statement is inherently ambiguous (there is no defined industry term for what this means), was not

30

232154657 v2

elaborated on in the SAC, was not discussed in Spotlight's survey evidence, and most importantly, was never alleged to have been a material factor in the customers' purchasing decision, which is a required element for a Lanham Act claim. *See, e.g., Industria*, 679 F. Supp. 3d at 88 (third element).

Quite simply, the SAC's numerous wholly conclusory allegations, including the **many** conclusory allegations premised "upon information and belief" are simply not entitled to the presumption of truth, under the authorities cited herein.

## B.    The SAC Separately Fails to Plausibly Allege Causation and Damages

Independently, the Lanham Act count fails for lack of plausibly pleaded proximate causation.  To state a claim for false advertising, a plaintiff must plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 140 (2014). That requirement obligates the plaintiff to plead plausible facts showing that the alleged false statements, rather than independent market forces or customer-specific business considerations, caused the lost sales it claims as damages.

Spotlight's damages theory, however, sweeps far broader: it seeks "the disgorgement of any profits that Defendants unfairly realized, retained or gained through their unlawful conduct" and Spotlight's "actual damages in the form

31

232154657 v2

of diminished goodwill and lost profits . . . since at least 2019."[38]  That is not a pleading of proximate cause.  It is a request for discovery into Defendants' entire business since 2019 to find a connection between any alleged statement and any lost sale. *Lexmark* forecloses that approach. 572 U.S. at 133 ("a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising"). Because Spotlight pleads no facts connecting any specific alleged false statement to any specific lost customer beyond the bare conclusory assertion that "as a result of TicketOS's misrepresentations" certain (mostly anonymous) customers chose TicketOS, the Lanham Act count fails on causation as well as on falsity.

Dismissal should be with prejudice. Leave to amend may be denied where there is undue delay, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (leave need not be granted where amendment would be inequitable or futile). Those factors are satisfied here: Spotlight has filed four pleadings, including the SAC after full briefing and oral-argument guidance identifying the very statement-specific defects at issue, yet still relies on the same non-actionable website language and boilerplate, information-

---

[38] Paragraphs 67 and 196.

232154657 v2

and-belief pitch allegations that are self-contradictory, internally inconsistent and incoherent, and implausible. Further leave would be futile and prejudicial, and Count I should be dismissed with prejudice.

For the above reasons, Count One of the SAC must be dismissed with prejudice for failure to state a claim.

### III. SPOTLIGHT HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH A CONTRACT BECAUSE THE SAC ALLEGES LOST COMPETITIVE BENEFIT, NOT INTERFERENCE WITH ANYONE'S CONTRACTUAL PERFORMANCE

Counts Two (intentional interference with contract) and Three (intentional interference with prospective economic advantage) are governed by New Jersey state law. "Under New Jersey law, tortious interference with contract (or prospective economic benefit) has four elements: '(1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages.'" *New Jersey Physicians*, 141 F. Supp. 3d at 309 (quoting *Vosough v. Kierce,* 437 N.J. Super. 218, 234 (App. Div. 2014)).

The New Jersey Supreme Court has clearly explained the differences between intentional interference with an existing contract and intentional interference with a prospective contractual relationship. The general rule defining the elements of tortious interference with an existing contract is:

33

232154657 v2

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person **by inducing or otherwise causing the third person not to perform the contract**, is subject to liability to the other for the pecuniary loss resulting to the other **from the failure of the third person to perform the contract**.

*Nostrame v. Santiago*, 213 N.J. 109, 122 (2013) (emphasis added).

Here, Spotlight has failed to adequately allege **any** elements of a tortious interference claim.

First, Spotlight has largely failed to specify the alleged contracts that it claims Defendants tortiously interfered with, other than the Spotlight/Ticketmaster Contract, which it characterizes as an "exclusive contract."  Second, Spotlight does not attach the contract or identify any provision allegedly breached, and does not identify **anywhere** in its SAC a specific paragraph or provision of its contract that it alleges Ticketmaster breached (as a result of Defendants' actions).  This is also fatal to Spotlight's tortious interference claim.  Third, Spotlight does not allege that any of its vague and unspecified contracting partners actually breached their contracts with Spotlight (whether due to Defendants' actions or not).  Nor could it, as it did not identify or even describe any other contract.

The alleged injury is diversion of customers from Spotlight, not interference with Ticketmaster's performance (or any other of Spotlight's anonymous customer's

34

232154657 v2

performance).  This fails as a matter of law to state a valid tortious interference claim.

*See, e.g.,Nostrame*, 213 N.J. at 122.

In short, other than identifying a single contract that it had with Ticketmaster, Spotlight failed to identify which provision was at issue, which party had to perform that provision, which party breached that provision, and explain how Spotlight's damages directly arose from that party's breach of contract.

Separately and independently, Spotlight has failed to allege that Defendants acted with malice because the SAC alleges that Defendants acted in their own economic self-interest in the course of their "standard practice" and regular business dealings in competing for customers in the marketplace.[39]

> A party's actions in its own interest and for its own financial benefit will not rise to the level of malice. Instead, a business-related explanation can justify a party's actions, so long as the business-related explanation justifies not only the defendant's motive and purpose, but also the means that it employed.  In *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.,* 282 N.J. Super. 140, 205, 659 A.2d 904 (App. Div. 1995), the Appellate Division reversed a trial court's finding of tortious interference, noting that even if the defendant's behavior had been motivated by spite and was directly aimed at hurting the plaintiff's business, this did not rise to the level of tortious interference because defendant had a "legitimate business reason to 'target' [the plaintiff] ... regardless of any other motivation." *Id.* at 201.

---

[39] Paragraph 75.

