**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> TICKETOS, TICKETOS TECHNOLOGY, INC., and NEXT SPORTS & ENTERTAINMENT LLC, <br><br> *Defendants.* | Civil Action No. 2:25-cv-00170 |

**<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION AND SUMMARY OF SPOTLIGHT'S POSITION............1

II.  PROCEDURAL HISTORY.................................................................6

III. LEGAL STANDARDS....................................................................7

  A.   Rule 12(B)(6) .........................................................................7

  B.   Pleading Standard For False Advertising Claims ......................................9

  C.   Pleading Allegations "Upon Information and Belief" ..............................10

IV.  ARGUMENT..............................................................................11

  A.   Spotlight Properly Pled Each Element of Its Lanham Act False
       Advertising Claim ...............................................................................11

       1.   Spotlight Has Sufficiently Pled that Defendants Made Literally
            False Statements.............................................................................13

       2.   Spotlight Has Sufficiently Pled that Defendants Made Misleading
            Statements that Tend to Deceive and Are Material to the Purchasing
            Consumers' Decision .....................................................................15

       3.   Spotlight Has Adequately Pleaded that Injury was Caused By
            Defendants ......................................................................................19

       4.   Defendants' Arguments that Spotlight's Allegations are Insufficient
            are Unavailing .................................................................................20

            a.   Supposed Ambiguities Around Meaning of "Integration" Do Not
                 Support Dismissal – That May Be a Matter For Discovery.........21

            b.   Spotlight's Allegations are Sufficient Under Either Rule 8(a) or
                 the "Intermediate" Standard .......................................................23

            c.   Allegations Pled "Upon Information and Belief" Are Sufficient 25

  B.   Spotlight Properly Pled Its Tortious Interference with Contractual
       Relations Claim ..................................................................................26

  C.   Spotlight Properly Pled Its Tortious Interference with Prospective
       Economic Advantage Claim ....................................................................32

V.   CONCLUSION ............................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................7, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................8, 9

*Call Inc. v. Advanced Health Media, LLC*,
  No. 11-3723, 2012 WL 1079652.................................................35, 36

*Connelly v. Lane Constr. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ..........................................................8, 12

*DiGiogio Corp. v. Mendez & Co., Inc.*,
  230 F. Supp. 2d 552 (D.N.J. 2002)....................................................30

*Dill v. Yellin*,
  725 F. Supp. 3d 471 (D.N.J. 2024)...............................................31, 34

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998)......................................................12

*Fid. Eatontown, LLC v. Excellency Enter., LLC*,
  No. 3:16-cv-3899, 2017 WL 2691417 (D.N.J. June 22, 2017).....................27, 30

*Fineman v. Armstrong World Indus., Inc.*,
  980 F.2d 171 (3d Cir. 1992) ..............................................................33

*Floorgraphics, Inc. v. News Am. Mktg. in-Store Servs., Inc.*,
  No. 04-3500, 2008 WL 1901107 (D.N.J. Apr. 24, 2008) ..................................27

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) .............................................8, 9, 12, 24

*Frompovicz v. Niagara Bottling, LLC*,
  337 F. Supp. 3d 498 (E.D. Pa. 2018)..................................................19

*Gidley v. Reinhart Foodservice, L.L.C.*,
  No. 4:14-cv-0800, 2015 WL 1136447 (M.D. Pa. Mar. 12, 2015)........................8

*Graco, Inc. v. PMC Glob., Inc.*,
No. 08-1304, 2009 WL 904010 (D.N.J. Mar. 31, 2009) ....................................24

*Groupe SEB USA, Inc. v. Euro–Pro Operating LLC*,
No. 14-137, 2014 WL 1316039 (W.D. Pa. Apr. 1, 2014) ...................................9

*Hampton House Assocs., LLC v. Lowe's Home Ctrs. Inc.*,
No. 12-0110, 2012 WL 13034157 (D.N.J. May 1, 2012) ..................................32

*Horizon Healthcare Servs., Inc. v. Valley Health Sys.*,
No. 16-545, 2016 WL 4770032 (D.N.J. Sept. 12, 2016)...................................21

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
282 N.J. Super. 140, 659 A.2d 904 (N.J. App. Div. 1995) .........................31, 33

*IDT Corp. v. Unlimited Recharge, Inc.*,
No. 11-4992 (ES), 2012 WL 4050298 (D.N.J. Sept. 13, 2012) ........................35

*Jame Fine Chems. Co. v. Hi-Tech Pharmacal Co.*,
44 F.App'x 602 (3d. 2002) ...............................................................................29

*LY Berditchev Corp. v. ESupplements, LLC*,
No. 2:24-cv-00625, 2024 WL 4182585 (D.N.J. Sept. 12, 2024) ...........27, 29, 30

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
608 F. Supp. 1549 (E.D. Pa. 1985)....................................................................9

*McDermott v. Clondalkin Grp., Inc.*,
649 F. App'x 263 (3d Cir. 2016) ...............................................................11, 25

*N. Atl. Imports*, LLC v. Loco-Crazy Good Cookers, Inc.*,
No. 23-999, 2024 WL 245955 (D. Del. 2024) .............................................10, 25

*N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*,
141 F. Supp. 3d 298 (D.N.J. 2015).........................................................9, 10, 24

*Nostrame v. Santiago*,
213 N.J. 109, 61 A.3d 893 ...............................................................................34

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
290 F.3d 578 (3d Cir. 2002) ........................................................................15, 16

iii

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
No. 20-662-RGA, 2021 WL 2188219 (D. Del. May 28, 2021) ......................9, 10

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
653 F.3d 241 (3d Cir. 2011) ...............................................................................18

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ..................................................................................8

*R & A Synergy LLC v. Spanx, Inc.*,
No. 2:17-cv-09147, 2019 WL 4390564 (C.D. Cal. May 1, 2019) ....................18

*Roche v. Aetna, Inc.*,
No. 1:22-CV-00607-NLH-EAP, 2023 WL 3173394 (D.N.J. May 1,
2023) ......................................................................................................................4

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) ..................................................................................8

*Schuchardt v. President of the United States*,
839 F.3d 336 (3d Cir. 2016) ..................................................................................9

*Shure Inc. v. Clearone, Inc.*,
No. 19-1343, 2020 WL 2839294 (D. Del. June 1, 2020)................................9, 10

*In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*,
No. 22-542, 2023 WL 8006602 (W.D. Pa. Nov. 17, 2023) ...............................11

*Spotlight Ticket Management, Inc. v. Concierge Live, LLC*,
No. 2:24-cv-00859 (C.D. Cal.) .....................................................................*passim*

*Swarovski Optik N. Am. Ltd. v. iBuy Grp. LLC*,
No. CV 23-01210 (GC) (TJB), 2024 WL 1142296 (D.N.J. Mar. 15,
2024) ....................................................................................................................22

*Universal Elec. Corp. v. Baldwin*,
No. 2:17-cv-00842, 2018 WL 3707423 (W.D. Pa. Aug. 3, 2018) ....................22

