# EXHIBIT A

# HUNTON

HUNTON ANDREWS KURTH LLP
2200 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20037-1701

TEL   202 • 955 • 1500
FAX   202 • 778 • 2201

TORSTEN M. KRACHT
DIRECT DIAL: 202 • 419 • 2149
EMAIL: tkracht@hunton.com

February 20, 2026

**Via Electronic Mail**

Hon. Madeline Cox Arleo
United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Room MLK 4A
Newark, New Jersey 07101
*Raymond_Hernandez@njd.uscourts.gov*

Re:    *Spotlight Ticket Management, Inc. v. TicketOS, et al.*, No. 2:25-cv-00170

Honorable Judge Arleo:

We represent Plaintiff Spotlight Ticket Management, Inc. ("Spotlight") in the matter referenced above.

Pursuant to the Court's instruction on February 18, 2026, this letter sets forth recently discovered material evidence and information further supporting Spotlight's opposition to the Rule 12(b)(6) motion to dismiss the First Amended Complaint ("Motion") filed by Defendants TicketOS, TicketOS Technology, Inc. and Next Sports & Entertainment, LLC (collectively, "Defendants" or "TicketOS") (Dkt. No. 21). The Motion was fully briefed in June 2025 and is set for oral argument on February 25, 2026.

If the Court determines that there is any merit to the Motion, which Spotlight does not believe to be the case, Spotlight respectfully re-asserts its request for leave to amend the First Amended Complaint ("FAC") to put forth these and other facts supporting its claims.

## I.    INTRODUCTION

Defendants' Motion is the first of what will likely be many efforts in this litigation to shield from consumers how TicketOS supposedly accomplishes the "integration" that it falsely claims to have with Ticketmaster. In just the past few months, Ticketmaster has confirmed that neither TicketOS nor any other company aside from Spotlight has such an integration.  At the same time, discovery in another litigation has exposed how companies attempt to mimic Spotlight's exclusive and unique Ticketmaster integration through obviously improper means.

ATLANTA  AUSTIN  BANGKOK  BOSTON  BRUSSELS  CHARLOTTE  DALLAS  DUBAI  HOUSTON
LONDON  LOS ANGELES  MIAMI  NEW YORK  RICHMOND  SAN FRANCISCO  TOKYO  TYSONS  WASHINGTON, DC
www.Hunton.com

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 2

As is explained further below, upon information and belief now substantiated by evidence obtained in another litigation, TicketOS actually uses one or more third party's software to "crawl" or "scrape" Ticketmaster's website and circumvent the ticket transfer fee that Ticketmaster charges, which all is in violation of Ticketmaster's Terms of Use.

In relevant part, the FAC alleges that "integration" in the context of computer systems "refers to the process of connecting and enabling different systems and applications to talk directly to one another to work together seamlessly," FAC ¶¶ 25-27, and that TicketOS's representation that it has such an "integration" is false, *id.* ¶ 46. Defendants' Motion asserts that Spotlight's Lanham Act claim fails because (a) the FAC's definition of "integration" is ambiguous, and therefore not capable of being literally false (Motion, pp. 20-22), and (b) Spotlight has not plausibly alleged that customers were deceived by TicketOS (Motion, pp. 23-27). As to Spotlight's tortious interference claims, Defendants argue that Spotlight cannot show that Defendants acted with the requisite malice because Defendants engaged in legitimate competition. *See* Motion, pp. 28-29, 34-37.

