## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> TICKETOS, TICKETOS TECHNOLOGY, INC., and NEXT SPORTS & ENTERTAINMENT, LLC. <br><br> Defendants. | Civil Action No.: 2:25-cv-00170 <br><br><br> **MOTION DATE: July 6, 2026** |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

**Patrick Papalia, Esq.**
**Christian A. Stueben, Esq.**
**ARCHER & GREINER**
A Professional Corporation
21 Main Street, Suite 353
Court Plaza South – West Wing
Hackensack, New Jersey 07601-7095
(201) 342-6000
*Attorneys for Defendants,*
*TicketOS, TicketOS Technology, Inc.*
*and Next Sports & Entertainment, LLC*

232370445 v1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

I. SPOTLIGHT'S OPPOSITION CONFIRMS THAT THE SAC'S DEFECT IS PLEADING AND NOT PROOF......................................................2

II. COUNT I STILL FAILS BECAUSE SPOTLIGHT DOES NOT PLEAD ACTIONABLE FALSE ADVERTISING...............................................4

   A. The Website Statement Remains Non-Actionable In Context ......................4

   B. The Pitch/RFP Allegations Still Lack The Required Statement-Specific Facts ...............................................................................................5

   C. Spotlight's Information And Belief Allegations Are Not Saved By Claims Of Private Sales Meetings .....................................................7

   D. Spotlight's Survey Confirms Ambiguity In Its Definition Of "Integration" And Does Not Plead Actionable Statements ...........................9

   E. Spotlight's "Literal Falsity" Argument Depends On Allegations The SAC Does Not Plead With Particularity .............................................9

   F. The SAC's Internal Incoherence Still Undermines Plausibility..................11

   G. The SAC Still Fails To Plead *Lexmark* Proximate Causation .....................12

III. COUNT II FAILS BECAUSE SPOTLIGHT STILL DOES NOT PLEAD INTERFERENCE WITH TICKETMASTER'S CONTRACTUAL PERFORMANCE ..................................................................13

IV. COUNT III FAILS BECAUSE THE SAC DOES NOT PLEAD PROTECTED EXPECTANCIES OR WRONGFUL MEANS .......................14

CONCLUSION ..............................................................................................................15

232370445 v1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..........................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................................13

*McDermott v Clondalkin Group, Inc.*,
    649 Fed. App'x 263 (3d Cir. 2016) ................................................................8, 9

*New Jersey Physicians United Reciprocal Exchange v. Boynton &*
    *Boynton, Inc.*,
    141 F. Supp. 3d 298 (D.N.J. 2015)......................................................................7

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck*
    *Consumer Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002) ................................................................................5

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) *overruled on other grounds by*
    *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) ...........................8

**State Cases**

*Nostrame v. Santiago*,
    213 N.J. 109 (2013) ..........................................................................................14

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
    116 N.J. 739 (1989) ..........................................................................................15

**Federal Statutes**

Lanham Act...........................................................................................1, 3, 4, 15

**Rules**

Rule 8 .................................................................................................................3, 4

Rule 12(b)(6).........................................................................................................1

232370445 v1

## PRELIMINARY STATEMENT

Spotlight's Opposition confirms the SAC's central defect: Spotlight still does not plead actionable TicketOS statements with the specificity required to state a Lanham Act false-advertising claim. Spotlight instead asks the Court to defer pleading scrutiny until after discovery, relies on extra-pleading material from a different lawsuit involving a different defendant, and repeatedly mischaracterizes Defendants' Rule 12(b)(6) arguments as factual disputes. Spotlight's framing misses the point. Defendants' Motion does not ask the Court to make any credibility determinations, nor to decide whether TicketOS's technology works, whether TicketOS ultimately can prove it has an integration, or whether Spotlight can prevail after discovery. The Motion asks whether the SAC pleads the allegedly false statements in an actionable manner, i.e., who said what, to whom, when, in what medium, why it was false or misleading, and how it proximately caused injury. The SAC does not plead those facts.

Spotlight's invocation of the Court's oral-argument remarks proves too much. Those remarks addressed the First Amended Complaint and were made while the Court granted Defendants' motion and directed that the case is "all about the statements." Leave to amend was an opportunity to plead actionable statements, not a holding that any future pleading would suffice. The question is whether the SAC, as filed, cures the statement-specific defects the Court identified. It does not.