232154657 v2

*Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010) (citing *Sandler v. Lawn–A–Mat Chem. & Equip. Corp.*, 141 N.J. Super. 437, 451–52 (App. Div. 1976); *Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 307, (2001); *Cedar Ridge Trailer Sales, Inc. v. Nat'l Cmty. Bank of New Jersey*, 312 N.J. Super. 51, 67 (App. Div. 1998) ("At worst, the Bank was advancing its 'own interest and financial position,' which is not enough to establish tortious interference.").

Here, it is abundantly clear that Spotlight's SAC boils down to an attempt to put TicketOS's business model on trial for daring to engage in competition with Spotlight in the marketplace. Stripping aside the wholly conclusory allegations which merely parrot the legal elements of a cause of action, Spotlight's real complaint is that it has lost business to Defendants during the "standard practice"[40] of RFP process and sales pitches, since "at least 2019." *See, e.g.,* SAC, ¶ 211: ("Spotlight has lost business to Defendants due to the latter's false representations during pitches and RFP processes involving Spotlight's customers.").

This alleged behavior simply does not rise to the level of tortious interference, particularly with the factors mentioned *supra* regarding Spotlight's baseless Lanham Act claim, and the fact that Spotlight cannot plausibly allege any damages. Spotlight is claiming as damages essentially every successful business transaction that

---

[40] Paragraph 75.

Defendants engaged in over the past 7 years and counting. This case is Spotlight's attempt to use litigation to stifle its legitimate competition.

For these reasons, Count Two of the SAC must be dismissed with prejudice.

## IV. SPOTLIGHT HAS FAILED TO STATE A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

In short, if the Court dismisses Count One, Spotlight cannot use the same alleged statements as the "wrongful means" required to state a claim for tortious interference with prospective economic advantage. Because Count One must be dismissed, so must Count Three. In any event, the SAC independently fails to plead a protected expectancy for the alleged opportunities.

To sufficiently allege a cause of action for intentional interference with a prospective economic advantage, a complaint must allege facts claiming that: (1) the plaintiff was in pursuit of business; (2) the interference was done intentionally and with malice; (3) the interference caused the loss of the prospective gain; and (4) the injury caused damage. *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989). Malice is "defined to mean that the harm was inflicted intentionally and without justification or excuse." *Id*. at 751. The ultimate inquiry is whether the interference by the defendant is "sanctioned by the rules of the game." *Id*. at 757.

37

232154657 v2

New Jersey law does not treat lawful competition as tortious interference, even where it harms a competitor. *See, e.g.*, *Melveney v. McCrane*, 138 N.J. Super. 456 (App. Div. 1976); *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010); *George F. Hewson Co. v. Hopper*, 130 N.J.L. 525 (Err. & App. 1943).

> The gravamen of [a claim for tortious interference with prospective economic advantage] is conditioned upon the wanton, malicious and unjustifiable acts of others, and that ***where a loss occurs by reason of lawful competition however sharp, the loss is one for which the law affords no redress.***

*George F. Hewson Co.*, 130 N.J.L. at 526.

Spotlight's SAC fails to state plausible factual allegations that allege TicketOS engaged in the requisite wanton, malicious, and unjustified conduct for largely the same reasons discussed *supra*. While it does make many wholly conclusory allegations, they are not plausible. For example, the SAC alleges that: "In addition to lost sales and revenue, these misrepresentations [from Defendants] cause Spotlight to suffer lost goodwill and harm to its reputation."[41] Considering the representations include that "TicketOS has the same functionality of Spotlight"[42] and the SAC repeatedly claims this is not true, it cannot be conceived that such an

---

[41] Paragraph 229.

[42] Paragraph 224.

232154657 v2

alleged misrepresentation would cause any harm to Spotlight. On the SAC's own theory, any mismatch between promised and available real-time functionality would harm Defendants' reputation, not Spotlight's, because the alleged deficiency would be experienced by TicketOS customers using TicketOS's system.

Moreover, for Count III specifically, many examples cited in the SAC do not plead that Spotlight was actually pursuing the customer or had a reasonable probability of obtaining the business. For example, examples 3, 4, 5, 6, 7, 8, 9, and 10 **all** essentially allege that "TicketOS presented a sales pitch to a potential customer and won." This is not the same thing as alleging that Spotlight had a protected expectancy with these anonymous unnamed customers. Count III essentially pleads that the entire customer marketplace belongs to Spotlight alone.

Spotlight's true complaint is that Defendants are engaging in lawful competition with it in the marketplace, which is not actionable. This is best evidenced by the fact that Spotlight is claiming as damages its lost profits dating back to 2019, essentially encompassing the entirety of Defendants' business activities for the past 7 years.

It is also worth noting that despite the passage of two years and four separate pleadings, and despite Spotlight's wholly conclusory assertions, there is no allegation that Ticketmaster itself has ever raised any concerns about TicketOS's business, let alone taken any action against TicketOS.

232154657 v2

Thus, Count Three of Spotlight's SAC should be dismissed with prejudice.

## **CONCLUSION**

The Court gave Spotlight one final opportunity to plead actionable statements. The SAC still does not do so. The website statement is the same contextualized statement the Court already questioned and described as "certainly not literally false" nor plausibly misleading in context. The new pitch/RFP examples are anonymous, repetitive, and pleaded on information and belief without the particularized facts required by the Lanham Act. Count II independently fails because no Ticketmaster nonperformance is alleged. Count III falls with the same insufficient alleged misconduct and lack of plausible factual allegations.

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted and the Second Amended Complaint be dismissed with prejudice.

Respectfully submitted,

ARCHER & GREINER, P.C.
Attorneys for Defendants

By:___*Patrick Papalia*___
    Patrick Papalia, Esq.
    Christian A. Stueben, Esq.

Dated: May 11, 2026

40

232154657 v2