*Warner-Lambert Co. v. Breathasure, Inc.*,
204 F.3d 87 (3d Cir. 2000) ..........................................................13, 15, 16, 19

*Warren Gen. Hosp. v. Amgen Inc.*,
643 F.3d 77 (3d Cir. 2011) ....................................................................................7

iv

*Wilkes v. State Farm Ins. Cos.*,
No. 1:05-CV-586, 2005 WL 1667396 (M.D. Pa. July 15, 2005)........................29

**Statutes**

15 U.S.C. § 1117 ............................................................................................20

Lanham Act, 15 U.S.C. § 1125(a)(1)(B) ...............................................................13

**Other Authorities**

Fed. R. Civ. P. 8(d)(2)..............................................................................................15

Fed. R. Civ. P.  8 ..........................................................................................10, 24

Fed. R. Civ. P.  8(a)...................................................................................9, 10, 23, 24

Fed. R. Civ. P. 9(b) ...........................................................................................9, 23, 24

Fed. R. Civ. P. 12(b)(6)......................................................................................*passim*

## I.    INTRODUCTION AND SUMMARY OF SPOTLIGHT'S POSITION

Defendants' Motion to Dismiss ("Motion") reads like a motion for summary judgment. Rather than addressing the sufficiency of the factual allegations in Plaintiff Spotlight Ticket Management, Inc.'s ("Spotlight") Second Amended Complaint ("SAC") against the Rule 12(b)(6) pleading standard, Defendants TicketOS, TicketOS Technology, Inc., and Next Sports & Entertainment, LLC (collectively, "Defendants" or "TicketOS") inappropriately ask the Court to make credibility determinations as to those factual allegations without affording Spotlight the benefit of discovery. That is an ironic twist given that TicketOS's own communications recently exposed via third-party discovery (in a different litigation) directly contradicted positions TicketOS was taking before this Court, underscoring the importance of discovery in false advertising cases such as this one.

Indeed, Defendants spend much of their motion to dismiss debating the *likelihood* that Spotlight's factual allegations are true rather than whether Spotlight's claims are *sufficiently pled*. Advancing such arguments in yet another Rule 12(b)(6) motion is particularly odd given the direction this Court already provided.

That is, during argument on Defendants' first motion to dismiss, this Court indicated Spotlight had already alleged sufficient facts to meet the applicable pleading standard—even without the additional, newly-discovered evidence detailed

1

in Spotlight's February 20, 2026 supplemental letter to the Court[1] ("Supplemental Letter," attached hereto as **Exhibit A**).[2] Nonetheless, the Court invited Spotlight to file an amended complaint incorporating additional allegations because the operative pleading would "guide the discovery process" (*id.* at 6:13-14), at the same time acknowledging factual disputes being discussed before the Court that day were "all for discovery." *Id.* at 9:18-19. And the Court repeatedly reminded the parties at the hearing that *factual issues* raised at the pleading stage of the litigation were not appropriate for resolution under Rule 12(b)(6). *See id.* at 5:2-9; 6:13-14; 13:4-8, 22-23. Spotlight was therefore surprised when Defendants filed another motion to dismiss recycling the same unavailing arguments the Court already explained would not prevent this case from moving forward.

As detailed below, Spotlight properly pled each claim in the SAC. In support of its Lanham Act false advertising claim, Spotlight alleges that Defendants have made *literally false* statements to Spotlight's current and prospective customers, including claims that (1) its system was integrated with Ticketmaster (it is not), (2)

---

[1] *See* Dkt. No. 36-3, Transcript dated Feb. 25, 2026, at 4:11-13 ("So no matter what I did, if I had not received those supplemental letters, I would probably be inclined to let you amend anyway…."); *id.* at 4:21-23 ("[M]ake every effort to put everything in, bearing in mind that I'm probably inclined to let you move forward at this juncture.").

[2] Spotlight's Supplemental Letter was submitted to the Court on February 20, 2026 via e-mail. The exhibits originally attached to the Supplement Letter are omitted from **Exhibit A**.

2

its system had the same functionality as Spotlight's systems (it does not), and (3) the TicketOS platform had certain specific capabilities, including "break glass security," which it does not actually have. Even if Defendants' misrepresentations are somehow not literally false, Spotlight has plausibly alleged that they are *misleading* and have the *tendency to deceive*, as shown by survey evidence and sworn testimony from actual consumers included in the SAC. Spotlight has gone far beyond what is required to properly plead claims, introducing supporting evidence in the SAC itself, and Defendants' arguments to the contrary are improper attempts to use extrinsic evidence to feign "implausibility" where none exists on the face of the SAC. That is not what Rule 12(b)(6) tests—discovery will bear out which side is correct.

Defendants' attacks on Spotlight's claim for tortious interference with contractual relations similarly fail because the SAC alleges—based on, *inter alia*, email evidence Spotlight has already obtained—that Ticketmaster *explicitly* told Defendants about the exclusive contractual relationship between Spotlight and Ticketmaster, and that Defendants knowingly interfered with that relationship by falsely advertising a non-existent "integration" with Ticketmaster, among other misrepresentations. These actions deprived Spotlight of the full benefit of its partnership with Ticketmaster. For largely the same reasons, Defendants' argument with respect to the claim for tortious interference with prospective economic advantage fails, as Spotlight plausibly alleges Defendants deprived Spotlight of

3

numerous business opportunities through targeted misrepresentations that TicketOS offers the same functionalities as Spotlight.

TicketOS's continued efforts to avoid discovery here are telling, *given that documents produced in response to third-party discovery in another litigation accidentally exposed TicketOS's malfeasance*. *See* Supplemental Letter. And discovery in that other case illustrates the importance and consequence of discovery in a consumer deception case like this one. *See generally Spotlight Ticket Management, Inc. v. Concierge Live, LLC*, No. 2:24-cv-00859 (C.D. Cal.) (the "*Concierge Live* Matter").[3] Discovery in the *Concierge Live* Matter not only confirmed that Spotlight has an exclusive and unique relationship with Ticketmaster and, as a result, no other company can offer what Spotlight offers in the business event and corporate ticket management space, it also exposed how companies like TicketOS attempt to mimic Spotlight's exclusive Ticketmaster integration through improper methods and means.

The result? When Ticketmaster reviewed the unsealed summary judgment record establishing that Concierge Live (like TicketOS) was actually *stealing data* it was claiming to consumers it had obtained with permission via a Ticketmaster

---

[3] The Court may take judicial notice of filings from the *Concierge Live* Matter when ruling on a Rule 12(b)(6) motion because they are matters of public record. *Roche v. Aetna, Inc.*, No. 1:22-CV-00607-NLH-EAP, 2023 WL 3173394, at *4 (D.N.J. May 1, 2023).

integration, Ticketmaster *terminated* Concierge Live's license to use any Ticketmaster APIs for any purpose.[4]

While Spotlight may not yet know precisely *how* TicketOS accomplishes its supposed "integration" with Ticketmaster, that is a matter which will be revealed and tested through discovery. But Spotlight now knows for a fact that Ticketmaster has told TicketOS it does not have, and cannot have, such an integration, yet TicketOS is turning around and selling its supposed "integration" to consumers. Ticketmaster has also made it clear that TicketOS cannot offer consumers the same or similar functionalities that Spotlight has (at least lawfully), as Spotlight's functionalities are part of an exclusive business partnership. For TicketOS to claim otherwise in the market is either literally false or materially misleading to consumers.