While Defendants' Motion should be denied based solely on the briefing as it stood in June 2025, Spotlight recently obtained compelling new evidence that further supports and validates Spotlight's claims against TicketOS. Through discovery in litigation involving very similar claims against Concierge Live, another of Defendants' competitors,[1] Spotlight learned the following information specific to TicketOS:

(1)   On May 12, 2022, via email, TicketOS's Chief Technology Officer directly asked Ticketmaster's Chief Strategy Officer whether it was possible for TicketOS to obtain an integration with Ticketmaster. Despite Ticketmaster unequivocally responding, "We currently have an ***exclusive partnership*** with TicketManager[2] ***so an integration won't be possible***," TicketOS continued to falsely represent to the market that it, in fact, had an integration with Ticketmaster (*see infra* pp. 5-7, Exhs. A-D);

(2)   After being told unequivocally that TicketOS could not have an integration with Ticketmaster, on November 13, 2022, the CEO of TicketOS tried another angle, reaching out to the Chief Product Officer of the company that used to own TicketOS and asking him to send a slide deck to Maria Ostroff at Ticketmaster seeking "a partnership with TicketMaster and access to the Nexus Partnership

---

[1] *See generally Spotlight Ticket Management, Inc. v. Concierge Live, LLC*, No. 2:24-cv-00859 (C.D. Cal.).

[2] Spotlight is also referred to by business partners, customers, and in the market as "TicketManager."

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 3

APIs," but Ms. Ostroff forwarded the message to Ticketmaster's Chief Strategy Officer who had already told TicketOS that it could not have such an integration and noted TicketManager's exclusivity (*see infra* pp. 5-6, Exh. B);

(3)     Still having no luck, on September 6, 2024, TicketOS followed up again with Ticketmaster about an integration, ***expressly acknowledging TicketManager's exclusive integration in the corporate ticket management space*** (*see infra* p. 5, Exh. A);

(4)     Nonetheless, after being told in no uncertain terms multiple times by Ticketmaster that TicketOS does not have an integration with Ticketmaster, in April 2024, upon information and belief, ***TicketOS responded to an RFP for corporate ticket management issued by a healthcare company that listed integration with Ticketmaster as a required feature*** (*see infra* pp. 6-7, Exhs. C-D);

(5)     As part of this other litigation, Ticketmaster's Chief Strategy Officer and Senior Vice President of Product both provided sworn statements confirming that (i) Spotlight is the only company in the corporate ticket management space that has an integration with Ticketmaster and (ii) using third parties to effectuate ticket transfers or other functionalities by crawling, scraping, or using bots and circumventing payment of required transfer fees (generally fifty cents per ticket) is a violation of Ticketmaster's Terms of Use, which terminates any license to access any Ticketmaster API (pp. 7-8, Exhs. E, F, H); and

(6)     Similarly, in conjunction with that other litigation, it was established that consumers in the corporate ticket management space consider "integration" to mean a direct, permission-based integration between two software platforms; however, a consumer would not necessarily be able to tell if a corporate ticket management provider like TicketOS and Concierge Live improperly used a third-party to mimic Spotlight's functionalities in order to "provide" the promised services (*see infra* pp. 8-9, Exhs. J-M).

Simply put, Ticketmaster has repeatedly and directly told TicketOS that it ***does not have an integration***, and no other company in the corporate ticket management space has one either except for Spotlight. Nonetheless, TicketOS, fully aware of Spotlight's exclusive relationship with Ticketmaster, and after being told by Ticketmaster that TicketOS does not have an integration, has represented repeatedly to the market that it ***does have an integration***. At the same time, upon information and belief, because TicketOS does not have an integration, TicketOS is likely violating Ticketmaster's Terms of Use by engaging in prohibited conduct to

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 4

transfer tickets, thereby avoiding Ticketmaster's ticket transfer fees and undercutting Spotlight's pricing based on knowingly false pretenses.

Moreover, consumers in the market understand integration to mean what the FAC says it means—a direct, permission-based connection between two software systems—and they would not necessarily know if a company is using a third party to accomplish ticket transfers with Ticketmaster.

What TicketOS perhaps did not appreciate was that Spotlight did not obtain this exclusive integration simply by asking for it – *Spotlight spent __millions upon millions__ of dollars in time, human capital and money to collaborate with Ticketmaster in developing what ultimately became the Ticketmaster integration that TicketOS falsely claims to the market to possess*. *See Spotlight Ticket Management, Inc. v. Concierge Live, LLC,* No. 2:24-cv-00859 (C.D. Cal.), ECF No. 176-1 at p. 30 ("Under the Agreement, Spotlight codesigned and built APIs with Ticketmaster to facilitate the functionality needed for corporate ticket management and to integrate Ticketmaster's software and systems with Spotlight's software and systems. Spotlight has invested approximately $10 million to co-develop this technology.")