1

232370445 v1

Count II independently fails because Spotlight pleads customer diversion and not the required interference with Ticketmaster's contractual performance. Count III likewise fails because most alleged "opportunities" are not pleaded as protected expectancies and depend on the same insufficient alleged misrepresentations.

For the reasons below and in Defendants' moving brief, the SAC should be dismissed with prejudice.

## I.   SPOTLIGHT'S OPPOSITION CONFIRMS THAT THE SAC'S DEFECT IS PLEADING AND NOT PROOF

Spotlight repeatedly says Defendants' motion "reads like" a summary-judgment motion because Defendants supposedly ask the Court to weigh credibility and decide factual disputes. *See* Opp. at 1–5, 11–12. But that is not Defendants' motion. Defendants do not ask the Court to make any credibility determinations, to resolve the ultimate truth of TicketOS's technology, backend architecture, or customer experiences. Defendants ask the Court to apply Rule 8, *Twombly/Iqbal*, and the Lanham Act pleading standard to the actual statements alleged in the SAC. Spotlight's repeated invocation of Concierge Live does not change the analysis. Even crediting the Concierge Live survey and customer declarations that the SAC incorporates, those materials go to consumers' abstract perception of the word "integration" which, if anything, shows ambiguity, not to any statement TicketOS

2

made.  The remainder of Spotlight's Concierge Live materials concern a different company and a different system.

Spotlight's Opposition presents two documents outside the pleading that merely further illustrate the defects in the SAC.  First, Spotlight's Exhibit B is a post-SAC letter addressed to Concierge Live, concerning Concierge Live and Automatiq—not TicketOS.  It identifies no TicketOS statement to any customer, no TicketOS RFP response, no TicketOS pitch deck, and no TicketOS customer reaction. Opp. Ex. B.  This reference to the unrelated Concierge Live and its different system cannot cure the SAC's failure to plead actionable statements by TicketOS.

Spotlight's request that the Court judicially notice the Concierge Live filings (Opp. at 4 n.3) does not change the result. While a court may take judicial notice of the existence of public filings, it may not accept disputed factual assertions in those filings for the truth on a Rule 12(b)(6) motion. *See Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd*., 181 F.3d 410, 426–27 (3d Cir. 1999) (internal citations omitted).  The Court cannot judicially notice these filings for the truth of their contents, nor for the proposition that TicketOS made any statement to any customer, and certainly not as if these filings presented well-pleaded allegations about TicketOS.

Exhibit A further underscores the defective pleading, and actually undercuts the SAC's only new example that names an allegedly deceived customer: Advent

3

232370445 v1

Health.    The SAC alleges "upon information and belief" that TicketOS won the Advent Health RFP "as a result" of alleged misrepresentations. SAC ¶¶ 112–115. But Spotlight's **own** supplemental letter attached to its Opposition as Exhibit A stated that "Spotlight is aware that TicketOS did not win the pitch," and relied only on the hearsay "suggest[ion] that TicketOS participated in the pitch." Opp. Ex. A at 6–7. Thus, the **only** named new customer example in the SAC is contradicted by the very supplemental letter Spotlight attaches to its Opposition.    At minimum, this glaring contradiction confirms why the SAC's wholly conclusory information and belief allegations do not satisfy Rule 8, much less the intermediate Lanham Act pleading standard.

Spotlight's continued refrain that discovery is needed therefore does not answer the Motion.  Discovery is intended to reveal evidence supporting a properly pleaded claim.  It is not a substitute for pleading the claim in the first place.

## II.    COUNT I STILL FAILS BECAUSE SPOTLIGHT DOES NOT PLEAD ACTIONABLE FALSE ADVERTISING

### A.    The Website Statement Remains Non-Actionable In Context

The only statement pleaded with particularity remains the website statement, and Spotlight quotes only half of it.  Paragraph 118 alleges that TicketOS falsely states it "integrates with all major mobile ticketing providers." SAC ¶ 118. But Spotlight's own Exhibit G shows the full sentence, which defines the term in the

4

same breath: "TicketOS integrates with all major mobile ticketing providers[,] eliminating the need to login to various ticket accounts to transfer tickets." SAC Ex. G. The Court focused on that complete statement at oral argument, stated it was "certainly not literally false," and expressed skepticism that it was even ambiguous because the website "define[d] it that way."