Defendants' motion should be denied.

---

[4] That summary judgment evidence is similar to the allegations advanced here, including that Concierge Live used a third party to scrape the Ticketmaster website and automation technology to access and retrieve ticket information, all of which is prohibited by Ticketmaster. *See Concierge Live* Matter, Dkt. No. 201-2, Ex. A, at 1 (Notice of Termination of License Letter, attached hereto as **Exhibit B**). By unlawfully scraping the Ticketmaster website instead of using the TradeDesk API in an authorized manner, Concierge Live circumvented the ticket transfer fee that Ticketmaster charges for tickets transferred using TradeDesk and significantly reduced the transfer fees paid to Ticketmaster. *Id.* Of note, Ticketmaster also explained that such license termination was retroactive to the start of the misconduct by its own terms, which means that Concierge Live's access to the API was *always unauthorized*. *Id.*

## II.    PROCEDURAL HISTORY

On April 9, 2025, Spotlight filed its First Amended Complaint. Dkt. No. 19. Defendants filed their motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) on May 6, 2025. Dkt No. 21-1. While Defendants' motion to dismiss was pending, Spotlight obtained material evidence and information further supporting its claims against Defendants through discovery in another litigation involving similar claims against one of Defendants' competitors. *See generally Concierge Live* Matter. On February 20, 2026, Spotlight filed a supplemental letter in support of its opposition to Defendants' motion to dismiss detailing the additional evidence it uncovered in the *Concierge Live* Matter, including email correspondence between Ticketmaster and TicketOS, sworn statements from senior Ticketmaster executives, and evidence of the relevant consumers' understanding of term "integration." *See* Supplemental Letter. Five days later, the Court held oral argument via videoconference on February 25, 2026.

During oral argument, while the Court indicated multiple times that the Court intended to allow the case as previously pled to move forward into discovery, the Court invited Spotlight to amend its First Amended Complaint to incorporate the new allegations set forth in Spotlight's Supplemental Letter, and clarify the definition of "integration" and how it works with the alleged misrepresentations related to functionality. *See generally* Dkt. No. 36-3, Transcript dated Feb. 25, 2026,

6

at 6-19. The Court explained that this additional information would "guide the discovery process" and was "all for discovery." *See id.* at 6:13-14; 9:18-19. In fact, the Court repeatedly reminded the parties that the factual questions addressed in the hearing would have to be explored in discovery and were not appropriate for determination under Rule 12(b)(6). *See id*. at 5:2-9; 6:13-14; 13:4-8, 22-23.

In adherence to the Court's invitation to include this newly discovered information in the operative pleading, Spotlight filed the SAC on April 10, 2026, which included additional factual allegations to provide more structure to the discovery process. Dkt. No. 35 ("SAC"). In response, Defendants filed a motion to dismiss the Second Amended Compliant on May 11, 2026. Dkt. No. 36-1 ("Mot.").

## III.  LEGAL STANDARDS

### A. Rule 12(B)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint must be construed in a light most favorable to the plaintiff. *See Warren Gen. Hosp. v. Amgen Inc*., 643 F.3d 77, 84 (3d Cir. 2011). Not only must all factual allegations be accepted

7

as true, but a court should not dismiss a complaint even where it appears unlikely a plaintiff can prove such facts. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556-57); *see In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Phillips*, 515 F.3d at 232-33 (citing *Twombly*, 550 U.S. at 544).

At the motion to dismiss phase, "the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint." *Gidley v. Reinhart Foodservice, L.L.C.*, No. 4:14-cv-0800, 2015 WL 1136447, at *2 (M.D. Pa. Mar. 12, 2015); *see Twombly*, 550 U.S. at 556 ("Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the necessary elements]."). Indeed, "standards of pleading are not the same as standards of proof" and "an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-214 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 793 (3d Cir. 2016) ("[E]ven if one believed that it unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits, . . . [the plaintiff] has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish

8

her claims." (internal citations omitted)); *Schuchardt v. President of the United States*, 839 F.3d 336, 347-48 (3d Cir. 2016). ("[C]ourts cannot inject evidentiary issues into the plausibility determination," and to hold otherwise "would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment.").

### B. Pleading Standard For False Advertising Claims

Courts in this District are split on whether false advertising claims under the Lanham Act should be evaluated under the notice pleading standard of Rule 8(a), the "intermediate" or "slightly heightened" pleading standard, or the specific standard of Rule 9(b) for pleading special matters.[5] *See N.J. Physicians United*

---

[5] This Court and others in this Circuit have repeatedly criticized the *Max Daetwyler* standard—a 40-year-old, pre-*Twombly/Iqbal* standard—set forth in in *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F. Supp. 1549 (E.D. Pa. 1985), which created the notion of an "intermediate standard" for Lanham Act false advertising claims. *See Peloton Interactive, Inc.*, 2021 WL 2188219, at *5 ("[The Court] do[es] not think that applying a pre-*Twombly/Iqbal* heightened pleading standard is appropriate."); *Shure Inc. v. Clearone, Inc.*, No. 19-1343, 2020 WL 2839294, at *5 n.12 (D. Del. June 1, 2020), *report and recommendation adopted by*, 2020 WL 8258362, at *1 (D. Del. June 18, 2020) ("The Court respectfully disagrees with these other courts and cannot conclude that an 'intermediate' standard of review applies to this Lanham Act claim. Federal pleading requirements are set out in the Federal Rules of Civil Procedure (as those rules are interpreted by the Supreme Court of the United States); they are not created or crafted by federal district courts." (internal citations omitted)); *Groupe SEB USA, Inc. v. Euro–Pro Operating LLC*, No. 14-137, 2014 WL 1316039, at *4 (W.D. Pa. Apr. 1, 2014) ("[A]s other district courts in this circuit have observed, the standard set forth in *Max Daetwyler* was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal* as well as the Third Circuit's decision in *Fowler*.") (internal citations omitted).

9

*Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 307 (D.N.J. 2015) (noting that the Third Circuit has not yet addressed the issue); *see also Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, No. 20-662-RGA, 2021 WL 2188219, at *5 (D. Del. May 28, 2021) (rejecting the notion that there is an intermediate standard and applying Rule 8); *Shure Inc.*, 2020 WL 2839294, at *5-6 n.12 (rejecting the notion that there is an intermediate standard and applying Rule 8); *N. Atl. Imports*, *LLC v. Loco-Crazy Good Cookers, Inc.*, No. 23-999, 2024 WL 245955, at * (D. Del. 2024) (applied intermediate standard because both parties accepted it).