These facts belie the arguments underpinning Defendants' Motion: that claiming TicketOS is "integrated" with Ticketmaster is ambiguous (it is not ambiguous), that consumers were not deceived by that claim (they were deceived), and that TicketOS is simply engaging in lawful competition (it is not).

Given these reasons, those set forth in Spotlight's briefing, and the additional facts and evidence set forth herein, TicketOS's Motion should be denied.

## II.   ANALYSIS

Courts generally do not consider new facts presented in opposition to a Rule 12(b)(6) motion to dismiss, but can consider affidavits or other evidence to decide the propriety of granting leave to amend. *See Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 305 (D.N.J. 2019) (providing leave to amend due to Plaintiff raising a new theory of liability in its brief). Further, and as a general matter, where factual deficiencies are present, leave to amend is ordinarily granted in order to allow a plaintiff to add additional facts. *See In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1435 (3d Cir. 1997) (citing Fed. R. Civ. P. 15(a)). Here, the facts relevant to Spotlight's claims would largely only be known to TicketOS; however, discovery in another litigation set for trial in just a few months revealed evidence directly relevant to TicketOS' actions, further supporting the validity of Spotlight's claims against Defendants and undercutting the instant Motion.

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 5

III. **SUPPLEMENTAL EVIDENCE IN SUPPORT OF SPOTLIGHT'S OPPOSITION TO THE MOTION**

A. **Ticketmaster Explicitly Told TicketOS that TicketOS _Could Not Integrate_ with Ticketmaster Due to Ticketmaster's Exclusive Partnership with Spotlight and, After Being Rebuffed, TicketOS Kept Asking for an Integration**

The supplemental evidence belies Defendants' efforts to play ignorant regarding the meaning of its messaging that it has an "integration" with Ticketmaster (*see* Motion, pp. 22-23). Ticketmaster has told TicketOS in no uncertain terms that Ticketmaster does not have integration with TicketOS, nor would one be allowed due to Ticketmaster's exclusive partnership with Spotlight. Nevertheless, TicketOS represented and continues to represent to the market that it is integrated with Ticketmaster. ***This statement is literally false.***

1. *Ticketmaster Tells TicketOS in May 2022 that it Cannot Integrate with Ticketmaster*

On May 12, 2022, Dominic Laico, Chief Technology Officer of TicketOS, emailed Dave Scarborough, Ticketmaster's Chief Strategy Officer, stating that TicketOS has "been working on several integrations with primary ticketing companies" and that he has been in touch with Ticketmaster contacts but "it seems as though the path toward partnership is difficult ***given the relationship that already exists with Ticket Manager***." **Exhibit A** (TM006364-65) (emphasis added). Mr. Scarborough responded the same day, stating simply "We currently have an ***exclusive partnership*** with TicketManager ***so an integration won't be possible***." **Exhibit A** (TM 006364) (emphasis added). Thus, by May 2022 at the latest, TicketOS knew that representing to the market that it had an integration with Ticketmaster was not just misleading, but literally false.

2. *Unsatisfied with the Rejection Directly from one of Ticketmaster's C-Level Executives, TicketOS Tries to Go Around Him in November 2022, But Still Fails to Obtain an Integration*

On November 13, 2022, TicketOS' CEO, Ari Strulson, reached out to Scott Zeiger, Chief Product Officer of Entertainment Benefits Group, which is the company that sold TicketOS to Mr. Strulson in 2020. **Exhibit B** (TM004320-21); FAC ¶¶ 37-38. Mr. Strulson asked Mr. Zeiger to send a presentation directly to Ticketmaster's Managing Director for North America, Marla Ostroff, seeking "[a] partnership with Ticketmaster and access to the Nexus Partnership APIs." *Id.* (TM004320). Mr. Strulson emphasized that "[t]his is by far, a top priority." *Id.* at TM004321. In sum, TicketOS ran into a roadblock from one of Ticketmaster's

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 6

highest C-Level executives, Mr. Scarborough, in May 2022, did not like the answer that Mr. Scarborough gave them (bluntly, "no"), and tried to skirt that roadblock.