In the SAC, Spotlight identifies no new website language. The website does not say that TicketOS has the same Ticketmaster integration as Spotlight, a Nexus-level partnership or integration, Spotlight's contract, real-time scan data, or ticket-rescission functionality. The website says TicketOS eliminates the need to log into various ticket accounts to transfer tickets. Spotlight's Opposition simply asks the Court to import the SAC's inherently ambiguous and context-dependent definition of "integration" into contextualized website language the Court already questioned. That is not an unambiguous false message under *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002). The website statement is not actionable.

**B.     The Pitch/RFP Allegations Still Lack The Required Statement-Specific Facts**

Spotlight repeatedly claims that the SAC includes ten examples of alleged pitch/RFP statements. Opp. at 13–14, 23–25. But repetition is not particularity.

For most examples, the SAC does not identify the customer, the TicketOS speaker, the recipient, the medium, the date beyond a season or year, the exact words used, the document containing the statement, the specific functionality discussed, the factual basis for Spotlight's belief, the customer decisionmaker who relied on the statement, or Spotlight's actual expectancy for that account. SAC ¶¶ 84–116. For Advent Health — the only new example to name a customer — the SAC alleges only that TicketOS "misrepresented that it had an integration with Ticketmaster." SAC ¶ 114.  It does not quote the RFP response, identify the speaker, identify who at Advent Health read or relied on it, plead what Advent Health understood "integration" to mean, or plead facts showing deception.  Worse, Spotlight's own Exhibit A states Spotlight was aware TicketOS did not win the Advent Health pitch, expressly contradicting SAC ¶ 115. Opp. Ex. A at 6–7.

Spotlight argues that courts sometimes allow false-advertising allegations without exact quotation of every statement. Opp. at 23–25.  Defendants do not argue otherwise.  But the cases cited by Spotlight do not permit a plaintiff to plead anonymous, copy-and-paste, information and belief sales pitch allegations untethered to speakers, recipients, documents, or factual bases.  The rule is practical: a defendant accused of false advertising must receive enough detail to identify the challenged statements and prepare a defense. *New Jersey Physicians United*

6

232370445 v1

*Reciprocal Exchange v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 307–08 (D.N.J. 2015).  The SAC fails that test.

### C.    Spotlight's Information And Belief Allegations Are Not Saved By Claims Of Private Sales Meetings

Spotlight argues that pleading "upon information and belief" is permissible and justifies making repetitive boilerplate copy-and-paste statements because the facts are in Defendants' possession and involve private sales pitches. Opp. at 25–26. That argument overstates the rule and ignores the nature of the missing facts.

Defendants do not contend that information and belief pleading is categorically forbidden.  Defendants contend that the SAC's information and belief allegations are boilerplate and unsupported by particularized facts.  The Third Circuit permits information and belief pleading when the facts are peculiarly within the defendant's knowledge and the plaintiff accompanies the theory with factual allegations making the claim plausible. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Spotlight recognizes this, and cites to *McDermott v. Clondalkin Group, Inc.*, 649 Fed. App'x 263, 268 (3d Cir. 2016) and includes the quotation that "[p]laintiffs ... accompany their legal theory with factual allegations to make their theoretically viable claim plausible." Opp. at 10–11.  The SAC does not meet either element of this standard.

7

First, the missing facts regarding customer-facing statements are not exclusively in TicketOS's possession, so the first element is not met. They were allegedly made to prior and prospective customers. Spotlight claims those customers made purchasing decisions because of the statements. Spotlight also claims it learned facts through "feedback from prior and prospective customers." Opp. at 26. If Spotlight has a factual basis to plead that particular statements caused particular customers to award contracts to TicketOS, it should have a factual basis to plead what was said, who said it, to whom it was said, and how Spotlight learned it.

Spotlight cannot have it both ways. It cannot summarily and wholly conclusively plead causation and materiality as known facts while treating the content, source, and recipient of the alleged statements as unknowable until discovery. The SAC's information and belief allegations therefore do not cure its pleading defects.

Second, Spotlight failed to accompany its false advertising legal theory with factual allegations to make its theoretically viable claim plausible. This is discussed in Subsection F, *infra*. In short, the SAC fails the second element of the *McDermott* test and cannot state a claim through repetitive wholly conclusory boilerplate statements.