As discussed *infra*, regardless of whether traditional Rule 8(a) notice pleading or the "intermediate" standard applies, Spotlight has provided Defendants with "sufficient detailed allegations regarding the nature of the alleged falsehoods to allow [Defendants] to make a proper defense," and easily meets either standard. *See N.J. Physicians United Reciprocal Exch.*, 141 F. Supp. 3d at 308.

## C. Pleading Allegations "Upon Information and Belief"

Defendants complain throughout their Motion that Spotlight's factual allegations are pled "upon information and belief," but do not cite to a single case that supports their position that such allegations are somehow improper or insufficient. On the contrary, the Third Circuit has held that pleading "upon information and belief" is permissible "[w]here it can be shown that the requisite

10

factual information is peculiarly within the defendant's knowledge or control—so long as there are no boilerplate and conclusory allegations and [p]laintiffs … accompany their legal theory with factual allegations to make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal quotation marks and citations omitted).

With respect to false advertising claims specifically, "when the pleader is asserting that third persons have been defrauded," the pleader may lack details at the outset and "less particularity should be required." *In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 22-542, 2023 WL 8006602, at *41-42 (W.D. Pa. Nov. 17, 2023). Thus, even assuming a heightened pleading standard applies, "absolute particularity" need not be shown, and information and belief pleading is sufficient when the complaint identifies "what the false statements were, to whom they were made . . . , and when and where the statements were made." *See id.* (denying motion to dismiss Lanham Act false advertising allegations pleaded on information and belief where the alleged false statements were made privately to third-party resellers and distributors outside plaintiff's presence).

IV. **ARGUMENT**

A. **Spotlight Properly Pled Each Element of Its Lanham Act False Advertising Claim**

Spotlight has alleged more than enough facts to plausibly state a claim for false advertising. Rather than meaningfully disputing the adequacy of Spotlight's

11

allegations, most of the instant Motion debates whether Spotlight's factual allegations are *credible* (*i.e.*, whether Spotlight's facts are proven true) rather than *plausible*.[6] *See* Mot. at 4-7, 10-18. Defendants skip past the fact that sufficient allegations are pled and ask the Court to consider the ultimate truthfulness of those factual allegations and whether Spotlight can prove them to be true. That is improper at the motion to dismiss stage. *See Fowler*, 578 F.3d at 213-214 ("[s]tandards of pleading are not the same as standards of proof"); *Connelly*, 809 F.3d at 793 ("[E]ven if one believed that it unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits, . . . [the plaintiff] has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims." (internal citations omitted)); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 (D.N.J. 1998) ("To withstand a motion to dismiss, a plaintiff is not required to provide evidence of or prove the truthfulness of his complaint.").

"To establish a Lanham Act claim based on a false or misleading representation of a product [or service] the plaintiff must show: 1) that the defendant

---

[6] Defendants make sweeping claims that Spotlight's factual allegations are conclusory, repetitive, and largely identical. *See* Mot. at 1, 3, 13, 19. However, none of Spotlight's allegations merely recite the elements of its claims or merely embody a legal point. *See Connelly*, 809 F.3d at 790 ("[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."). Each of Spotlight's allegations are facts that detail the circumstances of the false and misleading statements made by Defendants. Defendants' argument is without merit and should be disregarded.

has made false or misleading statements as to his own product [or service] [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods [or services] traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Warner-Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000). However, if a plaintiff proves a challenged claim is literally false, "a court may grant relief without considering whether the buying public was misled." *Id.* at 92. Spotlight has adequately pled each element of its false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

### 1. Spotlight Has Sufficiently Pled that Defendants Made Literally False Statements

As to the first element of a false advertising claim, a plaintiff must allege that the defendant made false __or__ misleading statements regarding its own product or service. *See Warner-Lambert Co.,* 204 F.3d at 91 (emphasis added). Here, Spotlight has alleged that Defendants' statements are literally false, or at a minimum, misleading.

Spotlight alleges that since 2019 Defendants have made literally false statements to Spotlight's current and prospective customers during in-person sales pitches and in response to requests for proposals. SAC ¶¶ 61, 77-116. Specifically,

13

Spotlight alleges that on at least ten separate occasions, Defendants claimed that (1) the TicketOS platform had certain capabilities that it did not actually have, including "break glass security," (2) its system was integrated with Ticketmaster, and (3) its system had the same functionality as Spotlight's systems.[7] *See id.* Each of Defendants' misrepresentations are sufficiently alleged to be literally false as Defendants have no integration with Ticketmaster, but instead, misuse a third-party intermediary to interface with Ticketmaster tickets in violation of such third-party's licenses with Ticketmaster. *See id.* ¶¶ 62-65, 68, 71-116, 149-165. Ticketmaster has publicly stated that Spotlight is the ***only*** Ticketmaster partner who has integration with Ticketmaster and has provided sworn testimony confirming the same. *Id.* ¶¶ 50, 53, 129-132.

In addition to lacking an actual integration with Ticketmaster, Spotlight has alleged that TicketOS cannot do everything that Spotlight can, does not have the same functionalities as Spotlight's systems, and does not have certain capabilities, including "break glass security." SAC ¶¶ 61, 69-70, 71-116. Spotlight further alleges that Defendants made a literally false representation on its public website: "TicketOS integrates with ***all*** major mobile ticketing providers." *See id.* ¶¶ 117-137.

---

[7] And this is just what Spotlight knows now, without the benefit of discovery.

Defendants' statement is similarly literally false because it does not have an integration with Ticketmaster. *See id.*

### 2. Spotlight Has Sufficiently Pled that Defendants Made Misleading Statements that Tend to Deceive and Are Material to the Purchasing Consumers' Decision

Even if Defendants' misrepresentations are not literally false, Spotlight has sufficiently alleged that they are misleading and have the tendency to deceive. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (stating that a plaintiff can prove a Lanham Act claim if a statement is "either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers"). Actual deception or tendency to deceive are only required showings for misleading misrepresentations, not literally false ones. *See Warner-Lambert Co.*, 204 F.3d at 91-92 (explaining that in the case of an allegation of literal falsity, the plaintiff need not establish that the buying public was misled). Because Spotlight has pled literal falsity, actual deception or tendency to deceive is presumed and not required, but regardless, Spotlight has extensively pled such tendency to deceive.[8]

---

[8] Defendants argue that by pleading the alternative "misleading" prong of the first element, Spotlight's allegations contradict each other and "confirms that Spotlight, on its own pleading, cannot exclude that Defendants have an integration with Ticketmaster." Mot. at 27. But Spotlight is permitted to plead in the alternative that TicketOS's misrepresentations were false **or** misleading. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one

15

Defendants argue that Spotlight's false advertising claim is inadequate because Spotlight has failed to prove that customers were actually deceived. *See* Mot. at 5, 6, 16-17, 25-27, 30. At the pleading stage, Spotlight is not required to prove actual deception, and it is enough to plead that the misleading statements have a "tendency to deceive." *See Warner-Lambert Co.*, 204 F.3d at 91-92, 97; *Novartis Consumer Health, Inc.*, 290 F.3d at 586. Here, Spotlight has alleged sufficient factual allegations to adequately plead that Defendants made several misleading statements regarding its services that did in fact deceive, or at the very least, have a tendency to deceive customers into believing that Defendants have an integration with Ticketmaster or the same integration with Ticketmaster that Spotlight has, certain capabilities, such as "break glass security," that Defendants do not have, and that it offers the same services as Spotlight, which Defendants cannot. *See* SAC ¶¶ 77-116, 117-120.