Mr. Zeiger forwarded Mr. Strulson's message to Ms. Ostroff stating"I know that David Scarborough has always been professional with respect to Ari's company, but it seems like the roadblock to a dialogue with [Ticketmaster] has been substantial." *Id.* at TM004320. Unfortunately for TicketOS, Ms. Ostroff sent the request directly to Mr. Scarborough, noting that she assumed that Ticketmaster's relationship with Ticket Manager "trumps" TicketOS' request for an integration.

### 3. TicketOS Tries and Fails (Yet Again) in September 2024 to Obtain an Integration with Ticketmaster

TicketOS' attempts to obtain an "integration" by circumventing Mr. Scarborough obviously failed because on September 6, 2024, Mr. Laico followed up with Mr. Scarborough, acknowledging the partnership between Ticketmaster and Spotlight and Spotlight's exclusivity, but inquired if Spotlight's exclusivity was up for renewal. **Exhibit A** (TM006364). In other words, between May 2022 and September 2024, TicketOS was well aware that (a) Spotlight had an exclusive integration with Ticketmaster and, by contrast, (b) TicketOS did not have an integration with Ticketmaster.

### B. Despite Knowing That it Has No Integration with Ticketmaster, TicketOS Participates in an RFP for a Customer Requiring Ticketmaster Integration

In April 2024, Advent Health conducted an RFP for ticket management services. In correspondence with Brian Basloe, CEO of Concierge Live, Sarah Omran of Advent Health stated that Concierge Live needed to confirm that it could meet all of Advent Health's requirements, including "Integration with Ticketmaster," which she listed as "Must have." **Exhibit C** (CL027235-36).[3] In his deposition, Mr. Basloe acknowledged that integration with Ticketmaster was in fact a requirement for Advent Health and stated that he believes TicketOS won the pitch. **Exhibit D** (pp. 287:15-288:1). Although Spotlight is aware that TicketOS did not win the pitch, Mr. Basloe's statement suggests that TicketOS participated in the pitch.

---

[3] On January 26, 2026, Judge Wesley Hsu denied Concierge Live's application to seal the documents and deposition testimony of Concierge Live that is attached hereto. Unredacted versions of these documents were therefore publicly filed on January 29, 2026.

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 7

Since Advent Health required a Ticketmaster integration and TicketOS likely participated in the pitch, TicketOS necessarily told Advent Health that it was integrated with Ticketmaster despite knowing for nearly two years that this was not true.

### C. Ticketmaster Executives Confirm in Sworn Statements that *Spotlight is the Only Corporate Ticket Management Company Integrated with Ticketmaster*

Phil Volini, Ticketmaster's Senior Vice President of Product, and David Scarborough, Ticketmaster's Chief Strategy Officer, have both provided sworn declarations affirming Spotlight's exclusive integration with Ticketmaster and TicketOS' lack thereof.

*First*, Mr. Scarborough confirmed that Spotlight is the only corporate and event ticket management company that has ever had an integration with Ticketmaster. **Exhibit E** (Scarborough Dec., ¶ 36); **Exhibit F** (Scarborough Supp. Dec., ¶ 10). Mr. Scarborough also made these same statements to at least one of Spotlight's customers on June 3, 2021. **Exhibit G** (Huntley Dec., ¶¶ 8-9).