8

232370445 v1

**D.    Spotlight's Survey Confirms Ambiguity In Its Definition Of "Integration" And Does Not Plead Actionable Statements**

Spotlight also relies heavily on the Franklyn survey and customer declarations. Opp. at 17–18, 21–23. But the survey does not cure the missing statements or particularity.

The Franklyn survey does not plead an actionable statement. It measures abstract perceptions of "integration," not consumer reaction to any TicketOS website page, RFP response, pitch deck, or oral statement. And Spotlight's reliance on survey evidence confirms ambiguity, not literal falsity. Spotlight's theory requires technical definitions, permission concepts, directness concepts, third-party intermediary concepts, and backend functionality distinctions. That is not an unambiguous false message. At most it is an ambiguous message theory, but the SAC still does not plead actual deception or tendency to deceive tied to a specific TicketOS statement.

The survey here did not test the website statement in context and did not test any alleged RFP or pitch statement. It therefore cannot substitute for the missing statement-specific allegations.

**E.    Spotlight's "Literal Falsity" Argument Depends On Allegations The SAC Does Not Plead With Particularity**

Spotlight argues that it pleaded literal falsity because TicketOS allegedly lacks an integration with Ticketmaster and cannot offer Spotlight's functionality.

9

232370445 v1

Opp. at 13–15. That argument skips a threshold step. The SAC must first plead the challenged statements with enough specificity to determine what message they conveyed, and the SAC fails to do so.

The SAC's generic allegations that TicketOS "claimed integration," "claimed same functionality," or "claimed certain capabilities" do not identify an unambiguous message. "Same functionality" is especially vague. The SAC now identifies certain allegedly exclusive Spotlight features: real-time scan data and real-time ticket rescission. SAC ¶¶ 46–48, 69, 170. But the SAC does not plead that TicketOS told any customer: "TicketOS provides real-time scan data," "TicketOS can rescind transferred tickets," or "TicketOS has Spotlight's Nexus API functionality." Instead, Spotlight asks the Court to infer those specific feature representations from generic "same functionality" allegations. That is not literal falsity. Spotlight's repeated insistence that it needs discovery to understand how TicketOS accesses Ticketmaster confirms that it cannot plead literal falsity based on that mechanism now.

The "break glass" allegations are also insufficient. The SAC does not define "break glass" with any industry precision, does not tie the alleged representation to any broad advertising or promotion, does not plead what was actually said in most instances, and does not allege materiality except through conclusory recitations. Moreover, the SAC never alleges, even summarily, that the vague "break glass" term

10

was material to any customer's purchasing decision. The Opposition's generalized assertion that "break glass security" was falsely claimed does not cure the SAC's failure to plead the statement, or that the statement was material.

### F.    The SAC's Internal Incoherence Still Undermines Plausibility

Spotlight argues that Defendants improperly infer that customers would have discovered missing real-time functionality. Opp. at 16–18. But Defendants are not asserting post-sale customer conduct as a defense to a well-pleaded literally false statement, and made this clear in the moving papers. Defendants are not making an argument more appropriate for summary judgment. Defendants' point is that the SAC's new allegations do not describe a coherent factual theory.

The SAC alleges that Spotlight's real-time scan data and ticket rescission functionality are exclusive and "essential" to customer purchasing decisions. SAC ¶¶ 46–48, 69, 170. By their nature, "real-time" features reveal their presence in use, so a customer would notice their absence. And the SAC also alleges that Defendants have been making the challenged representations since at least 2019. SAC ¶¶ 61, 207, 224. Yet the SAC does not plead any customer reaction, complaint, discovered mismatch, or customer statement showing that a TicketOS customer learned that the "essential" real-time features were missing. Instead, the SAC relies on speculative allegations that customers "would be deceived" and would not realize the "inferiority" until a breakdown occurred. SAC ¶¶ 173–174.

11

232370445 v1

But this is an *Iqbal* plausibility problem. The Court need not credit conclusory allegations or unreasonable inferences on a Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Spotlight's theory requires the Court to accept that corporate customers deemed the real-time features "essential" to their purchasing decisions but remained unaware for years that the product they purchased lacked those "essential" real-time features. The SAC simply does not plead facts making that theory plausible or coherent.