Repeatedly throughout its Motion, Defendant challenges Spotlight's factual allegations as implausible on the theory that customers could not have been deceived by the alleged misrepresentations related to Defendants alleged inability to offer "real-time scan data or the ability to rescind ticket transfer." *See* Mot. at 5, 16.

––––––––––––––––––––

of them is sufficient."). Since Spotlight has pled in the alternative literal falsity and misleading advertising, either one would be sufficient to defeat Defendants' Motion.

16

Defendants argue that any misrepresentations related to "real-time" functionality theoretically should have been discovered immediately by customers if they had actually been deceived. *See id.* In further support of their theory, Defendants opine on the alleged sophistication of the customers and whether they should or would have discovered the deception. *See* Mot. at 17, 28, 30. For all these reasons, Defendants argue it is impossible that the parties' customers who all allegedly find Spotlight's real-time and exclusive functionalities essential to their purchasing decisions "have all been deceived … but somehow not realize it." Mot. at 28.

In other words, if a defendant is too good at deceiving customers—so much so that they do not realize they are being deceived—then Spotlight's false advertising claim must be non-actionable. That cannot be the standard courts apply to protect the public interest against consumer deception. And critically, there is no requirement consumers need to discover the deception. Moreover, any complaints by *Defendants'* consumers related to their services would be in Defendants' possession, not Spotlight's, and customers would likely not realize they were deceived until a breakdown occurs. *See* SAC ¶ 174.

Regardless, the actual sophistication of the relevant consumer and any evidence in support of customer deception are factual issues to be addressed in discovery. Indeed, consumer deception is a factually intensive inquiry requiring things such as consumer testimony and/or consumer surveys, both of which would

17

be introduced in discovery. *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (holding tendency to deceive to be shown through, *inter alia,* consumer survey); *see also R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147, 2019 WL 4390564, at *12 (C.D. Cal. May 1, 2019) ("[T]he Court recognizes that consumer deception is typically proved through consumer surveys, which may be appropriately conducted during the discovery phase.").

Additionally, Defendants repeat their theory that consumer deception is not possible to assert that Spotlight has also failed to allege that the deception was material. *See* Mot. at 17, 29-30. Defendants' theory on how the misrepresentations cannot plausibly be material is irrelevant at the motion to dismiss stage. Spotlight has pled sufficient facts to allege that Defendants' false and deceptive statements are material. SAC ¶¶ 166-175. In fact, Spotlight already includes survey evidence that suggests having an integration with Ticketmaster is material to customers' decisions to use a ticket management service. *Id.* ¶ 167. Spotlight also asserts factual allegations related to customer testimony in the *Concierge Live* Matter directly applicable here, which suggests that integration with Ticketmaster and having Spotlight's exclusive features are material to customer decisions. *See id.* ¶¶ 168-69. Spotlight has asserted sufficient factual allegations that Defendants' misrepresentations, at the very least, tend to deceive customers and that Defendants' misrepresentations are material to customers' purchasing decisions.

18

### 3. Spotlight Has Adequately Pleaded that Injury was Caused By Defendants

For the final element of a false advertising claim, plaintiff must allege "that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *See Warner-Lambert Co.*, 204 F.3d at 91-92.[9] Spotlight has sufficiently alleged that since 2019, Defendants' misrepresentations have caused Spotlight to lose potential contracts (at least 10 contracts) with existing and potential clients. SAC ¶¶ 61, 80, 83, 87, 91, 95, 99, 103, 107, 111, 116. And that is just what Spotlight knows without the benefit of discovery.

Defendants' misrepresentations have also caused Spotlight to lose the full benefit of the exclusive relationship and partnership it has with Ticketmaster for which Spotlight has paid annual fees and a revenue sharing totaling millions of dollars. SAC ¶¶ 180-81. Thus, Spotlight has sufficiently alleged that it lost potential sales that flowed directly from Defendants' misrepresentations and is thus proximately caused by Defendants violation of the Lanham Act. *See Frompovicz v. Niagara Bottling, LLC*, 337 F. Supp. 3d 498, 506 (E.D. Pa. 2018) ("The 'classic Lanham Act false-advertising claim' is one in which 'one competitor directly injures

---

[9] The parties do not dispute whether Defendants' services traveled in interstate commerce and this factor was not addressed in Defendants' Motion. Therefore, Spotlight will not separately address the "interstate commerce" element required in a false advertising claim as it is undisputed that this factor has been satisfied.

another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch.'") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014)).

Defendants assert that Spotlight's Lanham Act claim fails "for lack of plausibly pleading proximate causation" and takes issue with the scope of Spotlight's damages theory because it is seeking disgorgement of profits, actual damages, including from diminished goodwill and lost profits, since at least 2019. *See* Mot. at 30-31. Again, these complaints have no place in a motion to dismiss. The scope of Spotlight's damages theory has nothing to do with whether it has plausibly alleged that Defendants false or misleading representations likely caused injury to Spotlight. Under a federal false advertising claim, a plaintiff may seek to recover disgorgement of Defendants' profits and actual damages. *See* 15 U.S.C. § 1117. While Defendants may not like the scope of Spotlight's claims, what Spotlight theoretically will seek during discovery because of its damages claim is not a proper reason to dismiss Spotlight's false advertising claim. What Spotlight will seek during discovery based on its well-pleaded factual allegations and any objection thereto is a matter for discovery.

### 4. Defendants' Arguments that Spotlight's Allegations are Insufficient are Unavailing

Defendants argue that Spotlight fails to state a false advertising claim because the term "integration" is ambiguous, and thus cannot be literally false, and because

20

Spotlight's alleged actionable statements are "not alleged with any degree of particularly" and are plead "upon information and belief." *See* Mot. at 23-25. As discussed above, Defendants' assertion that the term "integration" is ambiguous does nothing to derail Spotlight's false advertising claim because Spotlight has also sufficiently alleged that Defendants' statements concerning integration were misleading and deceptive. Additionally, Spotlight has sufficiently pled each factor of its false advertising claim with the requisite particularly required and may plead certain non-conclusory factual allegations upon information and belief, particularly when the information is not within Spotlight's possession. None of Defendants' arguments succeed.

     *a. Supposed Ambiguities Around Meaning of "Integration" Do Not Support Dismissal – That May Be a Matter For Discovery*

First, Defendants argue repeatedly that the term "integration" is ambiguous—and therefore cannot be "literally false."[10] But whether the term "integration" is ambiguous is not fatal to Spotlight's false advertising claim. As an initial matter, whether the alleged misrepresentations are misleading or literally false is a factual question inappropriate for resolution on a motion to dismiss. *See Horizon Healthcare*

---

[10] Defendants also briefly mention that the term "break glass security" is "inherently ambiguous." *See* Mot. at 30-31. For the same reasons that Defendants' arguments regarding alleged ambiguity of the term "integration" fail, Defendants claim also fails as to the alleged ambiguity of the term "break glass security."