*Second*, Mr. Volini confirmed that an API designed for ticket brokers to transfer tickets called "Trade Desk" is not an "integration," meaning a company that uses Trade Desk to transfer tickets is not integrated with Ticketmaster. *See* **Exhibit H** (Volini Dec.), ¶ 9; FAC ¶¶ 64-67. Rather, Trade Desk is an API tool developed to allow brokers to transfer tickets on secondary markets without engaging in scraping, web crawling, and other impermissible activity that burdens Ticketmaster's website. Volini Dec., ¶¶ 6-8. Trade Desk users must agree to Ticketmaster's Terms of Use, which prohibits scraping, web crawling, or any other bot programming. *Id.*, ¶ 16. Trade Desk charges a fee for each ticket transferred through the Trade Desk API. *Id.* Using automated actions (such as scraping, bots, and web crawling) to avoid paying the fee is a breach of Ticketmaster's Terms of Use, ***resulting in the automatic revocation of a company's license to use Trade Desk***. *Id.*

Upon information and belief, and as Spotlight alleges in the Amended Complaint, TicketOS does not even use Trade Desk directly to transfer tickets, instead using a third party service provider that in turn uses Ticketmaster's Trade Desk to transfer tickets. FAC ¶¶ 62-76. Thus, TicketOS' claim that it is integrated with Ticketmaster is both misleading and literally false because not only is the use of Trade Desk not an integration, the use of a third party intermediary means that it is not even communicating directly with Ticketmaster.[4]

---

[4] It is also possible that the third party that TicketOS uses circumvents Trade Desk entirely to avoid paying the required transfer fee—which is exactly what TicketOS' direct competitor (Concierge Live) is doing. *See* **Exhibit I** (Gainor Depo.).

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 8

Given the new information from Mr. Volini, if the Court determines that amendment is required, Spotlight would file a Second Amended Complaint alleging that upon information and belief, the third party that TicketOS goes through to interact with Ticketmaster accomplishes transfer of tickets for TicketOS customers by scraping, web crawling, or otherwise using bot programming and may be bypassing Trade Desk to avoid paying ticket transfer fees.

Spotlight reasonably estimates, based on its knowledge of the industry, that Defendants process at least ***500,000 Ticketmaster tickets per year***. As a result, TicketOS shorts Ticketmaster at least $250,000 per year in transfer fees—an offset it can use to undercut Spotlight's pricing. This activity violates Ticketmaster's Terms of Use and results in an automatic revocation of its license to use any Ticketmaster API at all, further demonstrating the malice in Defendants' conduct. *See* Opposition, p. 24.

> **D. Consumers of Corporate Event Management Software Confirm that an Integration Requires Direct, Permission-Based Connection Between Two Systems**

Spotlight retained a survey expert in connection with the Concierge Live litigation who designed and conducted a double-blind survey as to the meaning and materiality of the term "integrated" among the relevant consumers and potential consumers of corporate ticket management services.

In response to the survey, 90.8% of respondents indicated they considered an arrangement where the ticket management service's computer system ***communicates directly*** with Ticketmaster's computer system when carrying out ticket management functions to be integrated. Additionally, 90.8% of respondents indicated that integration exists between Ticketmaster and a ticket management service where the ticket management service's computer system has Ticketmaster's ***permission to interact directly*** with Ticketmaster's computer system. In other words, the overwhelming majority of consumers believe integration requires a direct, permission-based relationship with Ticketmaster, consistent with the definition of integration set forth in Spotlight's Amended Complaint. *See* FAC, ¶¶ 25-27. This evidence directly contradicts Defendants' argument that the term "integration" is somehow ambiguous.

Sworn statements Spotlight obtained from multiple customers confirm the survey results: an integration is a permission-based, direct connection between two systems without the use of a third party intermediary. The consumers' understanding matches the definition of integration as set forth in Spotlight's Amended Complaint. *See* AC, ¶¶ 25-29; **Exhibit J** (Sulavik Dec., ¶ 11); **Exhibit K** (Burden Dec., ¶ 10); **Exhibit L** (Kelly Dec., ¶ 12); **Exhibit G** (Huntley Dec., ¶ 11). And there is no doubt that TicketOS was told repeatedly by Ticketmaster (including by a C-Level executive who was and remains the Chief Strategy Officer) that it did

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 9

not, and could not, have such an integration at all, much less that it had "permission" for the same.