### G.      The SAC Still Fails To Plead *Lexmark* Proximate Causation

Spotlight also misses Defendants' *Lexmark* point. Defendants are not asking the Court to quantify damages. Defendants are asking for a plausible causal chain between identified statements and identified injuries. *Lexmark* requires a plaintiff to plead injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation. *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 140 (2014). The SAC seeks disgorgement and lost profits dating back to "at least 2019," but most alleged opportunities are anonymous, pleaded on information and belief, and linked to no specific statement beyond the summary statement "as a result." SAC ¶¶ 61, 80, 83, 87, 91, 95, 99, 196. That is not proximate causation.

12

## III.    COUNT II FAILS BECAUSE SPOTLIGHT STILL DOES NOT PLEAD INTERFERENCE WITH TICKETMASTER'S CONTRACTUAL PERFORMANCE

Count II, intentional interference with a contract, fails for the same reason it failed in the moving brief: Spotlight does not plead interference with Ticketmaster's contractual performance. Spotlight does not allege that Ticketmaster withheld access, breached exclusivity, failed to provide services, refused to honor revenue-sharing obligations, or otherwise failed to perform. Instead, the SAC alleges customer diversion.

That is not intentional interference with contract under New Jersey law. The New Jersey Supreme Court defines the tort as intentionally and improperly interfering with performance of a contract "by inducing or otherwise causing the third person **not to perform the contract**." *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013) (emphasis added). Count II identifies the relevant third person as Ticketmaster. SAC ¶¶ 203–205. Therefore, Spotlight must plead interference causing Ticketmaster not to perform.  Spotlight very clearly failed to do this. Moreover, the SAC forecloses that theory on its face by alleging that the Spotlight–Ticketmaster agreement "remains in full force and effect today." SAC ¶ 55.  This requires the dismissal of Count II as the elements of tortious interference with contract plainly were not alleged.

13

232370445 v1

Spotlight tries to avoid *Nostrame* by citing district court formulations referring to "loss of prospective gain or breach of contract." Opp. at 29–30. But Spotlight is conflating the separate tort of interference with prospective economic advantage with tortious interference with contract.

Count II should be dismissed with prejudice.

## IV.    COUNT III FAILS BECAUSE THE SAC DOES NOT PLEAD PROTECTED EXPECTANCIES OR WRONGFUL MEANS

Count III, intentional interference with prospective economic advantage, depends on the same alleged false statements underlying Count I.  Because Count I fails, the "wrongful means" predicate fails too. Spotlight cannot convert inadequately pleaded Lanham Act allegations into a state law tortious interference claim by relabeling them "malice."

Independently, most alleged opportunities are not pleaded as protected expectancies. Under *Printing Mart*, a plaintiff must plead that it was "in pursuit of business" and had a reasonable probability of economic benefit. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751–52 (1989).  The SAC does not do that for examples 3–10.  The SAC alleges only that TicketOS pitched or submitted an RFP and won. SAC ¶¶ 84–116.  The SAC does not allege Spotlight was pursuing those accounts, had an existing relationship, submitted a competing proposal, was in renewal discussions, or had a reasonable probability of success.  And as to Advent

14

232370445 v1

Health, Spotlight's own Exhibit A states TicketOS did not win the pitch, contradicting the SAC's allegation that TicketOS won the RFP. SAC ¶¶ 112–115; Opp. Ex. A at 6–7.

Spotlight's argument would convert every customer in the corporate ticket-management market into Spotlight's protected expectancy simply because Spotlight claims to offer a superior Ticketmaster-related product. That is not New Jersey law.

## CONCLUSION

Spotlight's Opposition does not cure the SAC's pleading defects. Dismissal should be with prejudice. Spotlight has now filed four pleadings, including the SAC after full briefing and oral argument guidance identifying the statement-specific defects at issue. Its Opposition identifies no additional facts it could plead to cure those defects. Instead, it relies on extra-pleading materials concerning the unrelated Concierge Live and asks for discovery. Further amendment would therefore be futile and prejudicial under *Foman* and *Grayson*. Defendants respectfully request that the Court dismiss the SAC with prejudice.

Respectfully submitted,

ARCHER & GREINER, P.C.
Attorneys for Defendants

By: *Patrick Papalia*
Patrick Papalia, Esq.
Christian A. Stueben, Esq.

Dated: June 25, 2026

15