*Servs., Inc. v. Valley Health Sys.*, No. 16-545, 2016 WL 4770032, at \*5 (D.N.J. Sept. 12, 2016) ("Given the fact-intensive issues presented by these statements—i.e., are the statements false or misleading (as opposed to nonactionable puffing), and did they deceive and influence purchasing decisions?—the Court finds that it is not proper to formally resolve these issues at the motion-to-dismiss stage."); *see also Universal Elec. Corp. v. Baldwin*, No. 2:17-cv-00842, 2018 WL 3707423, at \*7 (W.D. Pa. Aug. 3, 2018) ("A determination of whether these statements are false or misleading … involves a fact-intensive inquiry that is inappropriate for resolution on a motion to dismiss."); *Swarovski Optik N. Am. Ltd. v. iBuy Grp. LLC*, No. CV 23-01210 (GC) (TJB), 2024 WL 1142296, at \*3 (D.N.J. Mar. 15, 2024) (*citing N. Atl. Imps., LLC*, 2024 WL 245955, at \*2) (recommending that the District Court deny the defendant's motion to dismiss a false advertising claim, in part because the defendant relied on caselaw addressing "the ultimate burden of proving deception by a preponderance of the evidence," as opposed to "the requisite showing at the pleadings stage"). For this reason alone, the issue of whether the term "integration" is ambiguous, or whether the alleged misrepresentations are literally false or misleading, should not be resolved on a motion to dismiss.

Additionally, while Spotlight is not required at this stage to prove that the statement is literally false, nothing on the face of the SAC is ambiguous with respect to the term "integration." Upon direction from the Court, Spotlight asserted

22

additional facts to further explain what is meant by "integration," including additional facts based on consumer declarations and survey results showing how the term is readily understood within the industry by the relevant consumer. *See* SAC ¶¶ 34-37; 38-40, 161-62. Spotlight also alleges facts that establish that TicketOS itself understood what the term "integration" meant by continuously requesting by email that Ticketmaster provide it with the very integration at issue here. *See id.* ¶¶ 133-37. Defendants create a supposed ambiguity by calling into question the persuasiveness of the consumer survey results. *See* Mot. at 11, 25, 27. However, interpreting the results of a survey is a factual dispute and improper on a motion to dismiss.

> b. *Spotlight's Allegations are Sufficient Under Either Rule 8(a) or the "Intermediate" Standard*

Second, Defendants' argument that Spotlight has not met the "intermediate" pleading standard is wrong.[11] As previously mentioned, it is unclear which pleading

---

[11] While Defendants assert that Spotlight has not alleged sufficient factual allegations to meet the "intermediate standard," Defendant is really requesting that the Court hold Spotlight to a Rule 9(b) pleading standard by virtue of the list of "essential information" it alleges is missing from Spotlight's claims. Mot. at 20-21, 27. For example, Defendant assert that Spotlight is required to allege: who spoke in the sales pitch and request for proposal ("RFP") meetings, which Defendant spoke, who heard the statement, was the statement oral, written, a slide deck, a demo, or an RFP response, what exact words were used, what specific functionality was discussed, how does Spotlight know the statement was made, what customer decision maker relied on it, and what was Spotlight's actual expectancy for that account. *See id.* The level of specific detail Defendants allege is required is not a

23

standard is required for false advertising claims in the Third Circuit (although given *Fowler* and its progeny, the Court should apply the standard Rule 8 notice pleading standard). *See* Section III(B), *supra.* Regardless, Spotlight has met both the Rule 8(a) pleading standard and the "intermediate" pleading standard.

Spotlight has alleged (i) what the misrepresentations are, (ii) to whom the misrepresentations were expressed, (iii) when misrepresentations were made, (iv) why the misrepresentations were false or misleading, and (v) how the misrepresentations damaged Spotlight. *See* SAC ¶¶ 77-116, 117-137, 176-183. Courts in this District have found that similar allegations taken as a whole sufficiently plead a false advertising claim under even an "intermediate" standard. *See, e.g.*, *N.J. Physicians United Reciprocal Exch.*, 141 F. Supp. 3d at 308 ("Although [the plaintiff] does not allege the exact content of the statement . . . , it has provided a two-month date range, and provided a specific allegation as to the nature of the statement made and why that statement was false."); *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304, 2009 WL 904010, at *25 (D.N.J. Mar. 31, 2009) ("Taking Plaintiffs' allegations as a whole, they do identify Defendants' allegedly

---

Rule 8 or a "slightly heightened" pleading standard, but more akin to a Rule 9(b) standard, which is not required for this claim. Nor is it information that would be in Spotlight's possession at this stage of the case. This is information that would be revealed in discovery.

24

false statements with enough specificity to satisfy even the intermediate pleading requirement."); *N. Atl. Imports, LLC*, 2024 WL 245955 at \*2-4 ("Plaintiff's provision of the advertisement excerpts in the body of the pleading gives Defendant sufficient notice of the precise allegations to ascertain from its own records any additional details about the misrepresentations, such as when and where they were made."). Such is the case here.

### c.  Allegations Pled "Upon Information and Belief" Are Sufficient

Finally, Defendants' assertion that Spotlight cannot plead facts "upon information and belief" at the motion to dismiss stage is categorically wrong. *See* Section III(C), *supra*; *McDermott*, 649 F. App'x at 268 (finding pleading upon information and belief appropriate when the allegations are not conclusory and are within defendants' control).

The facts alleged upon information and belief are facts that (i) are in Defendants' exclusive possession, (ii) relate to Defendants' business, or (iii) relate to Defendants' dealings with third parties, which is particularly appropriate in a false advertising case. Defendants are not advertising how they lie to consumers, and Spotlight should not be expected to have discovered it without the same discovery Defendants are trying to avoid. At this stage, Spotlight is not required to plead specific facts related to Defendants' relationship with its third-party intermediary, including exactly how the data is scrapped from Ticketmaster's website, or plead

25

specific facts related to private sales pitches between Defendants and third parties. All that Spotlight can plead are facts, upon information and belief, it has learned through feedback from prior and prospective customers and in the *Concierge Live* Matter.

To demand that Spotlight allege facts not on information and belief that occurred in private meetings where Spotlight was not present or facts that relate to Defendants' specific dealings with third-party intermediaries is nonsensical. The level of detail Defendants argue must be alleged is not required on a motion to dismiss and would be uncovered during discovery.

For the foregoing reasons, Spotlight has sufficiently alleged each element of its false advertising claim with the requisite particularity, and Defendants' Motion should be denied.