### E. A Connection to Trade Desk Using A Third Party Deceives Consumers By Appearing to Be an Integration

Throughout the Motion, Defendants argue that their conduct cannot be false advertising because "the difference in both parties' services would be readily apparent to all corporate customers." Motion, pp. 15-16. However, according to Concierge Live's former lead software engineer, a customer "would not necessarily realize the difference" between using Trade Desk and a third party intermediary to impermissibly scrape, crawl, or use bots to pull information from Ticketmaster "because they both look the same from the customer's viewpoint." **Exhibit M** (Williams Dec., ¶¶ 46-48).

For example, "rate limiting" is a cybersecurity and system administration mechanism that controls network traffic by capping the number of requests a user or client can make within a specified timeframe.  It is designed to prevent server overloads and stop web scraping, among other purposes.  For purposes of this case, "rate limiting" security mechanisms can be triggered when an inhuman number of ticket transfer requests are detected, and some delay results that is ultimately addressed by changing IP addresses or propping up new computer servers.

So while the product being sold is inferior to an actual integration, without the ability to compare apples to apples, the inferior product may not cause a customer to leave because they still believe their service provider (here TicketOS) has an integration. Indeed, one of Concierge Live's former customers explained that everything on the customer's side appears to be an integration even though it has been established that Concierge Live uses a third party to transfer Ticketmaster tickets. **Exhibit K** (Burden Dec., ¶¶ 9-10). This evidence refutes Defendants' argument that Spotlight's claims are implausible because customers did not discover the deception. *See* Motion, pp. 23-25.[5]

In sum, given what it has confirmed in the Concierge Live litigation (Ticketmaster never provided TicketOS an "integration" and TicketOS' competitor is trying to mimic an "integration" through obviously unlawful means), upon information and belief, TicketOS "automates" transfer of Ticketmaster tickets using the same methods as Concierge Live. As

---

[5] As is noted in Spotlight's Opposition, Spotlight has adequately pled customer deception, which is only required if Defendants' representations are misleading and not literally false, as the deception at issue is whether TicketOS was actually integrated with Ticketmaster and had the same functionality as Spotlight. Moreover, there is no requirement that customers actually be deceived for protection against consumer deception to apply. Opposition, p. 19.

# HUNTON

Hon. Madeline Cox Arleo
February 20, 2026
Page 10

such, should the Court require further clarity, Spotlight would explain in a Second Amended Complaint that the inferiority of TicketOS' product may not be readily apparent to customers.

### IV.    CONCLUSION

Defendants fail to inject ambiguity into the false statement that the TicketOS system is "integrated" with Ticketmaster. TicketOS has used this very term in advertising to customers and in responding to customer demands for integration with Ticketmaster. But Ticketmaster has said, without qualification, that not only does TicketOS not have an integration with Ticketmaster, but no other corporate ticket management company aside from Spotlight has an integration with Ticketmaster. It is becoming increasingly apparent that either TicketOS has created its own bots that engage in impermissible web crawling and scraping of Ticketmaster's website, or it is using a third party with bots to crawl or scrape Ticketmaster's website and circumvent Trade Desk to avoid paying fees in violation of Ticketmaster's Terms of Use.

If the Court determines that there is any merit to the Motion, Spotlight respectfully requests leave to amend to allege the facts set forth above and any other facts that the Court deems necessary in a Second Amended Complaint.

Respectfully submitted,

*Torsten M. Kracht*

Torsten M. Kracht

Enclosures

cc:    Christopher M. Pardo, Esq. (*pro hac vice*) (by email)
Edward T. Colbert, Esq. (*pro hac vice* application forthcoming) (by email)
Erik C. Kane, Esq. (*pro hac vice* application forthcoming) (by email)
Patrick Papalia, Esq. (by email)
Katherine P. Sandberg, Esq. (*pro hac vice* application forthcoming) (by email)
Christian Stueben, Esq. (by email)