## B. Spotlight Properly Pled Its Tortious Interference with Contractual Relations Claim

Defendants claim Spotlight has failed to sufficiently allege tortious interference with contractual relations. According to Defendants, Spotlight has failed to specify the alleged contracts, other than the Spotlight/Ticketmaster contract, attach the contract or identify any provision allegedly breached, and failed to allege "that any of its vague and unspecified contracting partners actually breached their contracts with Spotlight." Mot. at 34. Defendants also claim Spotlight has failed to

26

allege that Defendants acted with malice. Mot. at 35. On the contrary, Spotlight has alleged each of the required elements.

"A claim for tortious interference [with contractual relations] requires a plaintiff to allege facts showing: (1) the existence of a contract; (2) defendant interfered intentionally and maliciously with that contract; (3) loss of the prospective gain or breach of contract as a result of the interference; and (4) damages resulting from that interference." *LY Berditchev Corp. v. ESupplements, LLC*, No. 2:24-cv-00625, 2024 WL 4182585, at *2 (D.N.J. Sept. 12, 2024) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.,* 116 N.J. 739, 751-52 (1989)); *Fid. Eatontown, LLC v. Excellency Enter., LLC*, No. 3:16-cv-3899, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017); *Floorgraphics, Inc. v. News Am. Mktg. in-Store Servs., Inc.*, No. 04-3500, 2008 WL 1901107, at *2 (D.N.J. Apr. 24, 2008). Spotlight has properly pled each and every element:

> (i)    a valid contract with Ticketmaster (SAC ¶¶ 33, 55);
>
> (ii)    Defendants' knowledge of that contract and intentional efforts to disrupt it (SAC ¶¶ 5, 7-8, 127-137);
>
> (iii)    the resulting loss of prospective gain from its contract with Ticketmaster (SAC ¶¶ 180-81); and

27

(iv)    damages resulting from Defendants' interference, including loss of current and prospective clients (*see* SAC ¶¶ 80, 83, 87, 91, 95, 99, 103, 107, 111, 116, 176-183).

Defendants also claim that Spotlight failed to specify the alleged contracts with which Defendants interfered. Mot. at 34. However, the Second Amended Compliant is replete with references to Spotlight's agreement with Ticketmaster. *See* SAC ¶¶ 5, 8, 32-33, 41-55.

In fact, Spotlight alleged additional facts in the SAC whereby Ticketmaster confirms in sworn statements (attached to the Complaint) that Spotlight has an *exclusive* contractual relationship with Ticketmaster. *Id.* ¶ 50; SAC Exhibits E-F. The SAC further alleges that Defendants *knew* about the Spotlight/Ticketmaster contract because it was informed by Ticketmaster on multiple occasions via email (also attached to the Complaint) that Ticketmaster could not provide Defendants with an integration because of its exclusive contract with Spotlight. SAC ¶¶ 5, 132-136; SAC Exhibits I-J. The pleadings clearly show that Spotlight's claim under Count II relates to its contract with Ticketmaster. Defendants' reference to Spotlight's alleged failure to specify a contract "other than the Spotlight/Ticketmaster Contract" is irrelevant. Spotlight has sufficiently pled the existence of a contract.

28

Defendants also complain, without any support, that Spotlight did not attach its proprietary contract with Ticketmaster to a public pleading. Mot. at 34. Spotlight need not attach the physical contract. All Spotlight needs to do is allege the existence of a contract. *See LY Berditchev Corp.*, 2024 WL 4182585, at *2 ("Courts in this district have held that a 'claim for tortious interference with contract [may] survive a motion to dismiss where a plaintiff alleges the existence of a contract but does not plead specific facts identifying it.'" (internal citations omitted)); *see also Jame Fine Chems. Co. v. Hi-Tech Pharmacal Co.*, 44 F.App'x 602, 604 (3d. 2002) (reversing dismissal of breach-of-contract and tortious-interference claims where the counterclaimant adequately alleged an agreement and interference with that agreement); *see generally Wilkes v. State Farm Ins. Cos.*, No. 1:05-CV-586, 2005 WL 1667396, at *2 n.2 (M.D. Pa. July 15, 2005) (explaining that Rule 10(c) is "permissive rather than mandatory" and that attachment of the contract to the complaint is not "necessary"). Spotlight has alleged more than enough facts to establish the existence of its contract with Ticketmaster.

Defendants further argue that Spotlight does not allege "which provision was at issue, which party had to perform that provision, [and] which party breached that provision," but that argument improperly treats breach of a contract as a required element of Spotlight's tortious interference with contractual relations claim. *See* Mot. at 35.

29

Under New Jersey law, Spotlight need not allege a freestanding breach of contract by Ticketmaster. Rather, the third element is satisfied by allegations of either "loss of the prospective gain **or** breach of contract as a result of the interference." *LY Berditchev Corp.*, 2024 WL 4182585, at *2 (D.N.J. Sep. 12, 2024) (emphasis added); *Fidelity Eatontown, LLC*, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017); *DiGiogio Corp. v. Mendez & Co., Inc.*, 230 F. Supp. 2d 552, 558 (D.N.J. 2002). Thus, the question is not whether Spotlight has pled a breach by Ticketmaster, but whether Defendants intentionally interfered with Spotlight's contractual relationship, caused Spotlight to lose the benefit or prospective gain it expected from that relationship, and resulted in damages from that interference. Spotlight has alleged exactly that. *See* SAC ¶¶ 61-137, 176-183.[12]

Defendants further assert that Spotlight failed to allege that Defendants acted with malice because Defendants claim they were acting in their own economic self-interest. Mot. at 35. The Court must look at what is required for a showing of malice:

> Malice in the intentional interference context ***does not literally require ill will*** but rather "is defined to mean that the harm was inflicted intentionally and without justification or excuse."

---

[12] Notably, the judge in the *Concierge Live* Matter refused to grant summary judgment for Concierge Live on a similar tortious interference claim brought by Spotlight, recognizing that Concierge Live's conduct interfered with Spotlight's exclusive integration partnership with Ticketmaster. *See* Order on Cross-Motions for Summary Judgment at 15 (*Concierge Live* Matter, Dkt. No. 205).

30

*Dill v. Yellin*, 725 F. Supp. 3d 471, 489 (D.N.J. 2024) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. Sup. Ct. 1989)) (emphasis added). While Defendants try to use economic self-interest as a justification, that alone does not absolve them from their wrongful behavior. *See* Mot. at 36. One would be hard pressed to find any defendant in a tortious interference claim not acting in their own economic self-interest. Acting in one's self-interest does not absolve a party of liability for a tort.

"While competition may constitute justification, a defendant-competitor claiming a business-related excuse must justify not only its motive and purpose but also the means used." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199, 659 A.2d 904, 933 (N.J. App. Div. 1995). "The ultimate inquiry is whether the conduct was both injurious and transgressive of generally accepted standards of common morality or of law." *Dill*, 725 F. Supp. at 489 (internal citations omitted). "Reduced to its essence, the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game.'" *Ideal Dairy Farms, Inc.*, 659 A.2d at 933. Indeed, a price-setting conspirator is acting in its own economic self-interest, as is a stealer of trade secrets, as well as a patent or trademark infringer. Such unlawful means to economic self-interest do not exonerate a party from a claim of tortious interference.

31

Here, Spotlight alleges that Defendants engaged in a deliberate campaign of misrepresentation, falsely advertising the nature of the TicketOS platform's services to deceive consumers, and as a result, diverted business away from Spotlight. *See* SAC ¶¶ 61-137. These deceptive actions are what separates legitimate competition from what the law considers "unfair" competition. That is, Defendants' false and deceptive conduct—conduct that violate the Lanham Act—supplies the predicate for malice required to support Spotlight's tortious interference claim. *See e.g., Hampton House Assocs., LLC v. Lowe's Home Ctrs. Inc.*, No. 12-0110, 2012 WL 13034157, at *6 (D.N.J. May 1, 2012) (finding that Lowe's intentional breach of contract served as the predicate for malice in the tortious interference claim). For the foregoing reasons, Spotlight has sufficiently pled each element of its tortious interference with a contractual relationship claim to survive a motion to dismiss.

## C. Spotlight Properly Pled Its Tortious Interference with Prospective Economic Advantage Claim

Defendants' argument that Spotlight fails to assert a claim for tortious interference with prospective economic advantage fails for largely the same reasons as the tortious interference with contractual relations.

> Under New Jersey law, the five elements of a claim of tortious interference with a prospective business relationship are: (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff

32

would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992). Spotlight has alleged the existence of numerous business opportunities with a reasonable expectation of economic benefit, including, for example, prospective renewals of existing contracts when the terms expired or prospective clients who are looking specifically for an integration with Ticketmaster. *See* SAC ¶¶ 80, 83, 87, 91, 95, 99, 103, 107, 111, 116, 176-183. Spotlight further alleges that Defendants were aware of those business expectancies yet pursued the same opportunities through targeted misrepresentations that its services were comparable to Spotlight's services. *Id.* ¶¶ 8, 66-116, 127-136. Spotlight has also alleged that in the absence of such interference, there is a reasonable probability that Spotlight would have received the prospective contracts—by virtue of Spotlight being the only company that has an integration with Ticketmaster—and that Defendants' misrepresentations interfered with Spotlight's business expectancy, which resulted in damages to Spotlight. *See id.* ¶¶ 166-183.

In support of its argument to dismiss this claim, Defendants rehash their claim that Spotlight cannot prove malice—the same requirement in a tortious interference with contractual relations claim—because Defendants are engaging in "lawful competition." Mot. at 38-39. Yet, as previously discussed, Defendants' means of competition must be justified, legitimate, and lawful. *See Ideal Dairy Farms*, 659

33

A.2d at 933; *see also Nostrame v. Santiago*, 213 N.J. 109, 124, 61 A.3d 893, 902 (holding that what constitutes wrongfulness "has been broadened beyond … traditional categories [fraud and defamation]" to include "deceit and misrepresentation."). Malice is satisfied by alleging that Defendants acted contrary to the law. *See Dill*, 725 F. Supp. 3d at 489 ("The ultimate inquiry is whether the conduct was both injurious and transgressive of generally accepted standards of common morality or law." (quotations omitted)). Indeed, Spotlight alleges that Defendants engaged in unfair competition by falsely advertising the nature of its services and deceiving customers. Defendants cannot cloak unlawful deception as "lawful competition"; the same false advertising and customer deception that establish malice for Spotlight's contractual-interference claim establish malice here too.

Defendants further argue that Spotlight has insufficiently plead damages because the factual allegations related to Spotlight's claims for lost profits and reputation harm are "not plausible." Mot. at 38. Defendants again raise their theory that based on Spotlight's allegations related to Defendants' misrepresentation regarding functionality, "it cannot be conceived that such an alleged misrepresentation would cause any harm to Spotlight." Mot. at 38-39. Defendants debate the credibility of Spotlight's factual allegations rather than whether they are

34

sufficiently alleged. As already discussed in detail, such factual disputes are improper at this early stage in the pleadings.

Spotlight has sufficiently alleged that Defendants' misrepresentations have resulted in lost profits and caused reputational harm, and at the pleading stage, the Court must accept Spotlight's non-conclusory allegations as true. *See IDT Corp. v. Unlimited Recharge, Inc.*, No. 11-4992 (ES), 2012 WL 4050298 at *10 (D.N.J. Sept. 13, 2012) (finding that the plaintiffs had sufficiently pled facts to state a plausible claim for tortuous interference with prospective economic damage and recognizing that a court must "[t]ake[] all the allegation in the complaint as true … when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."). How Defendants' misrepresentations ultimately harmed Spotlight's reputation, and to what extent the misrepresentations caused Spotlight to lose profits, is a factual dispute not appropriate to debate on a motion to dismiss. *See Call Inc. v. Advanced Health Media, LLC*, No. 11-3723, 2012 WL 1079652 at *6 (denying dismissal of tortious-interference claim and holding that damages "need not be quantified with specificity" at the pleading stage).

Finally, Defendants argue that Spotlight has failed to plead that it was "actually pursuing the customer or had a reasonable probability of obtaining the business." Mot. at 39. This is untrue. Spotlight alleges ten distinct instances in which Defendants participated in sales pitches and requests for proposals directed at

35

Spotlight's current or prospective customers. SAC ¶¶ 77-116. Indeed, Spotlight was uniquely positioned to win the business because it was the only ticket-management services company actually integrated with Ticketmaster, and the prospective customers at issue were seeking precisely that integration. *See id.*; SAC ¶¶ 166-175. These allegations are more than sufficient. *See Call*, 2012 WL 1079652, at *5 ("so long as the allegations contain sufficient information regarding a reasonable probability of anticipated economic benefits, the fourth element is satisfied.").

For the same reasons set forth above, Spotlight has more than adequately pled each element to allege a claim for its tortious interference with prospective economic advantage claim.

## V.   CONCLUSION

Based on the foregoing, Defendant's putative Rule 12(b)(6) motion to dismiss the Second Amended Complaint should be denied.

36

Dated: June 8, 2026

Respectfully Submitted,

By:   */s/ Torsten M. Kracht*
       Torsten M. Kracht (Atty. ID # 3241998)
       torsten.kracht@morganlewis.com
       **MORGAN, LEWIS & BOCKIUS LLP**
       1111 Pennsylvania Avenue, NW
       Washington, DC 20004-2541
       Telephone:   (202) 739-5346
       Facsimile:    (202) 739-3001

       Christopher M. Pardo, Esq.
       (*Pro Hac Vice*)
       christopher.pardo@morganlewis.com
       **MORGAN, LEWIS & BOCKIUS LLP**
       One Federal Street
       Boston, Massachusetts 02110
       Telephone:   (617) 341-7700
       Facsimile:    (617) 341-7701

       *Attorneys for Plaintiff*
       *Spotlight Ticket Management, Inc.*

## CERTIFICATE OF SERVICE

I, Torsten M. Kracht, do hereby certify that on June 8, 2026, I caused a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss to be served via the Court's Electronic Case Filing System on all counsel of record.

/s/ Torsten M. Kracht
Torsten M. Krach